UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

JILL BLOOMBERG,

        Plaintiff,

    v.

THE NEW YORK CITY DEPARTMENT OF
EDUCATION and CARMEN FARINA,

        Defendants.

-------------------------------------------------------------------x

<u>Civil Case No.: 17-CV- 03136</u>

<u>With Jury Demand</u>

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Mirer Mazzocchi Schalet Julien & Chickedantz, PLLC
By: Maria Chickedantz, Esq.
150 Broadway, Twelfth Floor
212-473-8700
*Attorney for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………………....…i

INTRODUCTION…………………………………………………………………………......1

BACKGROUND…………………………………………………………………………....…3

STANDARD FOR GRANTING INJUCTIVE RELIEF…………………………………………3

ARGUMENT……………………………………………………………………………….....5

I.   IRREPERABLE HARM IS ESTABLISHED, AS THE OSI INVESTIGATION CONSTITUTES UNLAWFUL RETALIATION UNDER TITLE VI AND THE FIRST AMENDMENT……………………..……………………………………………….5

    a.  The Strong Casual Link Between the Injunction and the Injury…………..……....6

    b.  The Harm Posed is Neither Remote Nor Speculative………………………....…6

    c.  Absent Injunction, the OSI Investigation Shall "Actually Chill" Participation in Protected Activity…………………………………..………………………..9

II.  PLAINTIFF CAN ESTABLISH LIKELIHOOD OF SUCCESS ON THE MERITS OF HER CLAIMS OR SUFFICIENTLY SERIOUS QUESTIONS GOING TO THE MERITS TO MAKE THEM FAIR GROUND FOR LITIGATION………………........11

    A. First Amendment Retaliation Claim…………………………………......….…..11

    a.  Plaintiff Engaged in Protected First Amendment Activity……………....……….11

    b.  Plaintiff Suffered an Adverse Employment Action……………………....……..12

    c.  There is a Casual Connection Between the Protected Activity and the Adverse Employment Action……………………………………………………….....…13

    B. Title VI Retaliation Claim……………………………………………………..14

    C. NYCHRL Retaliation Claim………………………………………………...…15

    D. Defendants' Basis for The OSI Investigation is Clearly a Pretext………………15

III.  THE BALANCE OF HARDSHIPS TIP IN PLAINTIFF'S FAVOR………...…………16

CONCLUSION………………………………………………………………………...………17

# TABLE OF AUTHORITIES

**Cases**

*Alvarez v. City of New York,*
31 F.Supp.2d 334 (S.D.N.Y.1998)........................................................................ 8

*Bennett v. Lucier,*
239 Fed.Appx. 639, 640 [2d Cir.2007])................................................................ 11

*Bronx Household of Faith v. Bd. of Educ. of City of New York,*
331 F.3d 342, 349,350 (2d Cir. 2003)................................................................... 6

*Burlington N. & Santa Fe Ry. Co. v. White,*
548 U.S. 53, 68, [2006])....................................................................................... 15

*Caruso v. Massapequa Union Free Sch. Dist.,*
478 F.Supp.2d 377, 383 (E.D.N.Y. 2007) ............................................................ 12

*Citibank, N.A. v. Citytrust,*
756 F.2d 273, 275 (2d Cir.1985).......................................................................... 5, 8

*Elrod v. Burns,*
427 U.S. 347, 373-74 (1976)................................................................................. 5

*Garcetti v. Ceballos,*
547 U.S. 410, 417 (2006) ...................................................................................... 11

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
481 F.3d 60, 66 (2d Cir. 2007).............................................................................. 6

*Hui Lin v. Great Rose Fashion, Inc.,*
No. 08 Civ. 4778, 2009 WL 1544749, at *21, *19 (E.D.N.Y. June 3,
2009)……….. .......................................................................………………….9, 10,14

*Karmel v. City of New York,*
200 F.Supp.2d 361 (S.D.N.Y.2002)...................................................................... 8

*Latino Officers Ass'n v. Safir,*
170 F.3d 167, 171 (2d Cir. 1999).......................................................................... 4

*Matthews v. City of New York,*
779 F. 3d. 167 (2d Cir 2015) ……………………......................................................12

*Moore v. Consol. Edison Co. of New York, Inc.,*
409 F.3d 506, 510,512 (2d Cir.2005)...................................................................... 10

