17 Civ. 03136

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JILL BLOOMBERG,

                                        Plaintiffs,

            -against-

THE NEW YORK CITY DEPARTMENT EDUCATION
and CARMEN FARINA,

                                        Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Andrea O'Connor*
*Tel:  (212) 356-4015*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ...............................................................................1

**STATEMENT OF FACTS** ......................................................................................1

**ARGUMENT** ..........................................................................................................6

    PLAINTIFF CANNOT MEET THE REQUIREMENTS FOR OBTAINING A
    PRELIMINARY INJUNCTION..........................................................................6

        A.  Plaintiff Cannot Demonstrate that She Will Suffer Irreparable
            Harm if the Injunction is Not Granted .....................................................7

            1.  Plaintiff Has Not Established that the OSI Investigation Creates a Chilling
                Effect .............................................................................................8

            2.  The Possibility of Termination is Not an Irreparable Harm ...........................12

        B.  Plaintiff Cannot Establish a Likelihood of Success on the
            Merits of Her Claims .............................................................................16

            1.  Plaintiff Cannot Establish Her Speech Was Protected ...................................16

            2.  Plaintiff Cannot Establish An Adverse Employment Action .........................18

            3.  Plaintiff Cannot Establish A Causal Connection .............................................20

            4.  Defendants Have a Legitimate, Non-Retaliatory Business Reason for
                Investigating Allegations of Wrongdoing by Plaintiff....................................24

        C.  The Balance of the Equities Tips in Favor of Defendants.........................................25

**CONCLUSION** ......................................................................................................**26**

# TABLE OF AUTHORITIES

## CASES

American Postal Workers Union v. United States Postal Service, 766 F.2d 715, 722 (2d Cir. 1985) ....................................................................................................................... 8-9

Bery v. City of New York, 97 F.3d 689, 693 (2d Cir. 1996)........................................... 8

Brightman v. Prison Health Serv., Inc., 108 A.D.3d 739, 740 (2d Dep't 2013)........................... 16

Bronx Household of Faith v. Bd. of Edu., 331 F.3d 342, 350 (2d Cir. 2003) ............................... 8

Cahill v. O'Donnell, 75 F. Supp. 2d 264, 274 (S.D.N.Y.1999)...................................................... 19

Cox v. Onondaga Cty. Sheriff's Dep't, 760 F.3d 139, 147 (2d Cir. 2014) .................................... 19

Curley v. Village of Suffern, 268 F. 3d 65 (2d Cir. 2001)............................................................. 10

Diaz v. City Univ. of N.Y., 2015 U.S. Dist. LEXIS 155496 (S.D.N.Y. Nov. 16, 2015) ............. 16

Dillon v. Suffolk County Department of Health Services, 917 F.Supp. 2d 196, 208-09 (E.D.N.Y. 2013) ................................................................................................................................... 18

E.E.O.C. v. Joint Apprenticeship Comm. of Joint Indus. Bd. of the Elec. Indus., 164 F.3d 89, 101 (2d Cir. 1998)....................................................................................................................... 14

Forest City Daly Hous., Inc. v. Town of North Hempstead, 175 F.3d 144, 149 (2d Cir. 1999) .... 7

Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).......................................................................... 16

Garcia v. West, 98 Civ. 3905, 1999 U.S. Dist. LEXIS 15274 at *4 (S.D.N.Y. Sept. 30, 1999) .. 19

Gordon v. City of New York, 612 Fed. Appx. 629, 630-31 (2d Cir. 2015) .................................. 16

Greer v. Mehiel, 15 Civ. 6119 (AJN), 2016 U.S. Dist. LEXIS 22588 (S.D.N.Y. Feb. 24, 2016) 10

Guitard v. United States Sec'y of Navy, 967 F.2d 737, 742 (2d Cir. 1992)................................. 14

Holt v. Continental Group, 708 F.2d 87, 90-91 (2d Cir. 1983), cert. denied, 465 U.S. 1030 (1984) ........................................................................................................................................... 14

Hui Lin v. Great Rose Fashion, Inc., 2009 U.S. Dist. LEXIS 46726 (E.D.N.Y. June 2, 2009) ... 12

Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995) ..................................................................... 13

JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990) ...................................... 7

Lane v. Franks, 134 S.Ct. 2369, 2380 (2014) ............................................................................... 17

Latino Officers Association v. Safir, 170 F.3d 167, 171 (2d Cir. 1999) ....................................... 8

Mastrovincenzo v. City of New York, 435 F.3d 78, 89 (2d Cir. 2006)........................................... 7

Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015)................................................ 16

Mullins v. City of New York, 634 F. Supp. 2d 373 (S.D.N.Y. 2009) ........................................... 15

Munaf v. Geren, 553 U.S. 674, 689 (2008) ................................................................................. 16

Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr., 697 F.3d 209, 213 (2d
    Cir. 2012) ............................................................................................................................... 14

Sampson v. Murray, 415 U.S. 61, 90 (1974) ................................................................................. 7

Savage v. Gorski, 850 F.2d 64, 68 (2d Cir. 1988) ....................................................................... 14

Score, Inc. v. Cap Cities/ABC, Inc., 724 F. Supp. 194, 198 (S.D.N.Y. 1989) .............................. 7

Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) .................................. 23

Smith v. County of Suffolk, 776 F.3d 114, 119 (2d Cir. 2015)..................................................... 24

Spaulding v. N.Y. City Dep't of Educ., 2015 U.S. Dist. LEXIS 127076, *151-53 (E.D.N.Y. Feb.
    19, 2015) ................................................................................................................................ 19

Stewart v. United States I.N.S., 762 F.2d 193, 199-200 (2d Cir. 1985) ....................................... 15

Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27, 29 (2d Cir. N.Y. 1995)....................... 14

Weingarten v. Board of Education, 591 F.Supp.2d 511 (S.D.N.Y. 2008)................................... 25

Weingarten v. Board of Education, 680 F.Supp. 2d 595 (S.D.N.Y. 2010)................................... 25

Weintraub v. Board of Education of the City School District of the City of New York, 593 F.3d
    196, 201 (2d Cir. 2010)......................................................................................................... 17

Williams v. Rosenblatt Sec. Inc., 136 F. Supp. 3d 593, 619 (S.D.N.Y. 2015)............................ 12

Yerdon v. Henry, 91 F.3d 370, 378 (2d Cir. 1996)...................................................................... 19

**STATUTES**

2 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 .......................................................... 1

New York City Charter Section 2604(b)(3).................................................................................. 24

N.Y. Edu. L. 3020-a..................................................................................................................... 13

42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ........................................................ 1

## PRELIMINARY STATEMENT

Plaintiff, a Principal currently employed by the New York City Department of Education ("DOE") at Park Slope Collegiate ("PSC"), brings this action pursuant to 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964 ("Title VI") and the New York City Human Rights Law ("NYCHRL") against the DOE and Carmen Farina (collectively "defendants"). Specifically, plaintiff asserts that defendants instituted an investigation into allegations of misconduct filed against her in retaliation for a January 10, 2017 e-mail to the Chief Executive Officer of the DOE's Division of School Support Services and a High School Superintendent in which she asserted that there were inequities in the allocation of PSAL sports teams on the John Jay Campus.

