17 Civ. 03136

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JILL BLOOMBERG,

                                          Plaintiffs,

-against-

THE NEW YORK CITY DEPARTMENT EDUCATION and CARMEN FARINA,

                                          Defendants.

**DEFENDANTS' SURREPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Andrea O'Connor*
*Tel:  (212) 356-4015*

**STATEMENT OF FACTS**

For a full statement of facts, defendants respectfully refer the Court to their Memorandum of Law in Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, dated May 1, 2017, the Declaration of Charity Guerra, dated May 1, 2017 and the Declaration of Charity Guerra, dated May 3, 2017.

**ARGUMENT**

**PLAINTIFF CANNOT MEET THE REQUIREMENTS FOR OBTAINING A PRELIMINARY INJUNCTION**

A.  **The Court Should Disregard Evidence and Argument Presented for the First Time on Reply**

In her reply, plaintiff submits an additional affidavit of both herself and her counsel, Maria Chickedantz.  Both of these affidavits contain extensive factual allegations asserted for the first time in plaintiff's reply.  While consideration of new evidence on reply is within the Court's discretion, courts of this District have frequently declined to consider evidence submitted first on reply.  See Wolters Kluwer Fin. Servs. Inc. v. Scivantage, 2007 U.S. Dist. LEXIS 27048 at *1 (S.D.N.Y. Apr. 12, 2007).

With respect to Plaintiff' Affidavit, dated May 2, 2017, and the exhibits annexed thereto ("Plaintiff's May 2 Affidavit"), there is no allegation that any of the facts asserted in this affidavit were somehow unavailable to plaintiff at the time she filed her motion, and initial affidavit, on April 28, 2017.  Indeed, all of the factual assertions set forth in Plaintiff's May 2 Affidavit go to "the heart of plaintiff's contention and should have been submitted with its opening brief."  New Look Party Ltd. v. Louise Paris Ltd., 2012 U.S. Dist. LEXIS 9539, at *4 n.4 (S.D.N.Y. Jan. 11, 2012).  As such, the Court should decline to consider Plaintiff's May 2 Affidavit.

As for Ms. Chickedantz's affidavit, defendants respectfully request that the Court also decline to consider this new evidence given the fact that it was, on its face, generated by counsel in an attempt to cure a deficiency identified by the Court at the May 1, 2017 hearing. Plaintiff's counsel must not be permitted to generate new evidence in support of her client's claim and then "sandbag" defendants with such evidence on reply. Wolters Kluwer Fin. Servs. Inc. v. Scivantage, 2007 U.S. Dist. LEXIS 27048 at *1 (declining to consider evidence presented for the first time on reply because it is "improper to sandbag one's opponent by raising matter in reply."). Alternatively, if the Court is inclined to consider Ms. Chickedantz's affidavit as evidence of an alleged chill, defendants respectfully request the opportunity to cross-examine Ms. Chickedantz regarding her affidavit.

With respect to the arguments raised for the first time in Plaintiff's Memorandum of Law in Further Support of Her Motion for a Preliminary Injunction ("Plaintiff's Reply"), while defendants do not, of course, take issue with those legal arguments that directly address the five questions posed by the Court at the May 1, 2017 hearing, defendants do take issue with plaintiff's challenge to the constitutionality of Chancellor's Regulation D-130. This argument is entirely new, is not in response to the Court's inquiries and, in any event, is not pled in the Complaint. For these reasons, the Court should decline to consider it in connection with plaintiff's instant motion. See Certain Underwriters at Lloyd's, London v. New Dominion, LLC, 2016 U.S. Dist. LEXIS 121133, *12, n.6 (S.D.N.Y. Sept. 7, 2016) citing RSM Prod. Corp. v. Fridman, 2007 U.S. Dist. LEXIS 58194 at *5 (S.D.N.Y. Aug. 10, 2007) ("An argument first raised in reply may be ignored.")(citation omitted); Johnson & Johnson v. Guidant Corp., 525 F. Supp. 2d 336, 359 (S.D.N.Y. 2007)("Arguments first raised in reply memoranda are not properly considered").

