UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JILL BLOOMBERG,

Plaintiffs,

-against-

THE NEW YORK CITY DEPARTMENT EDUCATION
and CARMEN FARINA,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Joseph Anci*
*Tel: (212) 356-1106*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ...............................................................................**1**

**STATEMENT OF FACTS** ....................................................................................**1**

**PROCEDURAL HISTORY** ..................................................................................**7**

**STANDARD OF REVIEW** ...................................................................................**8**

**ARGUMENT** .......................................................................................................**6**

    I.  AS A MATTER OF LAW, PLAINTIFF CANNOT ESTABLISH A FIRST
       AMENDMENT RETALIATION CLAIM ..........................................................6

    II. PLAINTIFF FAILS TO ESTABLISH THAT CHANCELLOR'S REGULATION
        D-130 IS UNCONSTITUTIONALLY VAGUE ...............................................12

       A.  The Standards Governing the Vagueness Doctrine Are
           Relaxed When Only Civil Penalties Are Imposed ......................................13

       B.  The Standards Governing the Vagueness Doctrine Are
           Relaxed When the Government Acts As Employer Rather
           Than As a Sovereign ..................................................................................15

       C.  When An Agency's Regulation Is Ambiguous, the Court Must
           Defer to the Agency's Interpretation of Its Own Regulation,
           Unless the Regulation is Plainly Erroneous ...............................................16

    III. PLAINTIFF FAILS TO ESTABLISH THAT CHANCELLOR'S
         REGULATION D-130 IS UNCONSTITUTIONALLY VAGUE.................................18

**CONCLUSION** ....................................................................................................**19**

## TABLE OF AUTHORITIES

Page(s)

**Cases**

ABN 51st Street Partners v. New York,
    724 F.Supp. 1142 (S.D.N.Y. 1989) ..........................................................................14

Acheampong v. N. Y. City Health & Hosps. Corp.,
    2015 U.S. Dist. LEXIS 37933 (S.D.N.Y. Mar. 25, 2015) ......................................18

Arriaga v. Mukasey,
    521 F.3d 219 (2d Cir. 2008)....................................................................................14

Auer v. Robins,
    519 U.S. 452 (1997).................................................................................................16

Bank v. Pentagroup Fin., LLC,
    08-CV-5293 (JG) (RML), 2009 U.S. Dist. LEXIS 47985 (E.D.N.Y. June 9,
    2009) ..........................................................................................................................9

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007).............................................................................................8, 9

BLT Rest. Group LLC v. Tourondel,
    855 F. Supp. 2d 4 (S.D.N.Y. 2012) .........................................................................2

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002).....................................................................................2

Christensen v. Harris County,
    529 U.S. 576 (2000).................................................................................................16

Connick v. Myers,
    461 U.S. 138 (1983)...................................................................................................9

Dillon v. Suffolk County Department of Health Services,
    917 F.Supp. 2d 196 (E.D.N.Y. 2013) .....................................................................11

Garcetti v. Ceballos,
    547 U.S. 410 (2006).................................................................................................10

Gordon v. City of New York,
    612 Fed. Appx. 629 (2d Cir. 2015)...........................................................................9

Gordon v. Griffith,
     88 F.Supp.2d 38 (E.D.N.Y. 2000) ........................................................................15

Kramer v. N.Y. City Bd. of Educ.,
     715 F.Supp 2d 335 (E.D.N.Y. 2010) ...............................................................14, 15

Marchi v. Bd. of Coop. Educ. Servs. of Albany,
     173 F.3d 469 (2d Cir. 1999)............................................................................13, 15

Matthews v. City of New York,
     779 F.3d 167 (2d Cir. 2015).................................................................9, 10, 11, 12

Mitchell v. Kugler,
     07 CV 1801 (JG)(LB), 2009 U.S. Dist. LEXIS 4655 (E.D.N.Y. Jan. 23, 2009).......................8

Moore v. City of New York,
     2017 U.S. Dist. LEXIS .....................................................................................18, 19

Moore v. City of New York,
     2017 U.S. Dist. LEXIS 379 (S.D.N.Y. Jan. 3, 2017).................................................18

New York City C.L.A.S.H v. City of New York,
     315 F. Supp. 2d 461 (S.D.N.Y. 2014)...............................................................13, 14

Sulehria v. New York,
     2014 U.S. Dist. LEXIS (S.D.N.Y. Sep. 19, 2014)....................................................18

Taylor v. Vt. Dep't of Educ.,
     313 F.3d 768 (2d Cir. 2002).............................................................................13, 16

Waters v. Churchill,
     511 U.S. 661 (1994)..............................................................................................15

