UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JILL BLOOMBERG,

              Plaintiff,

   v.                                                     **AFFIDAVIT OF JILL**
                                                       **BLOOMBERG IN FURTHER**
THE NEW YORK CITY DEPARTMENT OF        **SUPPORT OF MOTION FOR**
EDUCATION, and CHANCELLOR CARMEN      **PRELIMINARY INJUNCTION**
FARINA,

              Defendants.
------------------------------------------------------------x

       JILL BLOOMBERG, being duly sworn deposes and states as follows:

       1.      I am the plaintiff in the above entitled case.

       2.      I submit this supplemental affidavit in support of my motion for a temporary restraining order and preliminary injunction.

       3.      In this affidavit I will address several issues.

       4.      With respect to my job duties, I have never seen an actual job description for the job of principal. I know I am rated on many factors, most of which have to do with issues of curriculum, pedagogy, and whether my decisions support the instructional goals of the school. I can be rated on measures of student achievement as well as on compliance with data recording.

       5.      Throughout my career, the Public School Athletic League (PSAL) has had the budget for sports programs. I, as a principal, do not have any dedicated funds for sports programs. Any sports programs we want must be applied for to PSAL. It is part of a principal's or other school employee's regular job duties to request sports teams of the PSAL. For years principals and coaches in the John Jay program had been making these formal requests but our requests were regularly rejected.

6. Other than requesting teams my regular job duties do not intersect with PSAL policies. My duties as principal do not include formulating, implementing or providing feedback on PSAL policy.

7. Eric Goldstein, to whom my January 10, 2017 complaint was directed is the CEO of the Office of School Support Services at the DOE and supervises Donald Douglas, the executive director of PSAL. Goldstein reports to Elizabeth Rose, Deputy Chancellor, who reports directly to Chancellor Carmen Farina. He, therefore, is very much involved in the decisions at the highest levels of the DOE. He would have known about my complaint about separate and unequal sports teams on or about January 10, 2017 when I sent the email.

8. This complaint was not what I was "employed to do", nor is it "part and parcel" of my regular job. This type of policy oriented complaint is neither part of my job nor "the practical reality of my everyday work".

9. The complaint I made to PSAL was designed to address what I believe was a violation of the law and the parents at the school also made the same complaint in their leaflets and protests.

10. Donald Douglas joined our campus principals' meeting on March 3, 2017, the day after OSI investigator Michelle Archie informed me of the OSI investigation. He refused to combine the programs between the PSC and other John Jay programs with the programs at Millennium, and instead granted John Jay an additional five teams. When he asked me if that made me happy, I responded that my happiness was not the issue, but rather the missed opportunity of the DOE to address the separate and unequal treatment of our students.

11. With respect to the allegations in the Guerra Declaration, which were cited as the alleged reasons for reopening the complaint, I affirmatively state as follows:

12. The Len Ragozin Foundation is a public charity which supports the Arts. (Exhibit 1).

13. My husband is president of the foundation but as a public charity it is not engaged in politics.

14. My husband did not make the documentary called "Profiled" which was screened at the PSC Campus in June of 2016. The filmmaker is Kathleen Foster. (Exhibit 2).

15. If there are any issues with respect to whether students and/or staff were in the documentary without their authorizations, it is the responsibility of the filmmaker to have handled those matters, and I advised her of such obligation. I was not involved in the making of the film, and no investigation of me will illuminate that issue.

16. The film was screened pursuant to a permit which was granted by the DOE to the Len Ragozin Foundation. (Exhibit 3).

17. This permit was granted by Karen Seara on an extended use application which was filed in May of 2016. Special requests on the application included the right to sell goods and ask for donations. (Exhibit 4). There was no violation of the conflict of interest policy as the sponsors were permitted to sell goods and ask for donations to support the distribution of the film.

18. There is no course which is mandated which is not taught at PSC. The DOE regularly reviews and approves the curriculum through an audit of transcripts and we have always been found to be teaching the required courses for student graduation.

