UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

JILL BLOOMBERG,

                              Plaintiffs,

-against-

THE NEW YORK CITY DEPARTMENT EDUCATION and CARMEN FARINA,

                              Defendants.

**DECLARATION OF CHARITY GUERRA IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

------------------------------------------------------------------------ X   Case No. 17 Civ. 3136

        **CHARITY GUERRA** declares, pursuant to 28 U.S.C. § 1746 and subject to the penalties of perjury, that the following is true and correct:

        1. I am an attorney duly admitted to practice within the Courts of the State of New York.

        2. I am presently employed as an attorney in the New York City Department of Education's ("DOE") Office of the General Counsel ("OGC").

        3. I am the Executive Deputy Counsel for Administrative Trials, Compliance and Operations. I report to Howard Friedman, the General Counsel for the DOE. I supervise six units in OGC, which include the Administrative Trials Unit, the Teacher Performance Unit, the Office of Special Investigations, the Office of Auditor General, as well as the Compliance and Commercial units.

        4. I submit this declaration in opposition to plaintiff's motion for a temporary restraining order and preliminary injunction. In addition, I make this affidavit based upon my own personal knowledge, conversations with DOE employees, and records maintained by the DOE.

## A. Background Regarding the Office of Special Investigations

5. The Office of Special Investigations ("OSI") is one of two internal DOE investigatory units. The Office of Equal Opportunity ("OEO") is the other. OSI conducts investigations of allegations it intakes directly and those which the Special Commissioner of Investigation for the New York City School District ("SCI") refers to OSI.

6. SCI is an investigatory agency independent of the DOE, established in June 1990 pursuant to Mayoral Executive Order No. 11. SCI is part of the New York City Department of Investigation, and its sole function is to investigate allegations of corruption, conflicts of interest, unethical conduct and other misconduct in the DOE. Pursuant to Section 3 of the Executive Order, SCI may refer matters involving unethical conduct or misconduct to the DOE for investigation, disciplinary or other appropriate action.

7. OSI receives and investigates matters SCI refers to the DOE. Pursuant to the DOE's Chancellor's Regulation A-420(IV)(E) and A-421(IV)(E) respectively, the only complaints OSI intakes directly are those involving allegations of corporal punishment and verbal abuse.

8. In 2016, OSI received and processed 6766 complaints and conducted 1654 investigations.

9. Upon receiving a complaint, either directly or as a result of a referral from SCI, OSI reviews the allegations in the complaint to determine whether there is sufficient information to conduct an investigation into the allegations. If there is, the complaint is assigned to an investigator.

10. If there is not sufficient information in the complaint, OSI attempts to gather additional information in an effort to determine whether an investigation is necessary.

## B. Anonymous Complaint to SCI Regarding Plaintiff

11. On May 12, 2016, a confidential complainant ("CC") contacted SCI to report that Jill Bloomberg, the principal of Park Slope Collegiate ("PSC") was a member of a political organization known as the Populist Labor Party ("PLP") and was actively recruiting students into the organization and inviting them to participate in organizational activities including marches for her political organization.

12. On May 13, 2016, SCI referred the matter to OSI.

13. As is the case with complaints where the identity of the complainant is unknown to OSI that contain insufficient information upon which to, at that time, conduct an investigation, on May 17, 2016, OSI marked the complaint as closed pending additional information.

14. On December 20, 2016, the CC provided SCI with further information regarding the complaint against plaintiff. The additional information included allegations that plaintiff's husband filmed a documentary for the Len Ragizin Foundation, an organization associated with the PLP. The CC alleges that he is the president of the organization, and students and staff were included in the documentary without their authorization.

15. Another allegation is that plaintiff engaged in a conflict of interest when the documentary was screened at PSC and a $20 admission fee was charged.

16. Additional allegations include that academic policy is being violated at the school because a mandated course is not being taught, a bake sale was held to raise funds for a May Day march, and students who voice opinions different from those of plaintiff are not allowed to express them.

- 3 -

17. On January 25, 2017, SCI sent the additional information it had received to DOE and OSI.

18. On February 1, 2017, OSI re-opened its investigation based on the additional information the CC provided.

19. Moreover, the additional information provided by the CC provided enough information such that the CC's identity became known to OSI and therefore OSI was now able to interview the CC in connection with the complaint.

20. At this time, OSI was not aware that plaintiff had sent emails on November 29, 2016 and/or January 10, 2017 regarding sports programs at PSC.

21. Also on February 1, 2017, OSI assigned the complaint to Confidential Investigator Michelle Archie ("Archie").

22. On March 2, 2017, Archie conducted a witness interview at PSC.

23. On March 13, 2017, Archie conducted another witness interview at OSI. Arthur Solomon ("Solomon"), a union representative from the United Federation of Teachers (UFT) was present.

24. Also in March 2017, Archie interviewed the CC at OSI. Solomon and Robert Levine, another UFT representative were present.

25. A witness interview that had been scheduled for April 25th was cancelled as were interviews scheduled for Monday, May 1st.

26. On or about March 22, 2017, the DOE received a cease and desist letter dated March 22, 2017, from plaintiff's attorneys alleging that OSI's investigation was retaliatory and therefore it must be stopped.