*Mullins v. City of New York,*
626 F.3d 47, 51-52,53,68 (2d Cir. 2010),554 F. Supp2d 483, 290(S.D.N.Y),
30 Fed.Appx. 585 C.A.2(N.Y.) 2009........................................................ 3,8,9,10,15

*New York Times Co. v. United States*,
403 U.S. 713 [1971])................................................................................................ 5

*Palmer v. Penfield Cent. Sch. Dist.,*
918 F.Supp.2d 192, 199 (W.D.N.Y. 2013)............................................................. 14

*Pekowsky v. Yonkers Bd. of Educ.,*
23 F. Supp. 3d 269, 278 (S.D.N.Y. 2014)............................................................... 12

*Phillip v. Fairfield Univ.,*
118 F.3d 131, 133 (2d Cir. 1997)............................................................................. 4

*Pollis v. New School for Social Research,*
829 F.Supp. 584, 591 (S.D.N.Y. 1993)..................................................................... 8

*Reuland v. Hynes,*
460 F.3d 409, 415 [2d Cir. 2006]) ......................................................................... 12

*Scelsa v. City Univ. of N.Y.,*
806 F.Supp. 1126, 1134-35 (S.D.N.Y. 1992) ........................................................... 4

*Smith v. County of Suffolk,*
776 F.3d 114, 118 (2d Cir. 2015)........................................................................... 11

*Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,*
60 F.3d 27, 34 [2d Cir. 1995]) ................................................................................. 4

*Wimmer v. Suffolk County Police Dep't,*
176 F.3d 125, 134–35 (2d Cir. 1999).........................................................................14

*Wrobel v. Cnty. of Erie,*
692 F.3d 22, 31 [2d Cir. 2012]) ..............................................................................12

## **Other Authorities**

*42 U.S.C. § 2000e–3*..............................................................................................14

## INTRODUCTION

This is an outrageous case of retaliation against plaintiff Jill Bloomberg, a successful New York City school principal at Park Slope Collegiate (PSC or Collegiate) in Brooklyn. On March 2, 2017 Ms. Bloomberg was informed that she is being investigated by the Office of Special Investigations ("OSI") of the New York City Department of Education ("DOE") using what is best described as a McCarthy Era canard—accusation of communist activity.

Plaintiff was informed about this investigation within weeks after she and the School Community at PSC publicly charged the DOE with segregating and maintaining unequal allocation of sports teams between the three predominately Black and Latino schools within the John Jay Campus on the one hand and the almost majority White Brooklyn Millennium school which shares this campus, on the other.

As will be described more fully in the Affirmation of Counsel and the supporting affidavits and exhibits, there is no legitimate reason for this investigation other than attempting to retaliate against Ms. Bloomberg for her activities protected under the Title VI of the Civil Rights Act of 1964, First Amendment to the U.S. Constitution, and the New York City Human Rights Law. The fact of this investigation is wreaking havoc in the school community which has resulted in a massive chilling effect on freedom of speech in this school and fear of speaking on any issue which may be deemed controversial. The Affirmation of Maria L. Chickedantz, plaintiff's attorney, sets forth the many attempts by plaintiff to try to stop this investigation, including offering to meet with the DOE's General Counsel Howard Friedman, and a representative of the New York Civil Liberties Union, to discuss a possible resolution. While counsel for plaintiff and counsel for the DOE were trying to reach a resolution, the investigation was temporarily halted. Once it became apparent late in the afternoon of April 27, 2017 that the

DOE would not engage in further discussions unless the OSI investigation went forward, it became imperative that plaintiff seek this relief as teachers have been subpoenaed to attend OSI interviews starting Monday May, 1, 2017 to avoid the irreparable harm that this investigation represents.

This investigation should not be allowed to proceed because it is inherently retaliatory, and because it is equating plaintiff's beliefs and activities in fighting racism and segregation with communist activities. This type of precedent is the kind of political witch hunt that should not be permitted in a public institution such as the DOE. The investigation has already had a chilling effect on many members of the PSC staff. There is a real danger that this investigation, if allowed to proceed, would destroy the positive teaching and learning culture in this school that plaintiff has established over the last thirteen years. Plaintiff has affirmatively stated she knows of no official school policy or Chancellor's Regulation that she has violated thus, this investigation is illegally putting her under a cloud of suspicion with resulting negative impact on her positive reputation. Plaintiff seeks this Temporary Restraining Order to halt the investigation pending a hearing on a Preliminary Injunction.