Plaintiff now moves for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure seeking an order "to halt the retaliatory investigation pending the outcome of this litigation." As fully explained below, because plaintiff does not allege, let alone establish, that any alleged harm she may suffer absent the requested injunction is irreparable nor has she established a likelihood of success on the merits of her claim, her motion must be denied.

## STATEMENT OF FACTS

The Office of Special Investigations ("OSI") is one of two internal DOE investigatory units; the Office of Equal Opportunity ("OEO") is the other. See Declaration of Charity Guerra, dated May 1, 2017 ("Guerra Decl."), at ¶ 5. OSI conducts investigations of allegations it intakes directly and those which the Special Commissioner of Investigation for the New York City School District ("SCI") refers to OSI. Id. SCI is an investigatory agency independent of the DOE established in June 1990 pursuant to Mayoral Executive Order No. 11. Id. SCI is part of the New York City Department of Investigation, and its sole function is to

investigate allegations of corruption, conflicts of interest, unethical conduct and other misconduct in the DOE.  Id.  Pursuant to Section 3 of the Executive Order, SCI may refer matters involving unethical conduct or misconduct to the DOE for investigation, disciplinary or other appropriate action.  Id.  OSI receives and investigates matters SCI refers to the DOE.  Id. at ¶ 7.  Pursuant to the DOE's Chancellor's Regulation A-420(IV)(E) and A-421(IV)(E) respectively, the only complaints OSI intakes directly are those involving allegations of corporal punishment and verbal abuse.  Id.

Upon receiving a complaint, either directly or as a result of a referral from SCI, OSI reviews the allegations in the complaint to determine whether there is sufficient information to conduct an investigation into the allegations.  Id. at ¶ 9.  If there is, the complaint is assigned to an investigator.  Id.  If there is not sufficient information in the complaint, OSI attempts to gather additional information in an effort to determine whether an investigation is necessary.  Id. at ¶ 10.

On May 12, 2016 a confidential complainant lodged a complaint with SCI against plaintiff alleging that plaintiff was actively recruiting students to participate in a political party. See Id. at ¶ 11.  On May 13, 2016, SCI referred the complaint to OSI and, as is often the case with complaints without OSI knowing the identity of the complainant that contain insufficient information upon which to, at that time, conduct an investigation, on May 17, 2016, OSI marked the complaint as closed as there was insufficient information at the time to conduct an investigation.  Id. at ¶¶ 12, 13.

Thereafter, on December 20, 2016, the confidential complainant provided SCI with further information regarding the complaint against plaintiff.  Id. at ¶ 14.  The additional information received included allegations that plaintiff's husband filmed a documentary for the

Len Ragizin Foundation, an organization associated with a political organization called the Progressive Labor Party.  Id.  The confidential complainant alleged that plaintiff's husband is the president of the organization, and students and staff were included in the documentary without their authorization.  Id.  Furthermore, the complainant alleged that plaintiff engaged in a conflict of interest when the documentary was screened at PSC and a $20 admission fee was charged. Id. at ¶ 15.  Finally, the complainant alleged that academic policy is being violated at the school because a mandated course is not being taught, a bake sale was held to raise funds for a May Day march, and students who voice opinions different from those of plaintiff are not allowed to express them. Id. at ¶ 16.

Thereafter, on January 25, 2017, SCI sent the additional information it had received from the confidential complainant to DOE.  Id. at ¶ 17.   On February 1, 2017, based on the new information received from the confidential complainant, OSI re-opened its investigation. Id. at ¶ 18.  Moreover, the additional information provided by the complainant provided enough information such that the complainant's identity was known to OSI and therefore OSI was now able to interview the complainant in connection with the complaint.  Id. at ¶  19.  At this time, OSI was not aware that plaintiff had sent the November 29, 2016 and/or January 10, 2017 emails regarding sports programs at PSC.  Id. at ¶ 20.

On February 1, 2017, OSI assigned the complaint to Confidential Investigator Michelle Archie ("Archie").  Id. at ¶ 21.  On March 2, 2017, Archie conducted a witness interview at PSC and on March 13, Archie conducted another witness interview at OSI at which Arthur Solomon ("Solomon"), a union representative from the United Federation of Teachers ("UFT") was present.  Id. at ¶¶ 22, 23.  Also in March 2017, Archie interviewed the CC at OSI. Solomon and Robert Levine, another UFT representative were present.  Id. at ¶ 24.  A witness

interview that had been scheduled for April 25th was cancelled as were interviews scheduled for Monday, May 1st. Id. at ¶ 25.

On or about March 22, 2017, the DOE received a cease and desist letter dated March 22, 2017, from plaintiff's attorneys alleging that OSI's investigation was retaliatory and therefore it must be stopped. Id. at ¶ 27. On March 27, 2017, the DOE responded to plaintiff's counsel's March 22, 2017 letter to advise plaintiff that the substance of the complaint that OSI is investigating is unrelated to plaintiff's complaint of racial segregation involving the sports teams at the John Jay Campus of which PSC is a part. Id. at ¶ 28.

On March 30, 2017, OSI received a complaint alleging that on March 29, 2017, plaintiff held a staff meeting at the school where she discussed the fact that she was being investigated by OSI. Id. at ¶ 28. She stated that her attorneys had sent a cease and desist letter to the DOE regarding the investigation because it was retaliatory. Id. She then read the DOE's response to that letter. Id. However, because OSI can only directly take complaints of corporal punishment and verbal abuse, this allegation involving interference with an OSI investigation was reported to SCI. Id. at ¶ 29. SCI subsequently referred the allegation back to OSI for investigation. Id. On April 6, 2017, the DOE sent plaintiff's attorneys a second letter providing more detail into the allegations against plaintiff. Id. at ¶ 30.