## B.   Plaintiff's Speech is Not Protected

Matthews v. City of New York, 779 F.3d 167 (2d Cir. 2015), contrary to the argument advanced by plaintiff, see Plaintiff's Reply at 2-6, provides no support for her argument that she spoke as a citizen, rather than pursuant to her official duties as principal of PSC. The Second Circuit's holding in Matthews rested on two key findings by the Court. First, that the plaintiff's speech was not made pursuant to his job duties as a Police Officer, in that that "Matthews speech to the Precinct's leadership in this case was not he was "employed to do," or "part-and-parcel of his regular job." Id. 779 F. 3d at 174 (citations omitted"). Thus, because Matthews "actual, functional job responsibilities did not include reporting his opinions on precinct-wide quota systems to the precinct commanders," see Matthews, 779 F.3d at 174, the Second Circuit determined that Matthews spoke as a citizen. Id. In contrast, here, the evidence in the record, which, as it happens, was offered by plaintiff, establishes conclusively that the speech of plaintiff at issue - - her January 10, 2017 e-mail—was made by plaintiff pursuant to her official duties as principal of PSC. Not only is that evident from the face of the e-mail itself, but plaintiff admits it: "[i]t is part of a principal's . . . regular job duties to request sports teams of the PSAL." See Plaintiff's May 2 Affidavit at ¶5. It also bears noting that plaintiff's request for additional sports was granted, in part. See Plaintiff's May 2 Affidavit at ¶ 10.

In Matthews, the Second Circuit stated that the "existence of a comparable civilian analog for Matthews speech also supports our conclusion that he spoke as a citizen." Id., 779 F.3f at 175. In Matthews, the civilian analogue was monthly meetings of the Precinct's Community Council that were open to the public. Here, there is no civilian analog to plaintiff's speech, and even if there were, the fact that her speech was made pursuant to her official duties, unlike the plaintiff in Matthews, renders the potential existence of a civilian analog irrelevant.

3

Remarkably, the so-called civilian analog identified by plaintiff is a flyer allegedly distributed by parents of PSC students and members of the community on February 13, 2017. Were the Court to accept this argument, which has no support in the applicable case law, a civilian analog would exist in almost every instance in which a public employee speaks, because members of the public are free to make the same comments outside of the work environment. Accordingly, plaintiff cannot establish a likelihood of success on the merits of her First Amendment claim, and that claim should be dismissed.

## C. Plaintiff Cannot Show an Actual Chill

Plaintiff's Reply incorrectly argues that irreparable harm may be presumed in this case and also incorrectly argues that she can look to the expressive activities of others to establish actual chill. See Plaintiff's Reply at 12. Plaintiff's errors stem from a failure to appreciate the differences between an overbreadth challenge to a rule or regulation directly limiting speech and her challenge which alleges actions that incidentally chill speech.

Plaintiff cites to Bronx Household of Faith v. Bd. of Educ. of City of New York for the proposition that irreparable harm may be presumed when there is a challenge to a rule or regulation that directly limits speech. See 331 F.3d 342, 349 (2d Cir. 2003). However, "in instances where a plaintiff alleges injury from a rule or regulation that may only potentially affect speech, the plaintiff must establish a causal link between the injunction sought and the alleged injury." Id. at 350. In such instances, the plaintiff must "establish[] an actual chilling effect." Id. at 349 (emphasis added). Here, plaintiff does not allege that the DOE has promulgated some rule or regulation that is directly restricting her speech; rather, her argument that is that the OSI investigation would chill her from making future complaints of alleged

4

discriminatory actions. As such, there is no presumption of irreparable harm and plaintiff must establish an actual chilling effect.

To this end, plaintiff's citation to Muchmore's Café, LLC v. City of NY 2016 U.S. Dist. LEXIS 139861 (E.D.N.Y. 2016) misses the mark. In Muchmore's Café, the Court was presented with an overbreadth challenge to a law, and "because [plaintiff] is challenging the Cabaret Law on overbreadth grounds, it can assert the rights of hypothetical third parties, including individuals and larger establishments not before the Court." Muchmore's Café, at *17; see also Farrell v. Burke, 449 F.3d 479, 498 (2d Cir. 2006)("Ovebreadth challenges are a form of First Amendment challenge and an exception to the general rule against third-party standing. A party challenging overbreadth claims that although a statute did not violate his or her First Amendment rights, it would violate the First Amendment rights of hypothetical third parties if applied to them) (internal citations omitted). In contrast, here, the Court must find "a causal link between the injunction sought and the alleged injury, that is, the plaintiff must demonstrate that the injunction will prevent the feared deprivation of [First Amendment] rights." Bronx Household of Faith, 331 F.3d at 349.