Weingarten v. Board of Education,
     680 F.Supp.2d 595 (S.D.N.Y. 2010).................................................................16, 17

Weintraub v. Board of Education of the City School District of the City of New
     York,
     593 F.3d 196 (2d Cir. 2010)...........................................................................10, 11

**Statutes**

442 U.S.C. § 2000d......................................................................................................18

FED. R. CIV. P. 12(b)(6)..................................................................................................8

**Other Authorities**

DOE Regulation D-130......................................................................................1, 3, 13, 15

## PRELIMINARY STATEMENT

Plaintiff, a Principal currently employed by the New York City Department of Education ("DOE") at Park Slope Collegiate Secondary School ("PSC"), brings this action pursuant to 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964 ("Title VI") and the New York City Human Rights Law ("NYCHRL") against the DOE and Carmen Farina (collectively "defendants"). Specifically, plaintiff asserts that defendants instituted an investigation into allegations of misconduct filed against her in retaliation for a January 10, 2017 e-mail to the Chief Executive Officer of the DOE's Division of School Support Services and a High School Superintendent in which she asserted that there were inequities in the allocation of PSAL sports teams on the John Jay Campus.

Defendants now move to dismiss certain of plaintiff's claims. First, as a matter of law, plaintiff is unable to establish a First Amendment retaliation claim because she cannot demonstrate that any speech alleged in the complaint was made as a citizen, not as an employee, and therefore the alleged speech is not protected under the First Amendment. Second, plaintiff fails to demonstrate that DOE Regulation D-130 is unconstitutionally vague under Fourteenth Amendment Due Process analysis. Third, plaintiff fails to satisfy the pleading requirement necessary to bring a Title VI action.

Accordingly, for the reasons outlined below, defendants respectfully request that the Court grant their partial motion to dismiss in its entirety.

<u>**STATEMENT OF FACTS**</u>[1]

Plaintiff is the principal of PSC, a public secondary school located on the John Jay campus in Park Slope, Brooklyn. <u>See</u> Plaintiff's May 23, 2017 Amended Complaint ("Complaint" or "Comp.") annexed to the Anci Dec. as Exhibit "A," ¶¶ 21, 28.

Plaintiff alleges that on January 10, 2017, she emailed Eric Goldstein, the CEO of the DOE's Office of School Support Services (food services, pupil transportation and PSAL) and High School Superintendent Mark Prayor. <u>See</u> Comp. ¶ 56. In that email, plaintiff asserted that PSAL sports teams were inequitably allocated among the schools comprising the John Jay Campus. Plaintiff stated in that email that four schools, with a combined enrollment of 1,859 students and with a high percentage of Black and Hispanic students, had nine sports teams, and that the Millennium High School programs, which had combined enrollment of 1,261 students, with a high percentage of White students, had 17 PSAL sports teams. <u>See</u> Comp., ¶¶55-56, 59. Plaintiff admits that it is part of a principal's job duties to request sports teams for his/her school. <u>See</u> May 2, 2017 Affidavit of Jill Bloomberg ("Bloomberg Aff.") annexed to the Anci Dec. as Exhibit "B," ¶ 5.

On February 13, 2017, the PSC PTA handed out flyers regarding race discrimination and segregation using information from plaintiff's January 10, 2017 email. <u>See</u> Comp. ¶ 59.

---

[1] For purposes of this motion to dismiss only, the facts set forth in the Complaint are taken to be true and the legal sufficiency of the complaint tested. Therefore, this statement of facts is drawn from the Complaint, from documents that are incorporated in the Complaint by reference, and from public records. <u>See Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002) (Court resolving motion to dismiss can consider: (1) documents that plaintiff attached to the pleadings; (2) documents to which plaintiff referred in the complaint; (3) matters of which judicial notice may be taken; (4) documents in plaintiff's possession; and (5) documents of which plaintiff had knowledge and upon which plaintiff relied in bringing the action.); <u>BLT Rest. Group LLC v. Tourondel</u>, 855 F. Supp. 2d 4, 15 (S.D.N.Y. 2012). All references to "Exhibit" are to the exhibits annexed to the Declaration of Joseph Anci ("Anci Dec."), dated September 8, 2017.

Plaintiff alleges that, on March 2, 2017, and in retaliation for her January 10, 2017 email, defendants commissioned their Office of Special Investigations ("OSI") to investigate plaintiff for "engaging in communist activities," and "recruiting students to the Progressive Labor Party" in violation of Chancellor's Regulation D-130 ("D-130"). See Comp. ¶¶ 63, 64, 72. Subsequently, plaintiff alleges that an investigation was commenced against her for "interfering with an investigation." See Comp. ¶ 76.