19. We never conducted a bake sale for a May Day march.

20. My students disagree with me often and with much confidence.

21. The allegations that are claimed to be the supplemental information regarding the May 2016 SCI complaint are false, and in most instances demonstrably false. The DOE could have easily discovered all of the allegations regarding the Len Ragozin Foundation of the screening of the movie "Profiled" without opening an OSI investigation into my activities.

22. Thus, the only basis for the investigation appears to be based on the original May 12, 2016 complaint which was originally closed based on insufficient information.

23. In essence what the DOE is seeking to do under the guise of D-130 is to investigate whether I am trying to use my position as a DOE employee to advance the beliefs of a particular political party of which I am not a member.

24. As outlined in my original affidavit, I have often spoken up and taken action to protest unequal and unjust treatment of students by the DOE. My positions against the metal detectors, mistreatment of students by law enforcement, racist inequities in sports programs and other resources and against segregation are not limited only to the students at my school. While I and my school community are working hard to create an integrated school at Park Slope Collegiate, I have been critical of the DOE's position that school integration should be a school-by-school decision because it leaves most students in separate and unequal conditions.

25. The DOE has ample evidence of my positions against the metal detectors, mistreatment of students by law enforcement, racist inequities in sports programs and other resources and against segregation. To characterize advocacy of these positions as communist organizing is false and dishonest.

26. I hesitated before reaching out to CEO Goldstein because I suspected that complaining about the inequities in PSAL and specifically about inequities between John Jay and Millennium would not be well-received or appreciated by the DOE. I was aware of the negative

reaction of the DOE to David Garcia-Rosen's complaint about PSAL inequities, including the OSI/SCI investigation into him.

27. A parent at the PSC recently provided three articles regarding the David Garcia-Rosen controversy which reveal that the DOE is particularly sensitive to the allegations of separate and unequal PSAL sports programs.

28. The first Article is from the *Nation Magazine* dated May 6, 2015, which is entitled: "Is NYC Punishing Educators who Advocate for Sports Equity in Schools?" (Exhibit 5). This article demonstrates not only the depth of the problem I raised with respect to PSC, it also shows how separate PSAL and my job as a principal are.

29. The second article is an Op-Ed from *City Limits* dated June 29, 2015. It also highlights the impact on Mr. Garcia-Rosen and other teachers who specifically confronted Chancellor Farina and Mr. Goldstein about these policies. (Exhibit 6).

30. The third article appeared in the Socialist Worker in April 20, 2015, and specifically quotes Mr. Goldstein in responding to the allegations of inequalities in the allocation of sports programs by saying "There will be no Marxist redistribution of teams…we've been doing it this way for years and that's not going to change. (Exhibit 7).

31. In the thirteen years of being principal at PSC the DOE has not presented any instance of wrongdoing on my part. They do not have any complaint of any specific instance – including what, to whom, when, or where – I allegedly committed any wrongdoing.

32. On March 30, 2017, I participated in a panel discussion on "The Case for School Integration Now," sponsored by the PSC PTA, with New York Times staff writer Nikole Hannah-Jones and teacher Rhonda Hendrickson. This event had been scheduled months before

the OSI investigation. Because of the OSI investigation, I felt nervous about speaking and self-censored my speech.

33. Prior to the March 30, 2017 panel, I received a call from my direct supervisor Superintendent Michael Prayor who knew I was about to attend the PTA panel. He advised me, "The Chancellor does not want to receive letters of support for you. These letters aren't part of the OSI process."

34. Going forward, I will be fearful that any action I take in defense of my students' civil rights could be deemed misconduct and could result in an investigation and discipline. Although my commitment to stand up for my students hasn't been completely frozen, it has certainly been chilled.

Signed and Sworn
To me this 2nd
Day of May, 2017.

_____
Notary Public
MARIA CHICKEDANTZ
NOTARY PUBLIC-STATE OF NEW YORK
NO 02CH6315888
QUALIFIED IN KINGS COUNTY
MY COMMISSION EXPIRES 12-01-2018

_____
JILL BLOOMBERG