27. On March 27, 2017, the DOE responded to plaintiff's counsel's March 22, 2017 letter to advise plaintiff that the substance of the complaint that OSI is investigating is unrelated to plaintiff's complaint of racial segregation involving the sports teams at the John Jay Campus of which PSC is a part.

28. On March 30, 2017, OSI received a complaint alleging that on March 29, 2017, plaintiff held a staff meeting at the school where she discussed the fact that she was being investigated by OSI. She stated that her attorneys had sent a cease and desist letter to the DOE regarding the investigation because it was retaliatory. She then read the DOE's response to that letter. The complaint further alleged that plaintiff also stated that OSI's investigation would end as a result of the cease and desist letter or would be temporarily halted when her attorneys filed suit and requested a preliminary injunction.

29. However, because OSI can only directly intake complaints of corporal punishment and verbal abuse, this allegation involving interference with an OSI investigation was reported to SCI. SCI subsequently referred the allegation back to OSI for investigation.

30. On April 6, 2017, the DOE sent plaintiff's attorneys a second letter providing more detail about the allegations against plaintiff.

31. OSI has a responsibility to examine these allegations which, if proven true, violate DOE academic policy, Chancellor's Regulations D-130 and D-180 which prohibit the use of school facilities, equipment and supplies on behalf of political organizations, Chancellor's Regulation C-110, regarding conflicts of interest, and the City of New York's Conflict of Interest laws.

32. Pursuant to Chancellor's Regulation D-130 (I)(C)(1), "all school personnel shall maintain a posture of complete neutrality" with respect to political candidates and, while on

duty or in contact with students, may not display items advocating on behalf of a particular political organization. Fundraising on school grounds during school hours on behalf of any political organization is expressly prohibited under D-130 (I)(C)(2). D-130(III)(A) states that any employee who violates the provisions of D-130 is subject to discipline.

33. Pursuant to Chancellor's Regulation D-180, Section XI, "[n]o rallies, forums, programs, etc., on behalf of, or for the benefit of any elected official, candidate, candidates, slate of candidates, or political organization/committee may be held in a school building after school/business hours except as" expressly permitted by the regulation.

34. If substantiated, these allegations also violate portions of the Conflicts of Interest Law, including Section 2604(b)(3), contained in Chapter 68 of the New York City Charter. The Conflict of Interest Law applies to all employees of the City of New York, and by resolution dated April 18, 1990, the DOE adopted the Conflict of Interest Laws in Chancellor's Regulation C-110. Section 2604(b)(3) prohibits DOE employees from utilizing their DOE position for private gain. Chancellor's Regulation C-110 provides that "Officials and employees shall not solicit, negotiate for, or engage in any private business, transaction, or professional or political activity during the hours they are scheduled to work for the New York City Department of Education or on Department of Education property. This includes lunch periods, preparation periods, breaks, or any other time that the official or employee is deemed officially to be performing Department of Education duties."

35. The purpose of OSI's investigation is to gather information from individuals including plaintiff to determine whether in fact any of the regulations stated above have been violated. Any information plaintiff were to provide to OSI would be carefully evaluated and considered.

36. Additionally, as mentioned above, DOE employees are entitled to union representation during their interviews and therefore plaintiff would be represented by the Council of School Supervisors and Administrators ("CSA") during her interview. The OGC also offered in communications with plaintiff's counsel to permit them to be present during any interview of plaintiff by OSI.

37. OSI is not investigating plaintiff in retaliation for her November 26, 2016 and/or January 10, 2017 emails nor is it investigating her for belonging to or believing in the ideals of any one political party. Rather, OSI is conducting an investigation to ascertain whether plaintiff used her position as a DOE employee to advance the beliefs of a particular political party and engage in impermissible political activity in violation of the Chancellor's Regulations and Conflicts of Interest Law. DOE regulations do not prohibit exposing students to the complete spectrum of political ideologies. Similarly, OSI's investigation will determine whether plaintiff violated academic policy and conflict of interest rules.

38. OSI's investigation has not disrupted the PSC school community as most interviews have occurred at OSI's office. Future witness interviews are scheduled to also take place there. Archie has conducted only one interview at the school and the only remaining interviews which will occur at the school involve students.

39. It is critical that interviews of student witnesses be conducted before the end of the school year as some students may be graduating and others may be transferring to non-DOE schools, or even moving outside of New York City, making it more difficult to secure interviews with them in the future.

40. The scheduling of OSI witness interviews involving teachers and other school staff requires coordination with UFT representative Arthur Solomon. Solomon is the primary

UFT representative for Brooklyn and as such represents UFT members who work in schools all over Brooklyn, in investigations being conducted by both OSI and OEO. Accordingly, Solomon's schedule is quite full.

41. Except in cases of certain serious misconduct not relevant here, such as sexual abuse, DOE does not seek to impose discipline on a DOE employee who is being investigated while the investigation is ongoing. Upon conclusion of an investigation substantiating an allegation, OSI refers its findings to the supervisor of the subject of the investigation, for whatever disciplinary action the supervisor deems appropriate. The action to be taken varies and can include no action whatsoever, an oral or written warning, a letter to file, or disciplinary charges under Education Law § 3020-a, which applies to tenured pedagogues and could lead to termination.

Dated: New York, New York
      May 1, 2017

*/s/ Charity Guerra*
CHARITY GUERRA