Since 2004, plaintiff Jill Bloomberg ("plaintiff" or "Ms. Bloomberg") has been the principal of PSC, one of four New York City public high schools located within the John Jay Campus in Park Slope, Brooklyn. Since plaintiff became principal of PSC, she has been an outspoken advocate against race discrimination and race segregation in New York City public schools.

She has set forth in her Complaint, which was filed in afternoon of April 28, 2017 (attached as Exhibit 1) the factual allegations which support this motion. She has reiterated these facts, as well as facts related to the extreme chilling effect that has been caused by the

investigation, in her Affidavit and supporting exhibits. Also in support of this motion which supports plaintiff's claim of chilling effect on her rights are the Affidavits of five PSC staff members: Louise Bauso, Maysa Jarara, Lisa Miller, Jill Sandusky, and Rahsan Williams, teachers and an assistant principal at PSC.

For the reasons set forth below, plaintiff submits that she will suffer irreparable harm if the DOE is permitted to continue its retaliatory investigations against her. Plaintiff submits that should the DOE be permitted to continue the investigation, which involves requiring plaintiff and other PSC employees to answer questions and provide testimony related to the anti-racism activism and political associations of plaintiff and others, PSC employees who would otherwise speak out about civil rights issues or against race discrimination within the DOE will be chilled. In addition, if the investigation is permitted to go forward, PSC employees who would have otherwise participated in this action will be too afraid to come forward as witnesses who could provide testimony supporting plaintiff's claims, thus harming her ability to prosecute her case. Plaintiff seeks a temporary restraining order and a prohibitory preliminary injunction to halt the retaliatory investigations pending the outcome of this litigation.

## FACTS

Plaintiff respectfully refers the Court to the Complaint, the Affidavits of plaintiff and five staff members of PSC and the supporting exhibits, and the Affirmation of plaintiff's attorney Maria L. Chickedantz and the supporting exhibits for all relevant and pertinent facts.

## STANDARD FOR GRANTING INJUNCTIVE RELIEF

A district court may grant a preliminary injunction if the moving party establishes "irreparable harm" should the requested relief not be granted and (2) either (a) a likelihood of success on the merits of its case or (b) "sufficiently serious questions going to the merits to make

them fair grounds for litigation and a balance of hardships tilting decidedly towards the [movant]." *Mullins v. City of New York*, 626 F.3d 47, 51-52 (2d Cir. 2010). In addition, where "the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party can demonstrate, in addition to irreparable harm, a likelihood of success on the merits." *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 171 (2d Cir. 1999). However, "the higher 'likelihood of success on the merits' standard applies only in instances where plaintiffs are trying to halt government implementation of a regulation," and not "when a party is challenging as contrary to federal law the actions of a government actor, [as] those actions are, by definition, not pursuant to a regulatory or statutory scheme." *Scelsa v. City Univ. of N.Y.*, 806 F.Supp. 1126, 1134-35 (S.D.N.Y. 1992). In the latter instances, the lower "fair grounds for litigation" standard applies. *Id.*

Further, the Second Circuit has held that "where an injunction is mandatory - that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act - the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from a denial of the injunction." *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997)(*per curium*)(quoting *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 34 [2d Cir. 1995]). However, "although 'the distinction between mandatory and prohibitory injunctions is not without ambiguities,'… [an] injunction is more appropriately viewed as prohibitory [when], by its terms, it restrains [the non-moving party] from… further interfering with [the status quo]." *Id.* As the instant motion for injunction concerns plaintiff's request that the DOE be restrained from further interfering with the *status quo* through its unlawful investigation against her, the

4

instant motion is clearly a prohibitory injunction. However, based on the egregious nature of defendants' conduct and the serious damage it has and will cause plaintiff, plaintiff also meets the higher mandatory injunction standard.

Moreover, although we believe that plaintiff is entitled to the lower "fair grounds for litigation standard," the facts in this matter also meet the "likelihood of success on the merits" standard, and we will argue both in the alternative.

Plaintiff submits that she will suffer irreparable harm if defendants are permitted to move forward with the unlawful retaliatory investigation against her. Further, the history and underlying facts support a clear likelihood of success on the merits. In the alternative, and *a fortiori,* the facts support a finding of serious questions regarding the merits of plaintiff's claim, and that the balance of hardships weighs in plaintiff's favor. A preliminary injunction is needed to preserve the *status quo* in order that the DOE not be allowed to continue the unlawful retaliatory investigation against plaintiff, which will chill her and other PSC employees' rights under the First Amendment and Title VI.