OSI has a responsibility to examine these allegations which, if proven true, violate, DOE academic policy, Chancellor's Regulations D-130 and D-180 which prohibit the use of school facilities, equipment and supplies on behalf of political organizations, Chancellor's Regulation C-110, regarding conflicts of interest, and the City of New York's Conflict of Interest laws. Id. at ¶ 31. Pursuant to Chancellor's Regulation D-130 (I)(C)(1), "all school personnel shall maintain a posture of complete neutrality" with respect to political candidates and while on

duty or in contact with students may not display items advocating on behalf of a particular political organization. Id. at ¶ 32. Fundraising on school grounds during school hours on behalf of any political organization is expressly prohibited under D-130 (I)(C)(2). Id. D-130(III)(A) states that any employee who violates the provisions of D-130 is subject to discipline. Id. Pursuant to Chancellor's Regulation D-180, Section XI, "[n]o rallies, forums, programs, etc., on behalf of, or for the benefit of any elected official, candidate, candidates, slate of candidates, or political organization/committee may be held in a school building after school/business hours except as" expressly permitted by the regulation. Id. at ¶ 33. If substantiated, these allegations also violate portions of the Conflicts of Interest Law, including Section 2604(b)(3), contained in Chapter 68 of the New York City Charter which prohibits DOE employees from utilizing their DOE position for private gain. Id.

The purpose of OSI's investigation is to gather information from individuals including plaintiff to determine whether in fact any of the regulations or legal provisions stated above have been violated. Id. at ¶ 35. Any information plaintiff were to provide to OSI would be carefully evaluated and considered. Id. Additionally, DOE employees are entitled to union representation during their interviews. Id. at ¶ 36. Finally, except in cases involving certain serious misconduct, including sexual abuse, not relevant here, DOE does not seek to impose discipline on a DOE employee who is being investigated while the investigation is ongoing. Id. at ¶ 41. Upon conclusion of an investigation substantiating an allegation, OSI refers its findings to the supervisor of the subject of the investigation, for whatever disciplinary action the supervisor deems appropriate. Id. The discipline imposed varies and can include no action whatsoever, an oral or written warning, a letter to file, or disciplinary charges pursuant to New York Education Law § 3020-a. Id.

Plaintiff filed her Complaint and motion for a temporary restraining order and preliminary injunction on April 28, 2017.  Plaintiff alleges that the OSI investigation was instituted in retaliation for sending a January 10, 2017 email to Eric Goldstein, the CEO of the DOE's Office of School Support Services (food services, pupil transportation and PSAL) and High School Superintendent Mark Prayor.  In that email, she asserted that PSAL sports teams were inequitably allocated among the schools comprising the John Jay Campus. Plaintiff stated in that email that four schools, with a combined enrollment of 1,859 students and with a high percentage of Black and Hispanic students, had nine sports teams, and that the Millennium High School programs, which had combined enrollment of 1,261 students, with a high percentage of White students, had 17 PSAL sports teams.  See Complaint, ¶55-56, 59.  In her complaint, plaintiff seeks a temporary restraining order and preliminary injunction "requiring the DOE to immediately cease and desist the retaliatory investigation against her that has created a chilling effect over plaintiff and other DOE employees."  Id. at ¶ 6.

On April 28, 2017, the Court ordered that defendants submit an opposition to plaintiff's motion for a preliminary injunction by 10:00 a.m. on May 1, 2017 and that the parties appear for a hearing on plaintiff's motion at 3:00 p.m. on that date.[1]

## ARGUMENT

## PLAINTIFF CANNOT MEET THE REQUIREMENTS FOR OBTAINING A PRELIMINARY INJUNCTION

To obtain a preliminary injunction, plaintiff must show: (1) that she will be irreparably harmed if the injunction is not granted; and (2) either (a) a likelihood of success on

---

[1] Defendants note that they have not been served with the Complaint or plaintiff's motion for a temporary restraining order and preliminary injunction.  Counsel for defendants was provided with a courtesy copy of these papers.  As such, while defendants submit this opposition to plaintiff's motion and will appear at the hearing as ordered by the Court, in doing so, defendants do not waive proper service of the Complaint and/or plaintiff's motion.

the merits, or (b) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in her favor.  Forest City Daly Hous., Inc. v. Town of North Hempstead, 175 F.3d 144, 149 (2d Cir. 1999).  Here, where plaintiffs seek a prohibitory injunction staying governmental action pursuant to a statutory or regulatory scheme, namely the enforcement of certain sections of Chancellor's Regulation and the New York City Conflict of Interest laws, plaintiff must establish, in additional to irreparable injury, a likelihood that she will succeed on the merits of her claims.  Mastrovincenzo v. City of New York, 435 F.3d 78, 89 (2d Cir. 2006).  As set forth below, plaintiff's motion for a preliminary injunction should be denied because she cannot show that she will suffer irreparable harm if the injunction is not granted and she cannot establish a likelihood of success on the merits of her claims.

**A.    Plaintiff Cannot Demonstrate that She Will Suffer Irreparable Harm if the Injunction is Not Granted**

In making a showing of irreparable harm, plaintiff must demonstrate that there is a threat of actual injury for which available legal remedies are inadequate.  See Score, Inc. v. Cap Cities/ABC, Inc., 724 F. Supp. 194, 198 (S.D.N.Y. 1989).  "Irreparable injury is one that cannot be redressed through a monetary award.  Where money damages are adequate compensation a preliminary injunction should not issue." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990); Sampson v. Murray, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absences of the stay, are not enough).

The Second Circuit has held that in a First Amendment retaliation action by a public employee, the employee must "allege a clearcut infringement of first amendment rights, which, absent preliminary injunctive relief, either has occurred or will occur in the future."

American Postal Workers Union v. United States Postal Service, 766 F.2d 715, 722 (2d Cir. 1985).   A showing of theoretical or conjectural harm is insufficient.  See Latino Officers Association v. Safir, 170 F.3d 167, 171 (2d Cir. 1999).   Moreover, plaintiff "must establish a causal link between the injunction sought and the alleged injury, that is, the plaintiff must demonstrate that the injunction will prevent the feared deprivation of free speech rights."  Bronx Household of Faith v. Bd. of Edu., 331 F.3d 342, 350 (2d Cir. 2003).