Plaintiff's primary reliance on hearsay evidence to establish a "chill" of PSC staff members deprives defendants of the opportunity to examine the veracity of these claims. This is particularly troublesome in this case where plaintiff, the PSC Assistant Principal and plaintiff's counsel have all advised PSC staff members that they should be "afraid" of the DOE. Because the plaintiff, the assistant principal, and their attorneys have engaged in speech that arguably could cause a chilling effect on plaintiff's subordinates, the Court is left to surmise or speculate as to what exactly caused the alleged chilling effect of these unidentified hearsay witnesses.

Without knowing the source of the alleged chill, this evidence should not be considered by the Court.

In any event, Plaintiff's Reply, and the evidence relied upon therein, does nothing to remedy the deficiency identified by the Court with respect to plaintiff's "chilling effect" argument; namely, that she cannot demonstrate an <u>actual chill</u> of her First Amendment rights, or the rights of others. As previously noted by defendants, allegations of a "subjective chill" of First Amendment Rights "are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." <u>Latino Officers Ass'n v. Safir</u>, 170 F.3d 167, 170 (2d Cir. N.Y. 1999) <u>quoting</u> <u>Laird v. Tatum</u>, 408 U.S. 1, 13-14 (1972). "Rather, to establish standing in this manner, a plaintiff must proffer some objective evidence to substantiate h[er] claim that the challenged [regulation] has deterred h[er] from engaging in protected activity." <u>Id.</u> <u>quoting</u> <u>Bordell v. General Elec. Co.</u>, 922 F.2d 1057, 1060-61 (2d Cir. 1991).

Plaintiff has offered absolutely no evidence that she has been deterred from engaging in protected activity. In fact, the evidence establishes the exact opposite. On March 29, 2017, plaintiff held a meeting of PSC staff and parents at which she publically opposed the alleged retaliatory investigation. <u>See</u> Plaintiff's Affidavit, dated April 27, 2017, ¶ 42. Further, on March 30, 2017, plaintiff and a New York Times reporter were speakers on a panel focused on promoting school desegregation. <u>See</u> Plaintiff's Affidavit, dated May 2, 2017, ¶ 32. These objective actions negate any self-serving subjective allegations that plaintiff's First Amendment rights have somehow been "chilled."

In support of her contention that the OSI investigation will have a "tremendous chilling effect" on PSC staff, plaintiff first cites to the affidavits of five teachers at PSC. <u>See</u> Plaintiff's Reply at 8-10. As fully detailed in defendants' opposition, the willingness of five

6

teachers to submit testimony opposing the allegedly retaliatory OSI investigation and in support of the instant motion completely refutes plaintiff's argument that the OSI investigation would chill the First Amendment rights of PSC employees.

Turning to Ms. Chickedantz's May 2, 2017 affirmation, this affirmation purports to recount conversations counsel had with five unidentified PSC "staff members" following the May 1, 2017 hearing.  See Chickedantz Affirmation, dated May 2, 2017, ("Chickentz May 2 Aff.") at 4.  Ms. Chickedantz contends that these staff members approached her after Monday's hearing to express both their support for plaintiff and their fear of becoming publically involved in the litigation and/or engaging in allegedly protected activity at PSC.  Id.  The May 2 Chickedantz Aff. quotes, apparently verbatim, extensive portions of conversations she had with the unidentified staff members.  See May 2 Chickedantz Aff.  This is the second affirmation submitted by Ms. Chickedantz in connection with this motion that is based on her own personal experiences and conversations which, if accepted, purportedly serve to establish her client's claims.  See generally id.; Chickedantz Affirmation, dated April 28, 2017.