D-130 is a regulation that, "governs the use of school buildings by candidates, elected officials, and political organizations and the conduct of school employees and officers with respect to political campaigns and elections." See New York City Department of Education Regulation of the Chancellor D-130 ("D-130"), annexed to the Anci Dec. as Exhibit "C;" see also Comp. ¶ 73. Further, the introduction to D-130 states, "School buildings are not public forums for purposes of community or political expression." See D-130.

This investigation into allegations that plaintiff had attempted to recruit students into the Progressive Labor Party was the result of a complaint that was made against plaintiff in May 2016. See Comp. ¶ 69. On May 12, 2016 a confidential complainant lodged a complaint with the Special Commissioner of Investigation for the New York City School District ("SCI") against plaintiff alleging that plaintiff was actively recruiting students to participate in a political party. See Declaration of Charity Guerra, dated May 1, 2017 ("Guerra Decl.") annexed to the Anci Dec. as Exhibit "D," at ¶ 11. On May 13, 2016, SCI referred the complaint to OSI and, as is often the case with complaints without OSI knowing the identity of the complainant that contain insufficient information upon which to, at that time, conduct an investigation, on May 17, 2016, OSI marked the complaint as closed as there was insufficient information at the time to conduct an investigation. Id. at ¶¶ 12, 13.

Thereafter, on December 20, 2016, the confidential complainant provided SCI with further information regarding the complaint against plaintiff. Id. at ¶ 14; Comp. ¶83. The additional information received included allegations that plaintiff's husband filmed a documentary for the Len Ragizin Foundation, an organization associated with a political organization called the Progressive Labor Party. Id; Comp. ¶ 83. The confidential complainant alleged that plaintiff's husband is the president of the organization, and students and staff were included in the documentary without their authorization. Id; Comp. ¶ 83. Furthermore, the complainant alleged that plaintiff engaged in a conflict of interest when the documentary was screened at PSC and a $20 admission fee was charged. Id. at ¶ 15; Comp ¶ 83. Finally, the complainant alleged that academic policy is being violated at the school because a mandated course is not being taught, a bake sale was held to raise funds for a May Day march, and students who voice opinions different from those of plaintiff are not allowed to express them. Id. at ¶ 16; Comp. ¶ 83.

Thereafter, on January 25, 2017, SCI sent the additional information it had received from the confidential complainant to DOE. Id. at ¶ 17. On February 1, 2017, based on the new information received from the confidential complainant, OSI re-opened its investigation. Id. at ¶ 18. Moreover, the additional information provided by the complainant provided enough information such that the complainant's identity was known to OSI and therefore OSI was now able to interview the complainant in connection with the complaint. Id. at ¶ 19. At this time, OSI was not aware that plaintiff had sent the November 29, 2016 and/or January 10, 2017 emails regarding sports programs at PSC. Id. at ¶ 20.

On February 1, 2017, OSI assigned the complaint to Confidential Investigator Michelle Archie ("Archie"). Id. at ¶ 21. On March 2, 2017, Archie conducted a witness

interview at PSC and on March 13, Archie conducted another witness interview at OSI at which Arthur Solomon ("Solomon"), a union representative from the United Federation of Teachers ("UFT") was present.  Id. at ¶¶ 22, 23.  Also in March 2017, Archie interviewed the CC at OSI. Solomon and Robert Levine, another UFT representative were present.  Id. at ¶ 24.  A witness interview that had been scheduled for April 25th was cancelled as were interviews scheduled for Monday, May 1st.  Id. at ¶ 25.

On or about March 22, 2017, the DOE received a cease and desist letter dated March 22, 2017, from plaintiff's attorneys alleging that OSI's investigation was retaliatory and therefore it must be stopped.  Id. at ¶ 27; Comp. ¶ 68.  On March 27, 2017, the DOE responded to plaintiff's counsel's March 22, 2017 letter to advise plaintiff that the substance of the complaint that OSI is investigating is unrelated to plaintiff's complaint of racial segregation involving the sports teams at the John Jay Campus of which PSC is a part.  Id. at ¶ 28; Comp. ¶ 69.

On March 30, 2017, OSI received a complaint alleging that on March 29, 2017, plaintiff held a staff meeting at the school where she discussed the fact that she was being investigated by OSI.  Id. at ¶ 28.  She stated that her attorneys had sent a cease and desist letter to the DOE regarding the investigation because it was retaliatory.  Id.  She then read the DOE's response to that letter.  Id.  However, because OSI can only directly take complaints of corporal punishment and verbal abuse, this allegation involving interference with an OSI investigation was reported to SCI.  Id. at ¶ 29.  SCI subsequently referred the allegation back to OSI for investigation.  Id.  On April 6, 2017, the DOE sent plaintiff's attorneys a second letter providing more detail into the allegations against plaintiff.  Id. at ¶ 30.