**ARGUMENT**

I.     **IRREPERABLE HARM IS ESTABLISHED, AS THE OSI INVESTIGATION CONSTITUTES UNLAWFUL RETALIATION UNDER TITLE VI AND THE FIRST AMENDMENT**

When considering an application for preliminary injunction under FRCP Rule 65, Second Circuit courts begin with an evaluation of the likelihood that a plaintiff will "suffer irreparable harm before a decision on the merits can be rendered" absent injunctive relief. *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 275 (2d Cir.1985). This is the "single most important prerequisite" for preliminary injunction. *Id.*

In addition, the United States Supreme Court has held that "[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (citing *New York Times Co. v. United States*, 403 U.S. 713 [1971]). Irreparable harm may be presumed when "a plaintiff alleges injury from a rule or regulation that directly limits speech." *Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 349 (2d Cir. 2003). But if the rule or regulation "may only potentially affect [a First Amendment right], the plaintiff must establish a causal link between the injunction sought and the alleged injury, that is, [a plaintiff] must demonstrate that the injunction will prevent the feared deprivation of [First Amendment] rights." *Id.* at 350. In either situation, the irreparable harm must be "neither remote nor speculative, but actual and imminent." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted).

Here, plaintiff has alleged that the OSI investigation against her was commenced shortly after she publicly complained of and provided clear evidence of race segregation in her school building. (Bloomberg Aff., ¶¶ 29-31). The OSI investigation has already harmed plaintiff and others in a number of ways. (Bloomberg Aff., ¶¶ 49-53). The fact of the investigation has hit the school community like a hammer. (Bloomberg Aff., ¶¶ 35-6). Despite plaintiff knowing she has not violated any official policy or Chancellor's regulation, she is being subject to a political litmus test, in which her political views about the efficacy of racial integration and its benefits for students and society as a whole are being portrayed as "rogue beliefs" which she must be punished for expressing.  Plaintiff believes that the DOE knows she has not violated any policies and want to use this investigation to engage in a fishing expedition to see if they can try to find something they could use to justify discipline against her. (Bloomberg Aff., ¶¶ 40, 44).

Just the cloud of suspicion hanging over her because of this investigation has a chilling effect on willingness to continue to speak out against racial segregation and as a citizen on matters of public concern. Others have been, and will only be more harmed because the DOE's retaliation against plaintiff has created a chilling effect for PSC employees who now fear speaking out against discrimination or matters of public concern, and fear teaching lessons related to the Cold War or Communism. (Williams Aff., ¶ 7-8; Bauso Aff., ¶ 5; Jarara Aff., ¶ 6-7; Miller Aff., ¶ 4-8; Sandusky Aff. ¶ 4-7). Moreover, PSC employees feel dissuaded from participating in the instant litigation for fear of retaliation, which is injurious to both plaintiff and the employees of Collegiate. (Bauso Aff., ¶ 6; Miller Aff., ¶ 9).

a.   **The Strong Causal Link Between the Injunction and the Injury**

There is no question that if an injunction halting defendants' unlawful investigation against plaintiff is not granted, plaintiff and others will be directly injured as a result. Because the OSI investigation is related to her public critique of policies that keep New York City public schools segregated, at best, plaintiff will be forced to discontinue those activities in order to ensure that no new investigations are commenced against her. At worse, plaintiff will be terminated from her employment at the end of the investigation.

In addition, if an injunction is not granted, other PSC employees will refrain from speaking out against race discrimination within the DOE or speaking out as private citizens on other matters of public concern in order to avoid becoming the subject of either the instant or another OSI investigation. Many have already done so. (Williams Aff., ¶ 7-8; Bauso Aff., ¶ 5; Jarara Aff., ¶ 6-7; Miller Aff., ¶ 4-8; Sandusky Aff. ¶ 4-7). Further, PSC employees will be reluctant to participate in the instant litigation for fear of reprisals, which would deny plaintiff witness testimony to support her claims. Indeed, many have expressed an interest in participating

7

in support of this litigation but have refrained from doing so out of fear of reprisals. (Bauso Aff., ¶ 6; Miller Aff., ¶ 9; Williams Aff., ¶ 8).