        In the present case, Plaintiff's Memorandum of Law in Support for Temporary Restraining Order and Preliminary Injunction ("Plaintiff's Memo.") identifies two alleged "irreparable harms" that flow from a continued investigation: (1) "plaintiff will be forced to discontinue [complaints of discrimination] in order to ensure that no new investigations are commenced against her;" and (2) "plaintiff will be terminated from her employment at the end of the investigation."  Plaintiff's Memo. at 7.  Neither of these speculative alleged "harms," warrant the extraordinary remedy of granting a preliminary injunction.

## 1. Plaintiff Has Not Established that the OSI Investigation Creates a Chilling Effect

        Plaintiff claims she will suffer irreparable harm if the OSI investigation continues because it will have a "chilling effect" on her future reporting of alleged discriminatory practices.  While violations of the First Amendment may be considered irreparable injuries for the purposes of a preliminary injunction, see Bery v. City of New York, 97 F.3d 689, 693 (2d Cir. 1996), courts treat claims alleging First Amendment violations differently depending on the nature of the alleged restriction on speech.  See Bronx Household of Faith, 331 F.3d at 349. "Where a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed."  Id.  However, "in instances where a plaintiff alleges injury from a rule or regulation that may only potentially affect speech, the plaintiff must

establish a causal link between the injunction sought and the alleged injury." Id. at 350.  In such instances, the plaintiff must "establish[] an actual chilling effect."  Id. at 349 (emphasis added). Therefore, allegations of a "subjective chill" of First Amendment Rights "are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Latino Officers Association, 170 F.3d at 170.

Plaintiff does not allege that the DOE has promulgated some rule or regulation that is directly restricting her speech; rather, her argument that is that the OSI investigation would chill her from making future complaints of alleged discriminatory actions.  It is important to note at the outset that this potential "chilling" of hypothetical reporting does not suffice as a "clearcut infringement" of her First Amendment rights.  Rather, it is merely conclusory statement about some hypothetical speech she may engage potentially engage in.  This is not sufficient to warrant a preliminary injunction.  See American Postal Workers Union, 766 F.2d at 722 (conclusory assertion that an alleged retaliatory termination "chilled the will of" plaintiff and other employees was insufficient to demonstrate a "clearcut infringement" on First Amendment rights).

Courts in the Second Circuit have generally denied preliminary injunction motions seeking a reversal of an allegedly adverse employment action[2] wherein the alleged irreparable harm was the chilling of First Amendment rights because the threat of disciplinary action remains at the close of litigation regardless.  See Id. ("We fail to understand how a chilling of the right to speak or associate could logically be thawed by the entry of an interim injunction, since the theoretical chilling of protected speech … stems not from the interim discharge, but from the threat of permanent discharge, which is not vitiated by an interim

---

[2] Furthermore, as fully explained in Section C(1)(a) below, the OSI investigation does not even qualify as an adverse employment action.

injunction..”); Derrick Piercy v. FRB, 2003 U.S. Dist. LEXIS 379, *10-12 (S.D.N.Y. Jan. 10, 2003)(denying preliminary injunction to reinstate the plaintiffs during the pendency of the litigation because the threat of termination at the conclusion of the case remained).   Here, plaintiff has failed to allege – let alone prove – that halting the investigation would somehow “thaw” the chill of her First Amendment rights when the “threat” of disciplinary action at the conclusion of this litigation remains.

In evaluating whether a plaintiff can demonstrate an actual chill of protected speech, the Second Circuit looks to whether the speech at issue continued in the wake of the allegedly retaliatory action.  See Curley v. Village of Suffern, 268 F. 3d 65 (2d Cir. 2001)(the fact that the plaintiff continued to engage in protected activity after the alleged retaliatory act demonstrated that he could “show no change in his behavior” and therefore had “quite plainly shown no chilling of his First Amendment right”); see also Greer v. Mehiel, 15 Civ. 6119 (AJN), 2016 U.S. Dist. LEXIS 22588 (S.D.N.Y. Feb. 24, 2016)(denying a preliminary injunction where the plaintiff continued his protected speech after the alleged retaliation began).  Here, plaintiff’s own affidavit demonstrates that she has continued to publically oppose what she believes to be unlawful practices despite the existence of the OSI investigation.  See Plaintiff’s Affidavit, dated April 27, 2017, ¶ 42.  Therefore it is clear that the existence of the OSI investigation has not actually “chilled” her First Amendment rights to engage in allegedly protected speech.

Plaintiff further argues that the “other PSC employees have been chilled from” engaging in protected speech.  Plaintiff’s Memo. at 8.  However, plaintiff’s Affidavit and evidence demonstrate otherwise.  Plaintiff asserts in her affidavit that on March 16, 2017, the Assistant Principal of PSC, Carla Laban, publicly stated at a PTA meeting that plaintiff was being retaliated against for engaging in protected speech.  Plaintiff’s Affidavit at ¶ 33.  Ms.

Laban, who is also represented by plaintiff's counsel, made these statements despite having knowledge of the OSI investigation and after speaking with the OSI investigator. Id. at ¶¶ 32, 33. Similarly, while plaintiff alleges that the OSI investigation has already "chilled" protected speech by teachers employed at PSC, in connection with this motion, plaintiff has submitted five affidavits from PSC teachers expressing their opposition to the OSI investigation. See Affidavits of Louise Bauso, Maysa Jarara, Lisa Miller, Jill Sandusky, Rahsan Williams.

Plaintiff also argues that the OSI investigation would deter PSC employees from providing testimony favorable to plaintiff in this action. This argument rings hollow based on the evidence submitted by plaintiff. Indeed, the willingness of five teachers to submit testimony opposing the allegedly retaliatory OSI investigation and in support of the instant motion completely negates plaintiff's argument that the OSI investigation would chill participation of PSC employees in the instant action. In fact, Lisa Miller testifies that she submits her affidavit in opposition to the OSI investigation and in support of plaintiff despite the fact that she has received a notice requiring her to speak with the OSI investigatory. See Affidavit of Lisa Miller, dated April 25, 2017, ¶ 8, ¶ 9.