As noted above, defendants respectfully submit that the Court should not consider this affirmation given that it contains new facts presented for the first time on reply.  If the Court is inclined to consider the May 2 Chickedantz Aff., the weight given to this affirmation must be evaluated in light of the circumstances under which it was generated.  The five unidentified PSC staff members are, by counsel's account, all supporters of plaintiff but are "too afraid to openly support her for fear of retaliation by the DOE."  May 2 Chickedantz Aff. at  ¶ 4  The unidentified PSC staff members quoted in the affirmation were all present at the May 1, 2017 hearing at which the Court heard argument regarding plaintiff's claim that speech at PSC has been chilled.  In fact, counsel for plaintiff reiterated several times during argument that PSC

7

employees are, and should be, "afraid" to come forward. See Transcript, May 1, 2017, annexed hereto as Appendix A for the Court's convenience, at pages 11-12.  It should come as no surprise that now, after hearing that they should be afraid, PSC staff members are expressing "fear" of coming forward.  Additionally, as with plaintiff's other evidence in support of her "chilling" argument, while these five individuals subjectively claim to fear retaliation, their actions in attending a public hearing in support of plaintiff demonstrate otherwise.

**D.    Plaintiff Has Not Suffered An Adverse Employment Action**

Plaintiff's Reply cites to four cases that purportedly stand for the proposition that an employer investigation, standing alone, can constitute an adverse employment action.  What plaintiff omits from her analysis is that in each of these cases there are some negative consequence that occurred that are directly attributable to the investigation.  Additionally, not one of the cases cited to by plaintiff constitutes binding authority in this Court.

In O'Neal v. State Univ. of N.Y., 2006 U.S. LEXIS 81654 (E.D.N.Y. Nov. 7, 2006), the Court found that because following initiation of the investigation, "discipline[] was then imminent," the investigation constituted an adverse employment action.  While plaintiff claims that she will "certainly be disciplined" as a result of the investigation, see Plaintiff's Reply at 14, she cites to absolutely no evidence to support this claim.  Rather, the evidence establishes otherwise. Absent serious allegations of misconduct not relevant here, such as allegations of sexual abuse, DOE does not impose discipline on the subject of an OSI investigation during the pendency of the investigation.  See Guerra Decl. at ¶ 41.   Because there is no "imminent" discipline as a result of the OSI investigation, O'Neal is distinguishable.

In Eldridge v. Rochester City Sch. Dist., 968 F. Supp. 2d (W.D.N.Y. 2013), an internal investigation was initiated against plaintiff after she lodged a complaint of

8

discrimination. Thereafter, her supervisor "pressured" her to transfer to another school "by promising to end the investigation if she agreed." Id. Subsequently, the supervisor threatened that plaintiff that she would not be working at the same school the following year. Id. Given these facts, the Court therefore found that the investigation could suffice as an adverse employment because it was accompanied by a "veiled threat of involuntary transfer." Id. Here, there is no allegation that plaintiff has been threatened – veiled or otherwise -- with any sort of employment action attendant to the investigation and therefore Eldridge is also distinguishable.

Plaintiff reliance on Lee v. City of Syracuse, 603 F. Supp. 2d 417 (N.D.N.Y. 2009) is similarly misplaced. In Lee, plaintiff's supervisor was instructed to "write [plaintiff] up every time" she lodged a complaint. The investigation at issue in the case stemmed from these supervisory write-ups. Given that the investigation was the result of the supervisory write-ups were, admittedly, issued as a direct result of the plaintiff's complaint, the Court held that the ensuing investigation "could deter a reasonable person from complaining." Lee, 603 F.Supp 2d at 436 (emphasis added). Here, the investigation was initiated because of complaints lodged against plaintiff by a confidential complainant to a non-DOE entity, i.e. SCI. The serious allegations were all made prior to plaintiff's January 10, 2017 email and for that reason Lee is distinguishable.

Finally, plaintiff's citation to Richardson v. New York State Office of Mental Health, 2014 U.S. Dist. LEXIS 106306 (N.D.N.Y. Aug. 4, 2014) ignores the fact that after the interrogation and investigation at issue in that case, it was recommended that plaintiff receive "formal written counseling." Here, again, there has been no attendant employment action stemming from the investigation and therefore Richardson is also not on point. To be sure, none

9

of the cases cited to by plaintiff stand for the proposition that the mere existence of an investigation, without more, constitutes an adverse employment action.