OSI has a responsibility to examine allegations which, if proven true, violate, DOE academic policy, including Chancellor's Regulations D-130 and D-180 which prohibit the use of school facilities, equipment and supplies on behalf of political organizations, Chancellor's Regulation C-110, regarding conflicts of interest, and the City of New York's Conflict of Interest laws. Id. at ¶ 31. Pursuant to Chancellor's Regulation D-130 (I)(C)(1), "all school personnel shall maintain a posture of complete neutrality" with respect to political candidates and while on duty or in contact with students may not display items advocating on behalf of a particular political organization. Id. at ¶ 32. Fundraising on school grounds during school hours on behalf of any political organization is expressly prohibited under D-130 (I)(C)(2). Id. D-130(III)(A) states that any employee who violates the provisions of D-130 is subject to discipline. Id. Pursuant to Chancellor's Regulation D-180, Section XI, "[n]o rallies, forums, programs, etc., on behalf of, or for the benefit of any elected official, candidate, candidates, slate of candidates, or political organization/committee may be held in a school building after school/business hours except as" expressly permitted by D-130. Id. at ¶ 33.

On August 28, 2017, OSI issued an Investigative Report finding that: (1) the D-130 allegations of plaintiff recruiting students for the Progressive Labor Party were unsubstantiated; (2) substantiating allegations that plaintiff failed to follow DOE regulations when allowing a documentary to be filmed on school grounds, that plaintiff impermissibly allowed a teacher's father to serve as a substitute teacher without proper authorization or security clearance, and that plaintiff failed to offer a course as required by the State Department of Education; and (3) referring other allegations to the Conflicts of Interest Board. See the August 28, 2017 OSI Investigative Report annexed to the Anci Dec. as Exhibit "E." Plaintiff attended a

Technical Assistance Conference on August 31, 2017 and the matter has been referred to DOE's Administrative Trials Unit to determine the appropriate disciplinary action. Id.

Plaintiff alleges that she has violated no Chancellor's Regulation by opposing racism and segregation in schools. See Comp. ¶ 105. Plaintiff alleges that the OSI investigation is retaliation for her protected speech, and that she is afraid to continue to speak out against race discrimination for fear of losing her job. See id. ¶ 107-108. Further, plaintiff alleges that DOE's application of D-130 does not give notice to a reasonable person that plaintiff's alleged conduct is a violation of D-130. See id. ¶ 119. As a result, plaintiff alleges that D-130 is void for vagueness. See id. ¶ 120. However, in the same paragraphs, plaintiff alleges that DOE's application of D-130 in the OSI investigation of plaintiff is an abuse of power. See id. ¶¶ 119, 120.

## PROCEDURAL HISTORY

Plaintiff filed her Complaint and motion for a temporary restraining order and preliminary injunction on April 28, 2017. See Document Nos. 1-10. On April 28, 2017, the Court ordered that defendants submit an opposition to plaintiff's motion for a preliminary injunction by 10:00 a.m. on May 1, 2017 and that the parties appear for a hearing on plaintiff's motion at 3:00 p.m. on that date. See Document No. 12. On May 1, 2017, defendants submitted a memorandum of law in opposition to plaintiff's motion for a temporary restraining order and the declaration of Charity Guerra, Executive Deputy Counsel for Administrative Trials, Compliance and Operations for DOE. See Document Nos. 11, 17. Plaintiff submitted supplemental briefs and affidavits on May 2, 2017, See Document Nos. 21-23, and defendants' submitted supplemental materials on May 3, 2017. See Document No. 27, 28. On May 3, 2017, the Court issued a decision denying plaintiff's motion for a temporary restraining order and preliminary injunction. See Document No. 29, annexed to the Anci Dec. as Exhibit "F."

Plaintiff filed an Amended Complaint on May 23, 2017. Defendants now bring this motion to dismiss certain of plaintiff's claims in the Complaint.

## **STANDARD OF REVIEW**

In deciding a motion to dismiss, generally the reviewing court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. FED. R. CIV. P. 12(b)(6). "When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff['s] . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted).

But, the "factual allegations must be enough to raise a right to relief above the speculative level…The pleading must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), (quoting Wright & Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). Pursuant to Twombly, a pleading must contain sufficient facts to state a claim that is not merely conceivable but *plausible*, and that "a formulaic recitation of the elements of a cause of action will not do." Id. At 555.