### b.     The Harm Posed is Neither Remote Nor Speculative

Irreparable harm is "an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages*." Pollis v. New School for Social Research*, 829 F.Supp. 584, 591 (S.D.N.Y. 1993)(quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 [2d Cir.1985]). Here, as discussed above, if not enjoined, the OSI investigation will directly injure plaintiff and the employees of PSC. The injury to them is not remote or speculative, as they have already been injured by the mere issuance of subpoenas to the OSI investigation. As a direct consequence of the OSI investigation, plaintiff and PSC employees have already been chilled from continuing to speak out against race discrimination or other matters of public concern. PSC employees feel dissuaded from supporting plaintiff in her lawsuit, and their ranks will only grow if the investigation is permitted to continue to the grave detriment of plaintiff and her ability to prosecute her claims. Moreover, plaintiff and PSC employees are already suffering from physical manifestations of stress and anxiety caused by the opaque and secretive nature of OSI investigation. If the investigation continues, the injury will increase to devastating proportions, as described above. None of the injury caused by allowing the OSI to continue can be remedied by an award of monetary damages, because money will not be able to remediate the chilling effect, the reluctance to participate in plaintiff's legal action, or the emotional distress affecting plaintiff and Collegiate employees.

Moreover, as here, where a plaintiff has been subject to a process that could result in her dismissal or prejudice future litigation, courts have found such process satisfies the imminence requirement and have rejected arguments that such harm is speculative. *Mullins v. City of New*

*York*, 554 F.Supp.2d 483, 490 (S.D.N.Y. 2008). See *Karmel v. City of New York* 200 F.Supp.2d 361 (S.D.N.Y.2002); *Alvarez v. City of New York* 31 F.Supp.2d 334 (S.D.N.Y.1998). As discussed, the OSI investigation could lead to plaintiff's dismissal, and has already begun to prejudice future litigation because Collegiate employees are afraid to participate in the instant litigation.

Further, the irreparable harm posed by the OSI investigation against plaintiff in these circumstances is the harm of unchecked retaliation, not only of chilling effect or the future deprivation of plaintiff's employment. With regard to injunctions sought in cases alleging unlawful retaliation, it has been held that "the resulting weakened enforcement of federal law can *itself* be irreparable harm in the context of a preliminary injunction application;" however, a plaintiff "must show some evidence of actual chill [by the alleged retaliation] that would be cured by the requested injunction." *Mullins v. City of New York,* 626 F.3d 47 (2d Cir. 2010) *quoting Hui Lin v. Great Rose Fashion, Inc.,* No. 08 Civ. 4778, 2009 WL 1544749, at *21 (E.D.N.Y. June 3, 2009) (internal quotation marks omitted) (citing, *inter alia*, *Bennett v. Lucier,* 239 Fed.Appx. 639, 640 [2d Cir.2007]). Moreover, unchecked retaliation carries with it "the distinct risk that other employees may be deterred from protecting their rights ... or from providing testimony for the plaintiff in her effort to protect her own rights." *Holt*, 708 F.2d 87, 91.

Here, plaintiff and the PSC employees fear the DOE's unchecked retaliation, and they believe that the OSI investigation is retaliation for plaintiff's engagement in protected activity. PSC employees have been and will only be further deterred from protecting their own rights or from providing testimony for plaintiff in an effort to protect her own rights. (See, the Five PSC Staff Affidavits).

9

### c. Absent Injunction, the OSI Investigation Shall "Actually Chill" Participation in Protected Activity

As averred by plaintiff and the Collegiate employees, the OSI investigation is understood to be an attempt to retaliate against plaintiff for her participation in protected activity (specifically, for complaining about the DOE's discrimination against students of color). (Bloomberg Aff., ¶ 40, 44; Bauso Aff., ¶ 5; Jarara Aff., ¶ 6; Miller Aff., ¶ 8; Sandusky Aff., ¶ 5; Williams Aff., ¶ 7). As already discussed, the OSI investigation has begun to, and will continue to severely chill plaintiff and Collegiate employees from engaging in protected activity. In addition, some PSC employees who could be of assistance to plaintiff in the instant litigation have already expressed a reluctance to appear as witnesses on her behalf. (Bauso Aff., ¶ 7; Miller Aff., ¶ 9; Williams Aff., ¶ 8). It is therefore reasonable for plaintiff to fear that other PSC employees who she thought would tell the truth and testify as witnesses in her case will feel pressured to withdraw their support should the OSI investigation continue. (Bloomberg Aff., ¶ 52). That is, were the injunctive relief here petitioned not granted and the OSI investigation permitted to proceed, not only are PSC employees intimidated by the threat of retaliation, but they are also chilled from participating in the instant proceeding. *Hui Lin v. Great Rose Fashion, Inc.,* No. 08 Civ. 4778, 2009 WL 1544749, at *19 (E.D.N.Y. June 3, 2009). (distinguishing between retaliation that merely intimidates versus that which actually chills participation); *See also Moore v. Consol. Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (on the requirement of evidence of "actual chill").