Similarly, plaintiff contends that on April 11, 2017, the PSC PTA sent a letter signed by 450 individuals, including parents, students and members of the community, in support of plaintiff and in opposition to the OSI investigation. See Plaintiff's Affidavit at ¶ 46. Given that plaintiff's own evidence establishes that PSC employees, as well as the PSC community, are already participating in this action, and according to plaintiff are vocal in their opposition to the OSI investigation despite the existence of the investigation, there is absolutely no basis to

conclude that the OSI investigation will have a chilling effect on witness participation in this action.[3]  Indeed, the cases cited to by plaintiff demonstrate as much.

In Hui Lin v. Great Rose Fashion, Inc., 2009 U.S. Dist. LEXIS 46726 (E.D.N.Y. June 2, 2009), which is relied upon by plaintiff, the Court found no "actual chill" of witness participation or witness intimidation despite the fact that the defendants announced to all employees that the plaintiffs had filed a lawsuit against them and that as a result of the plaintiffs' lawsuit the employees may be terminated.  See Hui Lin, 2009 U.S. Dist. LEXIS 46726 at *62-64. The Court held that these "overt retaliatory actions" only "raise[d] the specter of witness intimidation" but nevertheless did not rise to the level of "actual chill" as mandated by the Second Circuit.  Id.  Here, there is absolutely no evidence, admissible or otherwise, that even comes close to the "overt" retaliation alleged in Hui Lin, which, nonetheless, did not suffice as actual chill.  See id.; see also Williams v. Rosenblatt Sec. Inc., 136 F. Supp. 3d 593, 619 (S.D.N.Y. 2015).

### 2.   The Possibility of Termination is Not an Irreparable Harm

Setting aside plaintiff's baseless "chilling" argument, plaintiff has failed to explain how *any* harm, let alone irreparable harm, would result from the OSI investigation itself. To be sure, the investigation serves to provide plaintiff, and any participating witnesses, the opportunity to provide their position to OSI in advance of any factual conclusions by OSI, let alone any disciplinary action being taken by the DOE.  During the investigation, plaintiff will be able to present her response to the allegations filed against her as well as provide any

---

[3] Plaintiff also argues there are some unidentified PSC employees who have "expressed a reluctance to appear as witnesses on her behalf."  See Plaintiff's Memo. at 10.  Plaintiff cites to no admissible evidence to support this contention.  Rather, plaintiff seeks to support this contention via inadmissible hearsay statements contained in the affidavits of several teachers regarding statements made to the affiants by unidentified individuals.  See Affidavit of Louise Bauso, dated April 20, 2017 at ¶ 7; Affidavit of Rahsan Williams, dated April 25, 2017, at ¶ 8.

documentation in support of her position.  Simply put, there is no basis to enjoin an investigation that, on its own, has no negative consequences to plaintiff and in fact allows her to present her position to OSI.

In any event, plaintiff's purported belief that she may ultimately be terminated at the end of the investigation is both speculative and unpersuasive.  Absent serious allegations of particular kinds of misconduct, such as sexual abuse of students, DOE des not impose any discipline on the subject of an OSI investigation during the pendency of the investigation.  See Guerra Decl. at ¶ 41.  Upon conclusion of an investigation substantiating an allegation, OSI refers its findings to the supervisor of the subject of the investigation, for whatever action the supervisor deems appropriate.  Id.  As previously stated, the action varies and can include no action whatsoever, an oral or written warning, a letter to file or disciplinary charges under Education Law § 3020-a.  Id.

As such, plaintiff cannot contend that her termination is "imminent," particularly given that, as a tenured DOE Principal, defendants would be required to comply with New York. Education Law § 3020-a requirements in advance of taking any disciplinary action against her. See N.Y. Edu. L. 3020-a (requiring charges and a hearing in advance of disciplinary action against a tenured teacher or principal).  The employee would then have the opportunity to challenge an adverse arbitration decision via an Article 75 proceeding in State Court. Accordingly, given the due process available to plaintiff in advance of DOE taking any disciplinary action against her, plaintiff certainly cannot argue that her termination – or any disciplinary action – is imminent.  See Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995)(vacating the grant of a preliminary injunction where the District Court accepted "evidence of speculative and attenuated injuries").

However, even if plaintiff were to be terminated at some unspecified point in the future, "the requisite irreparable harm is not established in employee discharge cases by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown."  Holt v. Continental Group, 708 F.2d 87, 90-91 (2d Cir. 1983), cert. denied, 465 U.S. 1030 (1984); see also Guitard v. United States Sec'y of Navy, 967 F.2d 737, 742 (2d Cir. 1992) ("injuries that generally attend a discharge from employment — loss of reputation, loss of income and difficulty in finding other employment — do not constitute the irreparable harm necessary to obtain a preliminary injunction")(internal citations omitted); Savage v. Gorski, 850 F.2d 64, 68 (2d Cir. 1988) (the harm of an unlawful discharge is "plainly reparable").

Furthermore, in the event that plaintiff's hypothetical termination were found by this, or another, Court to be unlawful, she could be fully compensated for any of the alleged economic harms she may have suffered, including back pay, pension contributions and credits, and out of pocket medical expenses.  See Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr., 697 F.3d 209, 213 (2d Cir. 2012) ("Back pay is an amount equal to the wages the employee would have earned from the date of discharge to the date of reinstatement, along with lost fringe benefits such as vacation pay and pension benefits.')(internal quotations omitted); E.E.O.C. v. Joint Apprenticeship Comm. of Joint Indus. Bd. of the Elec. Indus., 164 F.3d 89, 101 (2d Cir. 1998) ("An award of back pay . . . should ordinarily consist of lost salary, including anticipated raises, and fringe benefits.").

Plaintiff's claim that any adverse action taken against her could potentially have a "devastating" effect on her career is exactly the type of speculative harm that Courts have held does not warrant the issuance of a preliminary injunction.  See Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27, 29 (2d Cir. N.Y. 1995) ("Irreparable harm is an injury that is not remote

or speculative but actual and imminent."); Jayaraj, 66 F.3d at 39 (holding that "any future injury inflicted by such criticism, if legally cognizable at all, would be compensable through damages.") citing Stewart v. United States I.N.S., 762 F.2d 193, 199-200 (2d Cir. 1985)(reputational injury not sufficient to justify injunctive relief).