Moreover, while plaintiff claims that the affidavits submitted by five teachers in connection with this motion demonstrate that "similarly situated individuals of ordinary firmness" would be dissuaded from exercising their constitutional rights in the face of an OSI investigation, see Plaintiff's Reply at 14, this argument is illogical and self-contradictory. The affidavits of the five teachers establish that they: (1) are aware of the OSI investigation; (2) believe it to be retaliatory; and (3) nevertheless, have chosen to publically state their opposition to, what they allege to be, unlawful employment practices. Plaintiff cannot simultaneously claim that the teachers are afraid to engage in protected activity while they are, in fact, engaging in alleged protected activity.

For these reasons, and for those stated in defendants' opposition papers, plaintiff cannot show that the OSI investigation, standing along, is an adverse employment action for the purpose of her retaliation claims.

### E.   Plaintiff Cannot Show a Causal Connection

Defendants submit, in connection with this sur-reply, a supplemental declaration from Charity Guerra which answers the Court's question regarding when OSI first learned that plaintiff had complained regarding sports programs at PSC. On March 13, 2017, the OSI investigator assigned to the complaint filed against plaintiff, Michelle Archie ("Archie"), interviewed the confidential complainant. See Guerra Declaration, dated May 3, 2017, at ¶ 7. During this March 13, 2017 interview, the confidential complainant provided Archie with a copy of a newsletter issued by the PSC PTA entitled "The PSC Pulse." Id. at 8; see also Appendix A to Guerra Declaration, dated May 3, 2017. The newsletter, dated March 10, 2017, states that an

OSI investigation had been instituted against plaintiff and that "[t]his investigation was prompted by a complaint that someone, whose identity isn't known, lodged against her. [Plaintiff] has never shied away from advocating for students by calling out DOE policies and actions that are racist and divisive, and word of this investigation arrived just as our school had been challenging the Public Schools Athletic League and the DOE about the inequality of sports teams in our building." See Appendix A to Guerra Declaration, dated May 3, 2017. While the newsletter does not specifically state that it was plaintiff that complained regarding sports programs at PSC, the March 13, 2017 interview with the confidential complainant is the first instance of OSI becoming aware that such a complaint was made. See Guerra Declaration, dated May 3, 2017, at ¶ 10. As such, OSI did not have knowledge of any complaint regarding sports programs, let alone one from plaintiff, until six weeks after the OSI investigation was re-opened.

Importantly, plaintiff confirms that, as a result of her January 10, 2017 email, PSAL granted John Jay campus five additional sports teams. See Plaintiff's May 2 Affidavit at ¶ 10. It is bizarre for plaintiff to argue that she was retaliated against for a complaint that PSAL and the DOE considered and addressed by granting John Jay five additional sports teams. Id.

Moreover, while plaintiff relies on the "corporate knowledge" doctrine in an attempt to establish that OSI had knowledge of plaintiff's complaint at the time it re-opened the investigation, this argument contracts statements made in Plaintiff's Reply. Plaintiff's Reply contends that the PSAL is "so separate" from DOE and that it is "a separate entity under the [DOE]." See Plaintiff's Reply at 5-6. Plaintiff's attempt to distinguish PSAL as a separate entity from DOE certainly undercuts her corporate knowledge argument.

Finally, even if plaintiff could establish a causal connection based on temporal proximity alone, plaintiff's retaliation claims would nevertheless not be successful due to the fact

11

that defendants have established by a preponderance of the evidence that it would have taken the same allegedly adverse action regardless of the protected speech. See Smith v. County of Suffolk, 776 F.3d 114, 119 (2d Cir. 2015). Here, as noted above, the OSI investigation was prompted by an anonymous complaint lodged eight months, and then renewed one month, prior to the alleged protected activity. Given the misconduct alleged by the confidential complainant, which includes, if proven, a violation of the NYC Charter, defendants have demonstrated by a preponderance of the evidence that it would have – and in fact did – institute the OSI investigation regardless of the alleged protected speech. As such, even if plaintiff could establish a *prima facie* claim of retaliation, defendants have articulated a non-retaliatory justification for the OSI investigation which precludes the grant of the instant motion.