The plaintiff is not entitled to relief where the pleading suggests "the mere possibility of misconduct." Id. As such, the Twombly plausibility standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Mitchell v. Kugler, 07 CV 1801 (JG)(LB), 2009 U.S. Dist. LEXIS 4655, *13-15 (E.D.N.Y. Jan. 23, 2009) (quoting Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (interpreting Twombly)) (italics omitted). Consistent with this understanding,

district courts in the Second Circuit have construed <u>Twombly</u> to mean that a plaintiff is no longer "entitled to unlimited favorable inferences at the motion to dismiss stage." <u>Bank v. Pentagroup Fin., LLC</u>, 08-CV-5293 (JG) (RML), 2009 U.S. Dist. LEXIS 47985 (E.D.N.Y. June 9, 2009).

## ARGUMENT

### POINT I

### AS A MATTER OF LAW, PLAINTIFF CANNOT ESTABLISH A FIRST AMENDMENT RETALIATION CLAIM

Plaintiff, a public employee, alleges that the OSI investigation was commenced in retaliation for her "speaking out" against alleged racism and discrimination in DOE schools. <u>See</u> Comp. ¶¶ 135-152. To state a *prima facie* case for First Amendment retaliation, a public employee must demonstrate that: (1) she has engaged in protected First Amendment activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. <u>See</u> <u>Gordon v. City of New York</u>, 612 Fed. Appx. 629, 630-31 (2d Cir. 2015)(internal quotations omitted).

Whether plaintiff's alleged communications are constitutionally protected speech "is one of law, not fact." <u>Connick v. Myers</u>, 461 U.S. 138, 148 n. 7 (1983). The determination of whether a public employee's speech is protected is composed of a two-step inquiry. First the Court must determine "whether the employee spoke as a citizen on a matter of public concern." <u>Matthews v. City of New York</u>, 779 F.3d 167, 172 (2d Cir. 2015) (internal quotations omitted) (quoting <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006)). Within this first step, the Court must consider two additional subquestions: "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as

an employee." Id. (some internal quotations omitted). "If the answer to either question is no, that is the end of the matter." Id. "If, however," both questions are answered in the affirmative, the [C]ourt then proceeds to the second step of the inquiry," where it asks "whether the relevant governmental entity 'had an adequate justification for treating the employee differently from any other member of the public based on the government's needs as an employer.'" Id. (quoting Lane v. Franks, 134 S.Ct. 2369, 2380 (2014)).

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." Garcetti, 547 U.S. at 421. "[S]peech made 'pursuant to' a public employee's job duties," is "'speech that owes its existence to a public employee's professional responsibilities,'" and is not protected by the First Amendment. Weintraub v. Board of Education of the City School District of the City of New York, 593 F.3d 196, 201 (2d Cir. 2010) (quoting Garcetti, 547 U.S. at 421). In Weintraub, the Second Circuit found that a teacher's formal grievance criticizing a supervisor's failure to discipline a student had been made "pursuant to his official duties because it was part-and-parcel of his concerns about his ability to properly execute his duties as a public school teacher-- namely, to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning." Id. At 203. (internal quotations and citations omitted).

Applying the Garcetti standard, the Second Circuit held that the teacher's First Amendment retaliation claim failed. The court noted that its conclusion was additionally supported by the fact that the form of speech at issue--an employee grievance made pursuant to school district policy--had "no relevant citizen analogue." Id. "In making the determination as to whether an employee spoke pursuant to his or her official duties, courts in the Second Circuit "focus [] on the subject, manner, manner, and context of the speech to determine whether it

relates to topics that are indispensable prerequisites to the effective performance of the speaker's primary employment responsibility, and thus not entitled to First Amendment protection." Dillon v. Suffolk County Department of Health Services, 917 F.Supp. 2d 196, 208-09 (E.D.N.Y. 2013) (internal quotations omitted). Speech may be pursuant to a public employee's job duties "even though it is not required by, or included in the employee's job description, or in response to a request by an employer." Weintraub, 593 F.3d at 203.

In the present case, it is clear from plaintiff's January 10, 2017 e-mail to Eric Goldstein, the Chief Executive of the DOE's Office of School Support Services, and Mark Prayor, High School Superintendent that her statements were made pursuant to her official duties as the principal of PSC. In the first line of her e-mail, plaintiff states that "I am writing to request your assistance in uniting the PSAL sports teams on the John Jay Campus in Brooklyn." See Exhibit 3 annexed to plaintiff's affidavit. The e-mail then goes on to discuss what plaintiff believes to be an inequity in the allocation of PSAL sports teams on the John Jay Campus, refer to her discussions with the other principals of schools on the John Jay Campus, and overall, discusses opportunities for students on the Campus, including, of course, PSC, to participate in extracurricular sports. Id. Similarly, plaintiff's November 29, 2016 email involves an incident that occurred at a PSC volleyball game. See Exhibit 2 annexed to plaintiff's affidavit. These e-mails are speech that owe their existence to plaintiff's professional responsibilities, and plaintiff made that speech as part of her responsibilities as principal, not as a citizen.