Plaintiff appreciates that the Court's evaluation of "actual chill" and witness intimidation is highly fact specific and subject to a case-by case evaluation. *Mullins v. City of New York,* 307 Fed.Appx. 585 C.A.2 (N.Y.) 2009 quoting *Moore,* 409 F.3d 506, 512 n. 6. Accordingly, the supporting Affidavits and Affirmation present evidence that makes clear the extent to which the

OSI investigation has and will prevent Collegiate employees from speaking out against race discrimination at Collegiate or within the DOE in general; from coming forward to prevent others from being intimidated; and/or from testifying in plaintiff's case. By commencing an investigation against plaintiff that is retaliatory by design, the DOE has shown the lengths to which it will go to punish "anti-racism activists" and other persons engaged in protected activities. PSC employees' fears are not unfounded.

As the foregoing illustrates, the threat posed by the OSI investigation of plaintiff would constitute significant, irreparable harm to plaintiff in vindicating her rights in a trial on the merits, to other DOE employees' future vindication of their rights, to participation in protected speech, and to the antidiscrimination process itself.

## II. PLAINTIFF CAN ESTABLISH LIKELIHOOD OF SUCCESS ON THE MERITS OF HER CLAIMS OR SUFFICIENTLY SERIOUS QUESTIONS GOING TO THE MERITS TO MAKE THEM FAIR GROUND FOR LITIGATION

### A. First Amendment Retaliation Claim

A plaintiff who is a public employee establishes a *prima facie* violation of the First Amendment against her employer by showing that "(1) the plaintiff has engaged in protected First Amendment activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action." *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015). Moreover, in order to establish the first prong of this test, public employees must demonstrate that they were speaking as private citizens on matters of public concern. See, *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).

### a.  Plaintiff Engaged in Protected First Amendment Activity

Here, there is no question that plaintiff has engaged in protected First Amendment activity and was speaking out as a private citizen on matters of public concern. See *Matthews v. City of New York*, 779 F.3d. 167 (2d Cir. 2015).

Moreover, "speech will be determined to be of public concern if it 'relates to any matter of political, social, or other concern to the community.'" *Caruso v. Massapequa Union Free Sch. Dist.*, 478 F.Supp.2d 377, 383 (E.D.N.Y. 2007)(quoting *Reuland v. Hynes*, 460 F.3d 409, 415 [2d Cir. 2006]). Here, plaintiff complained of a separate and unequal sports program in her building, which is a complaint of race discrimination: a topic of political and social concern to the community. In similar circumstances, in *Matthews,* cited *supra,* the Second Circuit found a police officer who complained about a precinct-wide ticket quota was found to have engaged in protected speech as a citizen and not as part of his official job duties.

### b.  Plaintiff Suffered an Adverse Employment Action

"To prove a First Amendment retaliation claim, a plaintiff must establish an adverse employment action that would 'deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Pekowsky v. Yonkers Bd. of Educ.*, 23 F. Supp. 3d 269, 278 (S.D.N.Y. 2014) (quoting *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31 [2d Cir. 2012]). "The list of adverse actions has included harsh measures, such as discharge, refusal to hire, refusal to promote, reduction in pay, and reprimand, as well as some lesser sanctions, such as failure to process a teacher's insurance form, demotion, reassignment to a place that aggravated physical disabilities, and express accusations of lying." *Wrobel,* at 31.

Here, defendants have commenced an OSI investigation against plaintiff in retaliation for her participation in protected activity. This investigation is an adverse action by its very nature.