Finally, plaintiff's reliance on Mullins v. City of New York, 634 F. Supp. 2d 373 (S.D.N.Y. 2009) is misplaced.  In Mullins, the plaintiffs sought to enjoin the NYPD's Internal Affairs Bureau from interrogating the plaintiffs in a lawsuit brought pursuant to the Fair Labor Standards regarding their deposition testimony in that same action.  See Mullins, 634 F. Supp. at 394.  As such, in Mullins the alleged "speech" upon which the First Amendment claim was premised had not yet occurred.  In contrast, here, the alleged protected speech has already occurred.  Moreover, plaintiff in her motion is asking the Court to decide the ultimate issue in controversy by declaring that the OSI investigation is unlawful.  Mullins warned against this approach, holding that "in addressing the merits of the ultimate case [underlying a motion for a preliminary injunction], a court is not called upon finally to decide the merits of the controversy."  Id. at 384 (internal quotations omitted)(alternation in original).  In seeking to enjoin the OSI investigation in its entirety, plaintiff is asking the Court to rule on the merit of her claim that the investigation itself violates the First Amendment, Title VI and the NYCHRL.  As noted by the Court in Mullins this is not the purpose of a preliminary injunction.  If plaintiff were to prevail in this litigation, as noted above, any harm stemming from any potential consequence of the investigation is reparable.

Accordingly, plaintiff cannot meet the requirement of irreparable harm necessary for obtaining a preliminary injunction against defendants.

**B.      Plaintiff Cannot Establish a Likelihood of Success on the Merits of Her Claims.**

Because plaintiff has failed to establish that she would suffer irreparable harm in the absence of an injunction, the Second Circuit has held that there is "no need to reach the second portion of the preliminary injunction analysis." Jayaraj, 66 F.3d at 38-39.  Nevertheless, to the extent the Court considers the second prong of the analysis, plaintiff has not sufficiently shown a likelihood of success on the merits of her claims so as to warrant such an "extraordinary and drastic remedy." Munaf v. Geren, 553 U.S. 674, 689 (2008).

To state a prima facie case for First Amendment retaliation, a public employee must demonstrate that: (1) she has engaged in protected First Amendment activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  See Gordon v. City of New York, 612 Fed. Appx. 629, 630-31 (2d Cir. 2015)(internal quotations omitted).[4]

### 1.      Plaintiff Cannot Establish Her Speech Was Protected

The determination of whether a public employee's speech is protected is composed of a two-step inquiry.  First the Court must determine "whether the employee spoke as a citizen on a matter of public concern." Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015) (internal quotations omitted) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). Within this first step, the Court must consider two additional subquestions: "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." Id. (some internal quotations omitted). "If the answer to either question is no, that is the end of the matter." Id.  "If, however," both

---

[4] Given that the standards for pleading a retaliation claim under Title VI and the NYCHRL are substantially similar, defendants address them together.  See Diaz v. City Univ. of N.Y., 2015 U.S. Dist. LEXIS 155496 (S.D.N.Y. Nov. 16, 2015)(Title VI);.Brightman v. Prison Health Serv., Inc., 108 A.D.3d 739, 740 (2d Dep't 2013) (NYCHRL).

questions are answered in the affirmative, the [C]ourt then proceeds to the second step of the inquiry," where it asks "whether the relevant governmental entity 'had an adequate justification for treating the employee differently from any other member of the public based on the government's needs as an employer.'" Id. (quoting Lane v. Franks, 134 S.Ct. 2369, 2380 (2014)).

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." Garcetti, 547 U.S. at 421. "[S]peech made 'pursuant to' a public employee's job duties," is "'speech that owes its existence to a public employee's professional responsibilities,'" and is not protected by the First Amendment. Weintraub v. Board of Education of the City School District of the City of New York, 593 F.3d 196, 201 (2d Cir. 2010) (quoting Garcetti, 547 U.S. at 421). In Weintraub, the Second Circuit found that a teacher's formal grievance criticizing a supervisor's failure to discipline a student had been made "pursuant to his official duties because it was part-and-parcel of his concerns about his ability to properly execute his duties as a public school teacher-- namely, to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning." Id. At 203. (internal quotations and citations omitted). Applying the Garcetti standard, the Second Circuit held that the teacher's First Amendment retaliation claim failed. The court noted that its conclusion was additionally supported by the fact that the form of speech at issue--an employee grievance made pursuant to school district policy--had "no relevant citizen analogue." Id. "In making the determination as to whether an employee spoke pursuant to his or her official duties, courts in the Second Circuit "focus [] on the subject, manner, manner, and context of the speech to determine whether it relates to topics that are indispensable prerequisites to the effective performance of the speaker's primary

employment responsibility, and thus not entitled to First Amendment protection." Dillon v.
Suffolk County Department of Health Services, 917 F.Supp. 2d 196, 208-09 (E.D.N.Y. 2013)
(internal quotations omitted).  Speech may be pursuant to a public employee's job duties "even
though it is not required by, or included in the employee's job description, or in response to a
request by an employer." Weintraub, 593 F.3d at 203.

   In the present case, it is clear from plaintiff's January 10, 2017 e-mail to Eric
Goldstein, the Chief Executive of the DOE's Office of School Support Services, and Mark
Prayor, High School Superintendent that her statements were made pursuant to her official duties
as the principal of PSC.   In the first line of her e-mail, plaintiff states that "I am writing to
request your assistance in uniting the PSAL sports teams on the John Jay Campus in Brooklyn."
See Exhibit 3 annexed to plaintiff's affidavit.  The e-mail then goes on to discuss what plaintiff
believes to be an inequity in the allocation of PSAL sports teams on the John Jay Campus, refer
to her discussions with the other principals of schools on the John Jay Campus, and overall,
discusses opportunities for students on the Campus, including, of course, PSC, to participate in
extracurricular sports.  Id.  Similarly, plaintiff's November 29, 2016 email involves an incident
that occurred at a PSC volleyball game.  See Exhibit 2 annexed to plaintiff's affidavit.  These e-
mails are speech that owe their existence to plaintiff's professional responsibilities, and plaintiff
made that speech as part of her responsibilities as principal, not as a citizen. Accordingly,
plaintiff cannot establish likelihood of success on her First Amendment claim, as that claim
should be dismissed.