F.     **Chancellor's Regulation D-130**

Defendants respectfully submit that plaintiff's constitutional challenge for Chancellor's Regulation D-130 ("D-130"), raised for the first time in reply, should be disregarded by the Court. Neither plaintiff's complaint nor her moving papers contain any allegations regarding the constitutionality of D-130 and, accordingly, this argument should be disregarded.

In the event the Court considers this contention, plaintiff's D-130 argument relies almost entirely on speculation and conjecture. Plaintiff baldly maintains, without any factual or legal support, that references to "political organizations" within D-130 only apply to partisan politics and, therefore, the regulation is not applicable to the allegations against plaintiff. In an attempt to force the proverbial square peg into a round hole, plaintiff cites to Weingarten v. Board of Education, 680 F.Supp.2d 595 (S.D.N.Y. 2010) as support for this position. Plaintiff's reliance on Weingarten is misplaced.

12

Contrary to plaintiff's assertions, at no point in Weingarten was it determined that D-130 only applies to partisan politics. The only issue decided in Weingarten, was that the defendants' ban on teachers wearing political buttons does not violate of the First Amendment. At no point in Weingarten did Judge Kaplan hold, or express in dicta, that D-130 only applied to partisan politics.

Further, Judge Kaplan recognized that one of the rationales for D-130, as stated by then Chancellor Joel Klein, was that, "[d]isplays of political partisanship by teachers in the schools, particularly in the classroom to a captive audience of students, are inconsistent with our educational mission…[P]olitical paraphernalia in schools…may improperly influence children and impinge on the rights of students to learn in an environment free of partisan political influence. Furthermore, "[p]artisan political activity by staff in the presence of students . . . sends the message that the view expressed carries the support of the school system." See Weingarten v. Board of Education, 680 F.Supp.2d at 597-98. This intention falls within the well-settled provision that he governing boards of public schools are constitutionally permitted, within reason, to regulate the speech of teachers in the classroom for legitimate pedagogical reasons. See Weingarten v. Board of Education, 680 F.Supp.2d at 599-600 (citing Hazelwood School District v. Kuhlmeier, 484 U.S. 260 (1988)).

Additionally, plaintiff's reliance on Kramer v. Board of Education, is distinguishable because in that case it was determined that there was no cited policy that prohibited the plaintiff's actions. Conversely, here D-130 expressly addresses the issues underlying the OSI investigation of plaintiff's alleged actions. In Kramer, the allegation investigated by OSI was corporal punishment, OSI ultimately charged plaintiff with verbal abuse

13

under the chancellor's regulations, and defendants conceded on summary judgment that the language at issue in Kramer was not expressly prohibited by any regulation.

In her reliance on Kramer, plaintiff disregards the introduction and plain language of D-130, which clearly states in the first sentence of the introduction that "School buildings are not public forums for purposes of community or political expression."  See Chancellor's Regulation D-130. Clearly, D-130 falls much closer to the OSI allegations against plaintiff than allegations of corporal punishment and verbal abuse against a teacher who was merely performing her tasks assigned by the State.

Plaintiff has failed to challenge D-130 in either her complaint or moving papers. For this reason alone, the Court should disregard plaintiff's argument raised for the first time in reply that D-130 is unconstitutionally vague.  However, as demonstrated above, plaintiff cannot demonstrate that D-130 only applies to partisan politics or that the regulation is unconstitutionally vague.

## **CONCLUSION**

For the foregoing reasons, and for those set forth in defendants' opposition papers, the Court should deny plaintiff's request for a temporary restraining order and preliminary injunction and grant further relief as the Court deems just and proper.

Dated:       New York, New York
             May 3, 2017

                              ZACHARY W. CARTER
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-104
                              New York, New York 10007
                              (212) 356-4015
                              aoconnor@law.nyc.gov


By:       _____/s/_____
          Andrea O'Connor
          Assistant Corporation Counsel

William Grey,
Andrea O'Connor,
  Of counsel.