A close reading of Matthews, 779 F.3d 167 (2d Cir. 2015), demonstrates that plaintiff cannot satisfy the criteria necessary to establish that she was speaking as citizen and not as the principal of PSC. In Matthews, the Court found that plaintiff's speech was not made pursuant to his job duties as a Police Officer, in that that "Matthews speech to the Precinct's

leadership in this case was not he was "employed to do," or "part-and-parcel of his regular job." Id. 779 F. 3d at 174 (citations omitted"). Thus, because Matthews "actual, functional job responsibilities did not include reporting his opinions on precinct-wide quota systems to the precinct commanders," see Matthews, 779 F.3d at 174, the Second Circuit determined that Matthews spoke as a citizen. Id. In contrast, here, the Complaint and materials incorporated by reference to the Complaint establishes conclusively that the speech of plaintiff at issue - - her January 10, 2017 e-mail—was made by plaintiff pursuant to her official duties as principal of PSC. Not only is that evident from the face of the e-mail itself, but plaintiff admits it: "[i]t is part of a principal's . . . regular job duties to request sports teams of the PSAL." See Plaintiff's May 2 Affidavit at ¶5. It also bears noting that plaintiff's request for additional sports was granted, in part. See Plaintiff's May 2 Affidavit at ¶ 10.

Further, in Matthews, the Second Circuit stated that the "existence of a comparable civilian analog for Matthews speech also supports our conclusion that he spoke as a citizen." Id., 779 F.3f at 175. This civilian analogue was monthly meetings of the Precinct's Community Council that were open to the public. Here, there is no civilian analog to plaintiff's speech, and even if there were, the fact that her speech was made pursuant to her official duties, unlike the plaintiff in Matthews, renders the potential existence of a civilian analog irrelevant. Accordingly, plaintiff's First Amendment claim should be dismissed as a matter of law.

### POINT II

### PLAINTIFF FAILS TO ESTABLISH THAT CHANCELLOR'S REGULATION D-130 IS UNCONSTITUTIONALLY VAGUE

Plaintiff claims that Chancellor's Regulation D-130 ("D-130") is unconstitutionally vague, and, therefore, the OSI investigation into plaintiff's alleged violation of

D-130, violates plaintiff's due process rights. Plaintiff's vagueness challenge fails for the following reasons: (1) if a Regulation only imposes civil penalties, "the standards governing the vagueness doctrine are relaxed", see New York City C.L.A.S.H v. City of New York, 315 F. Supp. 2d 461, 484 (S.D.N.Y. 2014); (2) the standards of vagueness are considerably more relaxed when the government is acting as employer, see Marchi v. Bd. of Coop. Educ. Servs. of Albany, 173 F.3d 469, 480 (2d Cir. 1999); and (3) when a regulation is ambiguous, the court must defer to the agency's interpretation of its own regulation, unless that interpretation is plainly erroneous, see Taylor v. Vt. Dep't of Educ., 313 F.3d 768 (2d Cir. 2002).

## A. The Standards Governing the Vagueness Doctrine Are Relaxed When Only Civil Penalties Are Imposed

The Second Circuit has overwhelmingly supported the notion that when challenged laws impose only civil penalties, the vagueness doctrine standards are considerably relaxed. See C.L.A.S.H, 315 F. Supp. 2d at 484. More specifically, the language of the challenged law need not be as clear and precise as the language of penal codes. See id. The vagueness doctrine requires that "a *penal* statute define the *criminal* offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." See Arriaga v. Mukasey, 521 F.3d 219, 222 (2d Cir. 2008) (citation omitted) (emphasis added).

Accordingly, "[t]he void for vagueness doctrine is chiefly applied to criminal legislation. Laws with civil consequences receive less exacting vagueness scrutiny." Id. at 222–23. For example, the Southern District has stated, "[e]conomic regulations which impose civil penalties are subject to a less strict vagueness test." See ABN 51st Street Partners v. New York, 724 F.Supp. 1142, 1147 (S.D.N.Y. 1989) (internal quotations omitted). Because any possible penalty that could be imposed as a result of a violation of D-130 would, at most, equate to a civil

consequence, the Court should apply rational basis analysis when reviewing D-130 for vagueness. C.L.A.S.H., 315 F.Supp.2d at 484 (plaintiff's claims that the city amendment did not specifically define certain terms and was therefore unconstitutionally vague were meritless after the court applied rational basis review; rational basis review was applied because the court "found no basis upon which to employ a heightened level of scrutiny"). Similarly, D-130 cannot be void for vagueness for the reason that, as alleged by plaintiff, it did not specifically define "political parties." D-130 will pass rational basis review since it is sufficiently clear as to its meaning.