As described in the Affirmation of Maria L. Chickedantz (¶¶ 4-6), when a DOE employee who is being investigated by the OSI, the entire school is also under investigation, as the OSI investigator's job is to identify the scope of the allegations and identify whether other DOE employees are also complicit in the alleged misconduct. Thus, any DOE employee who the OSI believes has information related to the allegations (which, as in plaintiff's case, are typically not disclosed) will receive a subpoena to appear as a witness in order to provide testimony to the OSI. Employees called as witnesses are warned of their obligation to keep anything related to the investigation "confidential" in order to avoid being reported to SCI for "obstruction of an investigation." Because the allegations of the investigation are not revealed, the witness has no way of knowing if the investigator's questions are relevant, or whether the investigator is on a "fishing expedition" in an attempt to find evidence of misconduct by either the subject of the investigation, or any other employee of the school. Oftentimes, the OSI expands the investigation to include a witness who has provided testimony that the investigator considers evidence of the witness' own guilt of misconduct—whether related to the allegations being investigated or otherwise. Othertimes, the OSI finds guilt for conduct completely unrelated to the initial investigation. At the end of an OSI investigation, neither the subject of the investigation nor the witnesses are ever advised of the outcome, nor are they provided with copies of the final OSI Investigation Report. The findings and outcome of the investigation are only disclosed when the OSI has found someone guilty of misconduct, in which case the investigation report used as a basis to bring formal disciplinary charges.

There is no doubt that this OSI investigation against plaintiff is an adverse action. She has been kept in the dark of the accusations against her and the conduct at issue. (Bloomberg Aff., ¶ 31, 49; Bauso Aff., ¶ 6; Miller Aff., ¶ 4-6, 8; Williams Aff., ¶ 7). Because she has not been

advised of which conduct the DOE finds to be unlawful or in violation of the Chancellor's Regulations, she is unable to know what of her activities could draw more attention from the OSI, including engaging in constitutionally protected activity. Moreover, plaintiff is aware that she can be removed from active duty at any time while she is the subject of the investigation, without being advised of the reasons, and could lose the career that she has built for the past 13 years. (Bloomberg Aff., ¶ 50, 53). Because of the OSI investigation, plaintiff has been living in constant fear for her job. In addition, the entire school is aware of the investigation, and the implications that come with being accused of the type of misconduct egregious enough to warrant a full-scale investigation can only be harmful to plaintiff's ability to lead her school.

The DOE claims the OSI investigation against plaintiff was commenced because the accusations against her indicate violations of Chancellor's Regulation D-130. (Bloomberg Aff., Ex. 8). But the DOE's rationale is pretextual on its face, as the accusations against plaintiff (that she is a "member of a communist organization" who is "actively recruiting students into the organization during school hours," and "invit[ing] students to participate in the organization's activities, including marches for communism"), even if true, these are not violations of Chancellor's Regulation D-130 (which relates to DOE employees' obligation to remain neutral regarding partisan politics during elections). (See Chickedantz Aff., Ex. 2). The pretextual basis of the OSI investigation is evidence that the investigation was commenced in order to punish plaintiff for engaging in protected activity weeks before the investigation.

### c. There is a Causal Connection Between the Protected Activity and the Adverse Employment Action

A causal connection between plaintiff's protected speech and defendants' adverse actions may be established by temporal proximity or evidence of retaliatory animus. *Hui Lin*, 2009 WL 1544749, at *19. Plaintiff's Complaint states with particularity the temporal proximity between

14

her protected speech and defendants' adverse actions. Specifically, plaintiff alleges that she engaged in protected activity on January 10, 2017 when she wrote the letter complaining of the separate and unequal sports team allocations, and was in support of the PTA's flyering which took place on February on February 13, 2017. (Bloomberg Aff., ¶ 29-30). Two weeks later on March 2, 2107 the OSI investigator appeared at the School. (Id., ¶ 31). Moreover, admissions by defendants related to the time lapse between the OSI complaint and the initiation of the investigation, as well as the fact that the accusation against plaintiff relates to her alleged involvement in "communist activities," link the adverse treatment to plaintiff's engagement in protected speech provide evidence of retaliatory animus directed against plaintiff.

## B. Title VI Retaliation Claim

A plaintiff establishes a Title VI claim by showing (1) the plaintiff engaged in protected activity of which the recipient of federal funding was aware; (2) the recipient took an adverse action against the individual; and (3) a causal connection exists between the individual's protected activity and the recipient's adverse action. See, *Palmer v. Penfield Cent. Sch. Dist.*, 918 F.Supp.2d 192, 199 (W.D.N.Y. 2013).

First, "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. *See* 42 U.S.C. § 2000e–3; *see also, e.g., Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134–35 (2d Cir. 1999) (discussing scope of statute's "protected activity" provision). There is no doubt that plaintiff engaged in protected activity as defined by the statute when she complained to DOE officials about the racially segregated and unequal sports programs in her school building, noting that the predominantly White program comprised of less students yet received more sports teams than the program comprised of mainly Black and Latino students.