   2.  **Plaintiff Cannot Establish an Adverse Employment Action**

   Plaintiff argues that the commencement of the OSI investigation alone constitutes
an adverse employment action.  However, courts of this Circuit have held that investigations

alone are not adverse employment actions in the context of retaliation claims.  See Yerdon v. Henry, 91 F.3d 370, 378 (2d Cir. 1996) (employee cannot be adversely affected by charges of wrongdoing in the workplace unless the charges are decided against him); Spaulding v. N.Y. City Dep't of Educ., 2015 U.S. Dist. LEXIS 127076, *151-53 (E.D.N.Y. Feb. 19, 2015)(false accusations that resulted in an OSI investigation did not constitute a retaliatory adverse employment action because there was no discipline or other negative consequences stemming from the investigation itself); Cahill v. O'Donnell, 75 F. Supp. 2d 264, 274 (S.D.N.Y.1999); Garcia v. West, 98 Civ. 3905, 1999 U.S. Dist. LEXIS 15274 at *4 (S.D.N.Y. Sept. 30, 1999).

Here, plaintiff has not shown or even alleged that there has been some adverse action attendant to the OSI investigation.  Furthermore, as noted above, absent serious allegations of misconduct, including those involving sexual abuse, DOE does not impose discipline on the subject of an OSI investigation during the pendency of the investigation.  See Guerra Decl. at ¶ 41.  Here, given that the OSI investigation has not yet concluded and no discipline has been imposed on plaintiff or would be imposed during the pendency of the investigation, there has been no action that could even arguably be construed as adverse.

Moreover, the Second Circuit has held that an employer's investigation may constitute a cognizable retaliatory adverse action "if carried out so as to result in a hostile work environment, constructive discharge or other employment consequences of a negative nature" or conducted in an "egregious manner."  Cox v. Onondaga Cty. Sheriff's Dep't, 760 F.3d 139, 147 (2d Cir. 2014).  None of these elements apply here as there is absolutely no evidence in the record suggesting that the OSI investigation is being "carried out" in such a way as to create negative employment consequences.  Rather, the allegation is simply that the mere existence of the investigation is retaliatory.  This is insufficient to establish a retaliatory adverse action.

To this end, the only "evidence" put forth by plaintiff of how OSI investigations are generally conducted comes from the Affirmation of plaintiff's counsel, Maria Chickedantz, dated April 28, 2017.  Much of plaintiff's argument concerning whether the OSI investigation is an adverse action is taken verbatim from Ms. Chickedantz's affirmation the majority of which attests to her personal experiences with OSI investigations.  Compare Affirmation of Maria L. Chickedantz, dated April 28, 2017 with Plaintiff's Memo. at 12-14.  For example, in her affirmation, Ms. Chickedantz:  (1) attests to the content of conversations between OSI investigators and unidentified witnesses in unrelated investigations; see id. ¶ 4; (2) purports to attest to what a witness in an OSI investigation knew or did not know about the investigation (see id.); (3) purports to attest to what a DOE employee may come to know at the conclusion of an OSI investigation (see id.); and (4) purports to attest what actions an employee may "avoid" as a result of his or her participation in an OSI investigation.  Id.

By injecting her own personal testimony in to plaintiff's action, plaintiff's counsel is now offering herself as a fact witness in this action.  This is particularly troubling and inappropriate given that Ms. Chickedantz's testimony is relied upon extensively by plaintiff in support of her motion for a preliminary injunction.  To add insult to injury, much of what Ms. Chickedantz testifies to in her affidavit constitutes inadmissible hearsay and should, in any event, be disregarded by the Court.

### 3.  **Plaintiff Cannot Establish a Causal Connection**

Importantly, plaintiff has not established or even alleged that SCI or OSI was aware of her November 26, 2016 and/or January 10, 2017 email.  The Complaint and Plaintiff's Affidavit are completely devoid of any allegations pertaining to how OSI or SCI would have become aware of her emails.  In contrast, defendants' evidence demonstrates that OSI was

completely unaware of plaintiff's email and that it therefore played absolutely no role in the OSI investigation process.   <u>See</u> Guerra Decl. at ¶ 20.   Furthermore, while plaintiff makes the argument that the complaint was dormant until after her January 10, 2017 email, this allegation is not supported by the facts.   Indeed, additional information was received by SCI from the confidential complainant on December 20, 2016 which revived the complaint against plaintiff and triggered the assignment of an investigator.   <u>Id.</u> at ¶¶ 14-18.

Moreover, both the original May 2016 complaint and the additional information provided by the confidential complainant in December 2016 were directed to SCI, which is an investigatory agency entirely independent from the DOE.   <u>See id.</u> at ¶ 11, 14.   Plaintiff presents absolutely no evidence demonstrating how an independent agency – against which plaintiff brings no claims – gained knowledge of her January 10, 2017 email such that it could then retaliate against her.

Even assuming plaintiff could demonstrate that the SCI and/or OSI had knowledge of her January 10, 2017 email prior to re-opening the investigation, she still cannot establish a causal connection between her emails and the re-opening of the investigation.   On May 12, 2016, a complaint lodged by a confidential complainant against plaintiff, alleging that plaintiff was actively recruiting students to participate in a political party.   <u>See id.</u> at ¶ 11.   If substantiated, this conduct would violate DOE Chancellor's Regulation D-130.   <u>Id.</u> at ¶ 31.   On May 13, 2016, SCI referred the complaint to OSI and, as is often the case with complaints without OSI knowing the identity of the complainant that contain insufficient information upon which to, at that time, conduct an investigation, on May 17, 2016, OSI closed the complaint pending receipt of further information.   <u>Id.</u> at  ¶¶ 12, 13.

Thereafter, on December 20, 2016, the confidential complainant provided SCI with further information regarding the complaint against plaintiff.  Id. at ¶ 14.  The additional information received from the confidential complainant included allegations that plaintiff's husband filmed a documentary for the Len Ragizin Foundation, an organization associated with the PLP.  Id.  The confidential complainant alleged that plaintiff's husband is the president of the organization, and students and staff were included in the documentary without their authorization.  Id.  Furthermore, the complainant alleged that plaintiff engaged in a conflict of interest when the documentary was screened at PSC and a $20 admission fee was charged. Id. at ¶ 15.  Finally, the complainant alleged that academic policy is being violated at the school because a mandated course is not being taught, a bake sale was held to raise funds for a May Day march, and students who voice opinions different from those of plaintiff are not allowed to express them. Id. at ¶ 16.