Plaintiff claims that D-130 is void for vagueness because it does not specifically cite prohibited conduct, and, in the Complaint, she cites Kramer v. N.Y. City Bd. of Educ., 715 F.Supp 2d 335 (E.D.N.Y. 2010), in support of her contention. However, her reliance on Kramer is misplaced. In Kramer, the court determined that there was no cited policy that prohibited plaintiff's action. Conversely, here D-130 expressly addresses the issues underlying the OSI investigation of plaintiff's alleged actions. In Kramer, the allegation investigated by OSI was corporal punishment, OSI ultimately charged plaintiff with verbal abuse under the chancellor's regulations, and defendants conceded on summary judgment that the language at issue in Kramer was not expressly prohibited by any regulation. Here, on the other hand, D-130, in plain language states, "School buildings are not public forums for purposes of community or political expression." See Chancellor's Regulation D-130. Accordingly, D-130 reasonably informed plaintiff, or any DOE employee, of conduct that would be in violation of D-130. Therefore, Kramer is distinguishable from the instant case, and should not be heavily weighted in determining whether D-130 is void for vagueness.

**B.    The Standards Governing the Vagueness Doctrine Are Relaxed When the Government Acts As Employer Rather Than As a Sovereign**

It is well established that the standards of vagueness are further relaxed when the government-school is acting as an employer.  See Marchi v. Bd. of Coop. Educ. Servs. of Albany, 173 F.3d 469, 480 (2d Cir. 1999); see also Waters v. Churchill, 511 U.S. 661, 671 (1994) ("the government as employer indeed has far broader powers than does the government as sovereign.").  Defendants submit that plaintiff's vagueness claims against DOE fail because D-130 would pass this relaxed level of scrutiny.  Additionally, analysis of the alleged vagueness of D-130 should be handled with leniency.  "A school is not required to state expressly all types of objectionable conduct in order to place teachers on notice that some conduct is sanctionable." See Kramer, 715 F.Supp.2d at 356.  Furthermore, when it comes to explicitly defining all proscribed conduct, "courts have granted schools, acting in their capacity as employers, significant leeway."  See Marchi, 173 F.3d at 480 (with regard to schools, "precise delineation of sanctionable conduct is close to impossible.").

Moreover, plaintiff's mention in her third cause of action that DOE's application of D-130 violated her right to free speech is meritless.  "Broader speech restrictions [are] allowed when imposed by government as employer and not as sovereign."  See Gordon v. Griffith, 88 F.Supp.2d 38, 51 (E.D.N.Y. 2000) (finding that discharging employees because of their political speech was a practical decision).  Similarly, D-130, which seeks to restrict political speech by DOE teachers in public schools, was made through practical considerations.  Because, "the government as employer may regulate its employees' speech to a far greater extent than it may regulate the public's speech," broad speech restrictions would apply to D-130.  See Kirkpatrick v. Washingtonville, 2011U.S. Dist. LEXIS 40097 *14 (S.D.N.Y. 2011).

Accordingly, because D-130 is sufficiently clear about what conduct is proscribed – that School buildings are not public forums for purposes of community or political expression – and because a more liberal vagueness standard applies to DOE, plaintiff's first cause of action must be dismissed.

**C.      When An Agency's Regulation Is Ambiguous, the Court Must Defer to the Agency's Interpretation of Its Own Regulation, Unless the Regulation is Plainly Erroneous**

Even if the language of D-130 is found to be ambiguous, D-130 would not be void for vagueness because the Supreme Court and the Second Circuit have acknowledged that courts should defer to an agency's interpretation of its own regulation. <u>See Auer v. Robins</u>, 519 U.S. 452, 461 (1997) (finding that the Secretary of Labor's interpretation of his own regulation was "controlling unless plainly erroneous or inconsistent with D-130."); <u>see also Christensen v. Harris County</u>, 529 U.S. 576, 588 (2000) ("<u>Auer</u> deference is warranted only when the language of the regulation is ambiguous"); <u>Taylor v. Vt. Dep't of Educ.</u>, 313 F.3d 768 (2d Cir. 2002) ("[t]o the extent that there is ambiguity, we may look to how the federal Department of Education has construed its own regulation.").