Second, "an employment action disadvantages an employee if "it well might have 'dissuaded a reasonable worker from making or supporting [similar] charge[s]....' " *Mullins,* 626 F.3d 47, 53 (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, [2006]). As discussed above, defendants' have taken adverse actions against plaintiff by instituting an OSI investigation against her, which was a significant adverse action against plaintiff.

### NYCHRL Retaliation Claim

A plaintiff establishes a NYCHRL claim by showing the same facts as stated in support of her First Amendment and Title VI complaints. She engaged in activity protected by NYCHRL, and in retaliation for her complaint about race discrimination by the DOE against students, the DOE commenced an OSI investigation against her.

### C. Defendants' Basis for The OSI Investigation is Clearly a Pretext

Defendants attempt to rebut plaintiff's *prima facie* claims of First Amendment and Title VI retaliation by claiming that they are not punishing her for speaking out against the DOE's race discrimination and/or race segregation, but rather, are merely responding to a complaint, filed in May, 2016, that plaintiff is a member of a communist organization, has attempted to recruit Collegiate students to her organization, and has invited students to participate in her organization's activities, in violation of Chancellor's Regulation D-130. But the DOE's own facts demonstrate that they do not truly believe plaintiff did anything wrong.

The DOE posits that the OSI complaint was made in May, 2016. Given that the OSI did not see fit to commence an investigation in May, 2016, there is no legitimate basis for the instant investigation which was commenced in March, 2017—weeks after plaintiff participated in protected activity.

Moreover, the DOE's own rationale for instituting the investigation do not constitute a violation of any law or regulation, yet, the OSI is only charged with investigating allegations of DOE employees' violations of statute and the Chancellor's Regulations.

It bears highlighting that defendants have made it explicitly clear that they do not approve of plaintiff's advocacy against race discrimination in New York City's public schools, as they have told plaintiff on a number of occasions that she should not speak out against racism within the DOE. (Bloomberg Aff., ¶ 9, 17, 21).

## III.   THE BALANCE OF HARDSHIPS TIP IN PLAINTIFF'S FAVOR

Weighing the hardship of enjoining defendants from continuing with the OSI investigation against the hardship caused to plaintiff if the investigation is to proceed, the balance tips decidedly in plaintiff's favor. Should injunctive relief not be granted, the DOE will be allowed to engage in a politically based investigation to punish plaintiff for her views and not for anything she did to violate any official policies of Chancellor's regulations. Plaintiff will almost certainly be deprived of important witnesses who may speak to the merits of her case, an unduly harsh burden (and has already been deprived as some who have stated that they were too afraid to submit affidavits in support of this motion). Plaintiff will also be dissuaded from continuing to speak out against race discrimination and other matters of public concern. The chilling effect of the OSI investigation, and the ultimate risk of discipline, including termination, has already been especially harsh for other PSC employees and will only increase. Further, if the DOE may retaliate against plaintiff in this way, other PSC employees will (and many have already have) lose faith in the judicial system and any hope that they could ever be spared from the same fate.

Moreover, the hardship to the defendants posed by injunctive relief is not unduly harsh. Defendants received the OSI complaint about plaintiff's conduct in May, 2016, and at that time, found no need to commence an OSI investigation. Thus, any suggestion that halting the investigation pending the instant litigation would prejudice defendants or risk harm to the students is simply not credible. At most, enjoining the OSI investigation and the discipline of plaintiff pending the outcome of litigation impedes the DOE's management prerogatives, but courts have not found that such impediment is *per se* an undue hardship. Accordingly the balance weighs in plaintiff's favor.

## CONCLUSION

Plaintiff respectfully requests this Court grant the injunctive relief requested in the instant motion. The facts and the law support the relief.


Dated: New York, New York
        April 28, 2017

                                Respectfully submitted,

                                MIRER MAZZOCCHI SCHALET JULIEN &
                                CHICKEDANTZ, PLLC

                                By: _____
                                    Jeanne E. Mirer

                                & By: _____
                                    Maria L. Chickedantz

                                150 Broadway, Suite 1200
                                New York, NY 10038
                                Tel. (212) 231-2235
                                Fax (212) 409-8338
                                *Attorneys for Plaintiff*
                                jmirer@mmsjlaw.com, maria@mmsjlaw.com