Thereafter, on January 25, 2017, SCI sent the additional information it had received from the confidential complainant to DOE and based on this information, on February 1, 2017, OSI re-opened its investigation.  Id. at ¶¶ 17, 18.  Moreover, the additional information provided by the confidential complainant provided enough information such that the complainant's identity was known to OSI and therefore OSI was now able to interview the complainant in connection with the allegations.  Id. at ¶ 29.

Plaintiff's claim here is that the mere fact of the investigation is retaliatory.  This argument does not hold water in light of the fact that the OSI investigation was originally opened eight months prior to the alleged protected activity.  Similarly, while plaintiff claims that her complaint laid dormant until after she sent her January 10, 2017 email, it is clear that the receipt of additional information from the confidential complainant – including information regarding

the complainant's identity – triggered the re-opening of the complaint and the assignment of an OSI investigator.  See id. at ¶¶ 17, 18, 21. Given this timeline, plaintiff cannot maintain a retaliation claim under any statute.  See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001)(affirming summary judgment on retaliation claim where alleged adverse action preceded protected activity).

Finally, plaintiff claims that she has "been an outspoken advocate against racism in general and racial segregation within the New York City public school system for many years," but that "this complaint [i.e. the January 10, 2017 email] was the first time [she] pressed the DOE to address a specific example of the DOE's unequal treatment of predominately Black and Latino students in relation to benefits provided to the schools."  Plaintiff's Affidavit at ¶ 3. This, however, is simply not the case.

Plaintiff avers that since she became Principal of PSC in 2010, she has actively and consistently spoken out to oppose, what she believes to be, "discriminatory education practices with the purpose or effect of racially segregating the school."  Plaintiff's Affidavit at ¶ 4; see also id. at ¶¶ 6-28.  To be sure, the first paragraph of the Complaint states that plaintiff has "dedicated her 13-year career to fighting race discrimination in society and in the New York City Public Schools."  See Complaint at ¶ 1.  Almost all of the plaintiff's "activism" has involved speaking out about instances in which she believed Black and Latino students were being treated differently than other students.  See id. at ¶¶ 8-28.  Taking plaintiff's allegations in her affidavit as true, plaintiff has, up until now, engaged in protected activity for seven years without any adverse action from the DOE.  Despite this, plaintiff would have the Court believe that her one email regarding sports programs was the true reason for the OSI investigation, rather than serious

allegations of misconduct lodged against her.  This defies logic and precludes a finding of a causal connection between plaintiff's alleged protected activity and the OSI investigation.

4. **Defendants Have a Legitimate, Non-Retaliatory Business Reason for Investigation Allegations of Wrongdoing by Plaintiff**

Even where a plaintiff can establish a *prima facie* claim, a defendant may avoid liability if it can demonstrate by a preponderance of the evidence that it would have taken the same allegedly adverse action regardless of the protected speech.  See Smith v. County of Suffolk, 776 F.3d 114, 119 (2d Cir. 2015).  Here, as noted above, the OSI investigation was prompted by an anonymous complaint lodged eight months prior to the alleged protected activity.  See Guerra Decl., at ¶ 11.  The anonymous complaint was deemed, at that time, to contain insufficient information to conduct an investigation and was closed pending receipt of further information.  Id. at ¶ 13.  Once additional information was received by SCI and transmitted to OSI, the investigation was re-opened.  Id. at ¶¶ 13-20.

All of the allegations of wrongdoing against plaintiff were made prior to her engaging in allegedly protected activity.  In sum, the allegations are: (1) actively recruiting students to participate in a political party in violation of Chancellor's Regulation D-130; (2) fundraising on school grounds for a political organization in violation of Chancellor's Regulation D-130 (I)(C)(2); (3) sponsoring programs on behalf of a political party on school grounds in violation of Chancellor's Regulation D-180, Section XI; and (4) utilizing her DOE position for private gain in violation of Chancellor's Regulation C-110 and Section 2604(b)(3) of the New York City Charter's prohibition on conflicts of interest.  Id. at ¶¶ 31-34.  Given the severity of the allegations made by the confidential complainant, OSI determined that an investigation is necessary to determine if any violations, in fact, occurred.  Id. at ¶ 10, 31.  As such, defendants

have demonstrated by a preponderance of the evidence that they would have – and in fact did – institute the OSI investigation regardless of the alleged protected speech.

Therefore, even if plaintiff could establish a *prima facie* claim of retaliation, defendants have articulated a non-retaliatory justification for the OSI investigation which precludes the grant of the instant motion.

## C.    The Balance of the Equities Tips in Favor of Defendants

Finally, the balance of the equities in this case tips heavily in favor of the DOE. As explained above, the allegations of misconduct pending against plaintiff are serious and, if substantiated, could constitute of a violation of not only the DOE's internal rules and regulations but also of the New York City Charter.   The DOE has a legitimate pedagogical interest in avoiding the injection of partisan politics in its schools.   One court, in rejecting a challenge to Chancellor's Regulation C-130 insofar as it prohibited teachers from wearing political buttons in the schools, found "a clear relationship between the Regulations ban of political buttons and defendants' legitimate pedagogical interests in avoiding: (1) the inevitable misperceptions among a minority of students that the views reflected by a teachers political button are endorsed by the school district and (2) the entanglement of their public educational mission with partisan politics." Weingarten v. Board of Education, 680 F.Supp. 2d 595 (S.D.N.Y. 2010) (in granting summary judgment in favor of defendants, the court referred to its earlier decision denying the plaintiff's motion for a preliminary injunction, Weingarten v. Board of Education, 591 F.Supp.2d 511 (S.D.N.Y. 2008)).   As such, balance of the equities tip in favor of the DOE being able to investigate serious allegations that, if substantiated, undermine a legitimate pedagogical interest.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiff's request for a temporary restraining order and preliminary injunction and grant further relief as the Court deems just and proper.

Dated:      New York, New York
            May 1, 2017


                              ZACHARY W. CARTER
                              Corporation Counsel of the
                                 City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-104
                              New York, New York 10007
                              (212) 356-4015
                              aoconnor@law.nyc.gov



                              By:      /s/
                                     Andrea O'Connor
                                     Assistant Corporation Counsel


Andrea O'Connor,
William Grey
   Of Counsel