Plaintiff baldly maintains, without any factual or legal support, that references to "political organizations" within D-130 only apply to partisan politics and, therefore, D-130 is not applicable to the allegations against plaintiff.   In her Complaint, plaintiff cites to <u>Weingarten v. Board of Education</u>, 680 F.Supp.2d 595 (S.D.N.Y. 2010) as support for this position.  Plaintiff's reliance on <u>Weingarten</u> is misplaced.

Contrary to plaintiff's assertions, at no point in <u>Weingarten</u> was it determined that D-130 only applies to partisan politics.  The only issue decided in <u>Weingarten</u>, was that the defendants' ban on teachers wearing political buttons does not violate of the First Amendment.

At no point in <u>Weingarten</u> did Judge Kaplan hold, or express in dicta, that D-130 only applied to partisan politics.

Further, Judge Kaplan recognized that one of the rationales for D-130, as stated by then Chancellor Joel Klein, was that, "[d]isplays of political partisanship by teachers in the schools, particularly in the classroom to a captive audience of students, are inconsistent with our educational mission…[P]olitical paraphernalia in schools…may improperly influence children and impinge on the rights of students to learn in an environment free of partisan political influence. Furthermore, "[p]artisan political activity by staff in the presence of students . . . sends the message that the view expressed carries the support of the school system." <u>See</u> <u>Weingarten v. Board of Education</u>, 680 F.Supp.2d at 597-98. This intention falls within the well-settled provision that the governing boards of public schools are constitutionally permitted, within reason, to regulate the speech of teachers in the classroom for legitimate pedagogical reasons. <u>See</u> <u>Weingarten v. Board of Education</u>, 680 F.Supp.2d at 599-600 (citing <u>Hazelwood School District v. Kuhlmeier</u>, 484 U.S. 260 (1988)). Further, this intention restates what is clear from the fact of D-130 – that School buildings are not public forums for purposes of community or political expression.

Even if plaintiff's claim that D-130 is ambiguous has merit, which defendants do not concede that it does, the claim should be dismissed because the Court must defer to the DOE's interpretation of their own regulation, once that interpretation is not clearly erroneous. The DOE's interpretation of D-130 as referring to political partisanship, including partisan political activity, is not a clearly erroneous interpretation of D-130, as the introduction of D-130 states that "political expression" is prohibited in the school building. Therefore, the court must

defer to the DOE's interpretation of D-130, thereby dismissing plaintiff's claim that D-130 is void for vagueness.

For the foregoing reasons, defendants respectfully request that the Court dismiss plaintiff's vagueness claims.

**POINT III**

**PLAINTIFF HAS FAILED TO PLEAD A TITLE VI CLAIM**

Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.; see also Moore v. City of New York, 2017 U.S. Dist. LEXIS 379 at 42 (S.D.N.Y. Jan. 3, 2017).

In order to state a cause of action pursuant to Title VI, a plaintiff must "plausibly allege" that the defendant received federal funding, identify the primary objective of the federal funding, and identify that the alleged discrimination or retaliation was related to the primary objective of the program or subject benefiting from federal funding. See Moore, 2017 U.S. Dist. LEXIS at 43-44; see also Sulehria v. New York, 2014 U.S. Dist. LEXIS at *5 (S.D.N.Y. Sep. 19, 2014) (citing Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport, 647 F.2d 256, 276 (2d Cir. 1981)); Acheampong v. N. Y. City Health & Hosps. Corp., 2015 U.S. Dist. LEXIS 37933 at *14 (S.D.N.Y. Mar. 25, 2015) (quoting Commodari v. Long Isl. Univ., 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000)).

Here, plaintiff merely states that DOE receives federal funds. See Comp. ¶¶ 23, 125. Nowhere in the Complaint does plaintiff identify any specific programs or individuals that are the intended beneficiaries of the federal funding. See Comp. ¶¶ 122-134. Nowhere in the

Complaint does plaintiff plead that any alleged acts of discrimination or retaliation by DOE involved a specific program or individual who is the intended beneficiary of federal funding. Id. Further, nowhere in the Complaint does plaintiff plead the primary objective of the federal financial assistance that it is alleged DOE received or receives. Id. See also Moore v. City of New York, 2017 U.S. Dist. LEXIS at 43-44. These conclusory statements, and restatements of the law are unsupported by any factual allegations and, therefore, this cause of action must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that their motion to dismiss plaintiff's first, second and third causes of action be granted, that these causes of action be dismissed with prejudice, that judgment be entered for defendants, and that defendants be granted costs, fees, and expenses together with such other and further relief as this Court deems just and proper.

Dated:      New York, New York
             September 8, 2017

ZACHARY W. CARTER
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street, Room 2-123
New York, New York 10007
(212) 356-1106
janci@law.nyc.gov

By:        /s/
           Joseph Anci
           Assistant Corporation Counsel