UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JILL BLOOMBERG,

               Plaintiff,

                                   Index No. 17-cv-3136 (PGG)

   v.

THE NEW YORK CITY DEPARTMENT OF
EDUCATION, and CHANCELLOR CARMEN
FARINA,

               Defendants.
-----------------------------------------------------------------x

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS HER FIRST AMENDMENT AND TITLE VI RETALIATION CLAIMS

**Mirer Mazzocchi Julien & Chickedantz, PLLC**
By: Jeanne E. Mirer
150 Broadway, Suite 1200
New York, New York 10038
212-231-2235
Attorneys for Plaintiff

## **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES…………………………………..……………….....ii

INTRODUCTION……….…………………………………………………………...1

COUNTER STATEMENT OF FACTS…………….…………………………………..2

      Plaintiff's History of Citizen Speech and Defendants' Admonition of Plaintiff's Speech on Racism/Segregation As Outside The Scope of Her Employment………...…………………………………………………………....2

      Plaintiff's Protected January 10, 2017 Activity…….…………………………..7

STANDARD OF REVIEW FOR MOTION TO DISMISS………………………………4

ARGUMENT……….……………………………………………………………...5

I.    PLAINTIFF SUFFICIENTLY PLEADS HER TITLES VI RETALIATION CLAIM……….………………………………………………………….........5

II.   PLAINTIFF HAS SUFFICIENTLY PLEADED ALL HER FIRT AMENMENT CLAIMS…………………..……………………………………………………6

      A. Plaintiff Has Pleaded A Plausible Claim Under The Petition Clause….…6

      B. Elements of Plaintiff's First Amendment Retaliation Claim…………...…8

            1. *GARCETTI* RECOGNIZED THAT STATEMENTS MADE IN THE WORKPLACE MAY BE CITIZEN SPEECH, NOT STATEMENTS MADE IN PURSUANT TO OFFICIAL DUTIES; GARCETTI IS DISTINGUISHABLE ON THE FACTS………...8

            2. THE *GIVHAN* "CARVE OUT" IN GARCETTI…………………9

            3. MATTHEWS V. CITY OF NEW YORK IS CONTROLLING...14

            4. OTHER CASES WHERE THE COURTS HAVE FOUND JOB RELATED SPEECH PROTECTED UNDER THE FIRST AMENDMENT…………………………………..……………16

CONCLUSION…………………………………………………………………....…18

## Table of Authorities

### Cases

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009)..................................................................................4

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 570 (2007)..................................................................................4

*Biro v. Conde Nast,*
807 F.3d 541, 544 (2d Cir. 2015) .......................................................................4

*Borough of Duryea v. Guarnieri,*
564 U.S. 379 (2011)..........................................................................................7

*Connick v. Myers*,
461 U.S. 138,146 .........................................................................................7,10

*Dillon v. Suffolk County Department of Health Services,*
  917 F.Supp.2d 196,210-1 (E.D.N.Y 2013)………………………………………… ……16, 18

*Garcetti v. Ceballos,*
547 U.S. 410, 418,420,421,424-5 (2006) ..........................................8,9,10,11,12,13,15

*Givhan v. Western Line Consol. School Dist.,*
  439 U.S. 410, 414,420-1,412-3 [1979]..........................................................9,10,12,13

*Griffin v. City of New York,*
880 F. Supp. 2d 384 (E.D.N.Y. 2012) .................................................................18

*Jackler v. Byrne* ,
658 F.3d 225,233 (2d Cir 2011) .....................................................................12,13

*Lane v. Franks*,
134 S.Ct. 2369,2374,2377,2379 (2014)........................................................10, 11,12

*Matthews v. City of New York,*
779 F.3d 167,173-4 (2d Cir. 2015) ............................................................8, 14,15

*Palmer v. Penfield Central School District,*
918-9 F.Supp.2d 192 (W.D.N.Y. 2013). ..............................................................5,6

*Palmer v. Penfield Central School District,*
918-9 F.Supp.2d 192 (W.D.N.Y. 2013). ..................................................................5,6

*Perry v. Sindermann,*
408 U.S. 593 (1972)………  …………………………………………………………….….10

*Pickering v. Board of Education of Township High School Dist.,*
391 U.S. 563,573,568 (1968) …………………………………………………….....7,8,9,10,11

*Ramirez v. Hempstead Free School District,*
33 F. Supp. 3d. 158 (E.D.N.Y. 2014) .........................................................................17

*Ricciuti v. Gyzenis,*
832 F. Supp. 2d 147, 157 (D. Conn. 2011)...................................................................17

*Smith v. County of Suffolk,*
776 F. 3d 114 (2d Cir. 2015) ......................................................................................17

*Staten v. City of New York,*
2016 U.S. App. LEXIS 12014, *1 (2d Cir. 2016) .........................................................4

*Sulehria v. New York,*
2014 U.S. Dist LEXIS (S.D.N.Y. 2014)......................................................................5

*Vega v. Hempstead Union Free Sch. Dist.,*
801 F.3d 72, 86 (2d Cir. 2015) ...................................................................................4,5

*Weintraub v. City of New York,*
593 F.3d 196 [2d Cir. 2010])..............................................................................12,15,18

## **Other Authorities**

42 U.S.C. § 2000d.......................................................................................................9

Chancellor's Regulation of D-130……………………………………………………….1,7

Eleventh Circuit………… ……………………………………………………………….11

First Amendment ............................................................................1, 2, 6,7,8,9 10,11,14

Second Circuit…………………………………………………………………….……12,14

Title VI.......................................................................................................1, 2,5,6 19

## INTRODUCTION

Plaintiff is the principal of Park Slope Collegiate ("PSC"), one of four secondary schools located John Jay Campus in the Park Slope neighborhood of Brooklyn, New York. (Comp. ¶ 4). Plaintiff has been the principal of PSC for thirteen years.  (Comp. ¶ 10).

Plaintiff is known throughout the City and by the Department of Education (DOE) as an activist for civil rights. Since the outset of her tenure at PSC, plaintiff has encouraged desegregation of the school and opposed various DOE measures that reinforce and perpetuate *de facto* segregation, such as the creation of White enclaves within Black and Latino schools through the institution of, *inter alia*, student tracking programs and gifted and talented programs, which have the effect of further segregating students by race. (Comp. ¶ 32)

Plaintiff brings this Action to address retaliation by Defendants in early 2017 after she engaged in protected First Amendment activity and protested discrimination in benefits to students in schools which receive federal funding in violation of Title VI.  By her First Amended Complaint Plaintiff also brings a constitutional challenge to the defendants' expansive reading of Chancellor's Regulation of D-130, under which she was subject to the retaliatory investigation in question. As an initial matter, with respect to her challenge of D-130, plaintiff's arguments are the subject of her Cross-Motion for Partial Judgment on the Pleadings and shall not be addressed herein.

Defendants have also moved to dismiss the Title VI retaliation and First Amendment retaliation claims in plaintiff's First Amended Complaint ("FAC" or "Comp."), seeking complete dismissal of the Second and Third Causes of action.  For the reasons provided herein, plaintiff respectfully request that defendant's motion is denied in its entirety.

With respect to the First Amendment claims, the FAC sets out two theories: (1) that Defendants retaliated against plaintiff by launching a retaliatory investigation for discrete

1

protected activities related to her protests of segregated and disparate sports teams, as well as (2) retaliation for petitioning the for redress of grievances. Defendants address in their motion to dismiss only the issue of plaintiff's protected activity relating to plaintiff's protests of segregation and disparity of sports teams. Because defendants' Motion does not address plaintiff's First Amendment claim premised on retaliation for exercising her "right to petition the government for redress of grievances," such claim is not before the court and should not be dismissed. Furthermore, defendants only challenge whether plaintiff has a claim for protected activity under the First Amendment and whether the pleadings meet the standards for Title VI. Therefore as defendants do not challenge plaintiff's pleadings with respect to knowledge of protected activity, adverse action or causal connection between protected activity and the adverse action, plaintiff does not address these issues and they should be deemed waived.

## COUNTER STATEMENT OF FACTS

### Plaintiff's History of Citizen Speech and Defendants' Admonition of Plaintiff's Speech on Racism/Segregation As Outside The Scope of Her Employment

Paragraphs 33 to 52 of the FAC chronicle some of plaintiff's public activities to promote desegregation and to end racism in the New York City School system. This included her opposition in 2010 to the DOE's decision to co-locate Millennium Brooklyn, in the John Jay Building. (Comp. ¶¶ 33-36). When she publicly opposed Millennium because of her concerns about segregation, she was admonished by the superintendent for implying DOE policies promoted rather than stopped racism. It was clear from this that plaintiff's speech about DOE programs that promoted segregation and racial disparities were not part of her job. (Comp. ¶ 37). The FAC shows that throughout the years plaintiff was a consistent voice for racial harmony over division making clear that she was not neutral on the issue of racism. (Comp. ¶ 44).

2

On May 1, 2015, plaintiff spoke on a panel called "Restorative Approaches" at John Jay College of Criminal Justice. Many high level DOE officials were in attendance. During the panel, plaintiff spoke out against metal detectors in schools and harsh punitive disciplinary policies that adversely affect students of Color. (Comp. ¶ 47). She was visited by her then Superintendent who told her that her remarks were not well received by Chancellor Farina. Again she was being given the message that speaking out about the racial implications in DOE's decisions was not part of her job and she should not be speaking about them openly. (Comp. ¶ 48).

**Plaintiff's Protected January 10, 2017 Activity**

On January 10, 2017, plaintiff sent an email to Eric Goldstein, CEO of the DOE's Public Schools Athletic League ("PSAL"), and Superintendent Michael Prayor, with other DOE officials and John Jay Campus principals in C.C., in which she accused the DOE of racial segregation within the sports programs in her building. (Comp. ¶ 56). Specifically, plaintiff's complaint stated the following: "I am writing to request your assistance in uniting the PSAL sports teams on the John Jay Campus in Brooklyn." (Id.). Plaintiff further described the racial makeup of the two sports teams, and noted that not only were the teams racially segregated, but that the resources were also unevenly distributed, with more teams being given to Millennium PSAL program where almost half the student body is White, who had far fewer students than the predominantly Black and Latino John Jay PSAL programs. (Id.). **Contrary to defendants' claim in their Motion that this letter was to request more sports teams, (Defs. Memo, at 12) at no point in the January 10, 2017 email did plaintiff request additional sports teams for her students.** (Id.).

Plaintiff received no response to her January 10, 2017 email from Mr. Goldstein or Superintendent Prayor, and therefore, with the support of the PSC Parent Teacher Association ("PSC PTA"), on February 13, 2017, the information from plaintiff's January 10, 2017 email was

printed onto leaflets and distributed on the sidewalk outside of the John Jay Campus. (Comp. ¶¶ 58-59)  The Leaflet cited the numbers in plaintiff's January 10, 2017 email to Goldstein and stated in large bold letters "Separate is Never Equal."  Plaintiff was involved in the PTA's leafleting action in that she provided the PTA with the January 10, 2017 email and helped edit the flyer.

Far from Defendant's claim, the letter of complaint plaintiff wrote on January 10, 2017 to the PSAL leadership complaining about the policy of separate and unequal sports teams was not something plaintiff was "employed to do", nor was it "part and parcel" of her regular job duties. In fact on the two occasions when she had made public statements in which disagreed with certain DOE actions or policies which she thought promoted segregation or perpetuated racism and racial stereotypes she was told it was not her job to criticize the DOE in this way. Thus, this type of policy oriented complaint was neither part of her job nor "the practical reality of her everyday work." That is, when she spoke out about this policy as applied to PSC she was speaking as a public citizen.  (Comp. ¶ 137).

## STANDARD OF REVIEW FOR MOTION TO DISMISS

"At the initial stage of a litigation, the plaintiff's burden is minimal." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). To survive a Motion to Dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly, 550* U.S. 544, 570 (2007), and "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Absent "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Id.* at 678, the court "accept[s] as true the factual allegations in the complaint and draw[s] all inferences in the plaintiff's favor." *Biro v. Conde Nast,* 807 F.3d 541, 544 (2d Cir. 2015); See also; *Staten v. City of New York,* 2016 U.S. App. LEXIS 12014, *1 (2d Cir. 2016).

4

"While detailed factual allegations are not required…a complaint may not be dismissed based on a judge's disbelief of a complaint's factual allegations. "*Vega*, 801 F.3d at 86. Based on the factual allegations and the arguments below this Court should deny defendants' motion to dismiss the limited Constitutional and Title VI claims before it.

## ARGUMENT

## I.   PLAINTIFF SUFFICIENTLY PLEADS HER TITLE VI RETALIATION CLAIM

Defendants move to dismiss plaintiff's Title VI Retaliation claim based on cases that are unrelated to plaintiff's retaliation case. The cases cited by defendants relate to cases of employment discrimination, and add a requirement that a plaintiff must plead that federal funds are to be used for employment.[1]  Plaintiff has not claimed employment discrimination. Her claim is that she had the right to oppose denial of benefits to Black and Latino students in the sports programs at the DOE based on their race. It is uncontested that the DOE receives federal money for student programs from the Federal Department of Education. Plaintiff has the right to be free from retaliation for reporting a violation of the law. (Comp. ¶ 133).

The pleadings should therefore be evaluated under the standards in *Palmer v. Penfield Central School District,* 918 F.Supp.2d 192 (W.D.N.Y. 2013).  In *Palmer*, plaintiff alleged she was retaliated against for voicing concerns regarding an African American student who plaintiff referred was denied admission to the school and this appeared to be disparate treatment.  In holding that plaintiff made a claim for retaliation under Title VI the Court stated:

> In her proposed amended complaint, plaintiff asserts a claim under Title VI, which provides, *inter alia,* that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

---

[1] These cases are cited in *Sulehria v. New York* 2014 U.S. Dist LEXIS (S.D.N.Y. 2014).

Title VI does not contain an explicit anti-retaliation provision, but courts have generally construed the statute as creating an implied private right of action for retaliation.

To state a claim for Title VI retaliation, a plaintiff must show: (1) participation in a protected activity that was known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protected activity and the defendants' adverse action.

*Palmer*, at 198-9 (citing 42 U.S.C. § 2000d; other citations omitted).

In the present case, plaintiff sets forth factual allegations to support all three requirements to establish a plausible claim for retaliation under Title VI.

## II.   PLAINTIFF HAS SUFFICIENTLY PLEADED ALL HER FIRST AMENDMENT CLAIMS

Defendants present a narrow issue on Motion to Dismiss Plaintiff's First Amendment claims. Specifically, defendants allege that plaintiff's January 10, 2017 email to Eric Goldstein, CEO of the PSAL and Superintendent Prayor was a statement made "pursuant to her official job duties" as a principal, not as a public citizen.

Thus, defendants do not challenge and it is at this point uncontroverted for purposes of motion to dismiss that (1) plaintiff sufficiently pleaded the January 10, 2017 email concerned allegations of racial segregation and racial disparities in allocation of sports teams to the schools on the John Jay Campus; and (2) that racial segregation is a matter of public concern for purposes of First Amendment balancing, as a matter of law.  Furthermore, defendants have not challenged plaintiff's claims of retaliation based on her law suit as part of her First Amendment right to petition the government for redress of grievances.

### A. Plaintiff Has Pleaded A Plausible Claim Under The Petition Clause

6

As noted above, on March 22, 2017 plaintiff stated she would invoke her rights under the petition clause of the First Amendment if what she claimed as a retaliatory investigation was not ended. On April 28, 2017 the suit was filed when the DOE informed plaintiff the investigation would go forward.  Plaintiff's suit alleged that she was being retaliated against for expressing opposition to racial discrimination and segregation. The initial law suit and the FAC also claim that the use of Chancellor's Regulation D-130 was a violation of her rights under the First Amendment, as well as unconstitutionally void. Plaintiff also alleges that retaliatory actions which occurred after she filed the case violated her First Amendment Right to Petition. At the time plaintiff filed the suit as well as the time Robin Greenfield responded to plaintiff's request that the DOE cease and desist from its investigation or face litigation, Robin Greenfield in her capacity to oversee OSI knew that the OSI had already determined that the confidential complainant had not provided any evidence to substantiate the allegations against plaintiff.  Plaintiff therefore alleges that the continued investigation and the imposition of discipline for matters unrelated to any D-130 allegations are retaliatory for her filing of her law suit to vindicate her First Amendment Rights.

In 2011 the Supreme Court in *Borough of Duryea v. Guarnieri,* 564 U.S. 379 (2011) decided in a 7-2 decision that filing law suits are within the petition clause of the First Amendment. The Court held that claims under the Petition Clause are not coextensive with claims brought under the speech provisions. The majority however required the law suits at issue to be based on matters of public concern as required by *Connick v. Myers, infra* and subject to the *Pickering* balancing. Most importantly, the majority did not overtly apply an employee/citizen distinction to claims brought under the petition clause, a fact pointed out by Justice Scalia in dissent. Regardless,

7

plaintiff has pleaded a plausible claim of retaliation for stating an intention to and then filing litigation claiming retaliation for protected speech.

### B. Elements of Plaintiff's First Amendment Retaliation Claim

A plaintiff asserting a First Amendment retaliation claim must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech. *Matthews v. City of New York*, 779 F.3d 167 (2d Cir. 2015).

In determining whether the speech of a public employee is protected by the First Amendment, the inquiry begins with whether the speech was a matter of public concern, and secondarily whether the employee spoke as a citizen rather than solely as an employee. If the speech was a matter of public concern and the employee spoke as a citizen, the Court will apply what is called the *Pickering* balancing analysis to determine if there is a basis for treating the employee differently than other members of the public, based on the government's needs as an employer.  See, *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006).

Here defendants do not allege that the January 10, 2017 email fails the balancing test—that question is not before the Court—nor that the issue is not a matter of public concern. The only question is whether plaintiff's speech was part of her job duties.

### 1. *GARCETTI* RECOGNIZED THAT STATEMENTS MADE IN THE WORKPLACE MAY BE CITIZEN SPEECH, NOT STATEMENTS MADE IN PURSUANT TO OFFICIAL DUTIES; GARCETTI IS DISTINGUISHABLE ON THE FACTS

In *Garcetti v. Ceballos* the Supreme Court established that speech of public employees made within the workplace may be protected citizen speech. The core inquiry, the court held, was whether the public employees made the statements "pursuant to their official duties" in which case they "are not speaking as citizens for First Amendment purposes and their speech is not protected.

"That Ceballos expressed his views inside his office, rather than publicly, is not dispositive. Employees in some cases may receive First Amendment protection for expressions made at work." *Garcetti*, at 420 (citing *Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410, 414 [1979]). "Many citizens do much of their talking inside their respective workplaces, and it would not serve the goal of treating public employees like 'any member of the general public,' to hold that all speech within the office is automatically exposed to restriction." *Id.*, at 420-1 (citing *Pickering,* at 573).

As the court in Garcetti further noted, "[t]he memo concerned the subject matter of Ceballos' employment, but this, too, is nondispositive. The First Amendment protects some expressions related to the speaker's job." *Id.*, at 421 (citing *Givhan*). "As the Court noted in *Pickering:* 'Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal.' The same is true of many other categories of public employees."[2] *Id.* (citing *Pickering*).

## 2. **THE *GIVHAN* "CARVE OUT" IN *GARCETTI***

---

[2] The majority was concerned that in response to this decision there could be an effort for public employers to try to expand an employee's job description just so as to deny them First Amendment protection for statements of public concern that relate to their job duties. As the court in *Garcetti* stated, "Two final points warrant mentioning. First, as indicated above, the parties in this case do not dispute that Ceballos wrote his disposition memo pursuant to his employment duties. We thus have no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate. We reject, however, the suggestion that employers can restrict employees' rights by creating excessively broad job descriptions. The proper inquiry is a practical one. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Garcetti*, at 424-5.

In *Givhan v. Western Line Consol. School Dist.,* cited *supra,* the Supreme Court ordered the reinstatement of plaintiff, a teacher named Bessie Givhan, finding that she had been dismissed from her job at the school in retaliation for her private conversations with her principal about what she perceived to be racially discriminatory hiring practices at the school. The Court said:

> Finding that petitioner had made "demands"[3] on but two occasions and that those demands "were neither 'petty' nor 'unreasonable,' insomuch as all the complaints in question involved employment policies and practices at [the] school which [petitioner] conceived to be racially discriminatory in purpose or effect," the District Court concluded that "the primary reason for the school district's failure to renew [petitioner's] contract was her criticism of the policies and practices of the school district, especially the school to which she was assigned to teach." Accordingly, the District Court held that the dismissal violated petitioner's *First Amendment* rights, as enunciated in *Perry v. Sindermann,* 408 U.S. 593 (1972), and *Pickering v. Board of Education,* 391 U.S. 563 (1968), and ordered her reinstatement.

*Givhan,* at *412-3.

Since *Garcetti,* every court to address the issue has reinforced what might be called the *Givhan* "carve out" in *Garcetti* protecting employees who were retaliated against after raising issues of public concern about their jobs and in particular issues of racial discrimination, which is quintessentially a matter of public concern.[4] For example, in 2014 the Supreme Court in *Lane v. Franks,* 134 S.Ct. 2369 (2014), reversed the ruling of the 11th Circuit that the plaintiff's testimony under subpoena about a matter of public corruption was not protected because it was uncovered during his job and therefore part of his official job duties. In writing for a unanimous court, Justice Sotomayor stated:

"Almost 50 years ago, this Court declared that citizens do not surrender their First

---

[3] The School system had defended plaintiff's firing by describing her encounters with the principal as being unreasonable demands made in a insulting loud and arrogant manner.

[4] The Court in *Connick v. Myers,* 461 U.S. 138, stated that speech is a matter of public concern when it can "fairly be considered to relate to any matter of political, social, or other concern to the community." *Connick,* at 146.

Amendment rights by accepting public employment. Rather, the First Amendment protection of a public employee's speech depends on a careful balance "between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." In *Pickering*, the Court struck the balance in favor of the public employee, extending First Amendment protection to a teacher who was fired after writing a letter to the editor of a local newspaper criticizing the school board that employed him. Today, we consider whether the First Amendment similarly protects a public employee who provided truthful sworn testimony, compelled by subpoena, outside the course of his ordinary job responsibilities. We hold that it does.

*Lane*, at 2374. (citing *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U. S. 563, 568 [1968]).

The Supreme Court in *Lane* took issue with the 11th Circuit's broad interpretation of *Garcetti* which held that the plaintiff's speech was unprotected because he was subpoenaed to testify on a matter which owed its existence to his professional responsibilities. The 11th Circuit reasoned: "[e]ven if an employee was not required to make the speech as part of his official duties, he enjoys no First Amendment protection if his speech owes its existence to the employee's professional responsibilities and is a product that the employer himself has commissioned or created." *Id.,* at 2374 (citations omitted). The 11th Circuit concluded that "Lane spoke as an employee and not as a citizen because he was acting pursuant to his official duties when he investigated Schmitz' employment, spoke with Schmitz and CACC officials regarding the issue, and terminated Schmitz." *Id.*, at 2377. "That Lane testified about his official activities pursuant to a subpoena and in the litigation context," the 11th Circuit continued, "does not bring Lane's speech within the protection of the First Amendment." *Id.*

In rejecting such an overbroad reading of *Garcetti*, the Supreme Court stated:

*Garcetti* said nothing about speech that simply relates to public employment or concerns information learned in the course of public employment. The *Garcetti* Court made explicit that its holding did not turn on the fact that the memo at issue "concerned the subject matter of [the prosecutor's] employment," because "[t]he

> First Amendment protects some expressions related to the speaker's job." In other words, the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.

*Lane*, at 2379. (citing *Garcetti*, cited *supra*, at 421)

The reference above is to the portion of *Garcetti* which cites to the *Givhan* carve out, and focuses on the "speech at issue."[5] By referencing *Givhan*, the Supreme Court reinforced the claim that speaking out about racial discrimination on the job is a matter of public concern about which an employee is speaking as a citizen and not as an employee.

A few years before *Lane v. Franks*, in 2011 the Second Circuit in *Jackler v. Byrne* 658 F.3d 225 (2d Cir 2011), referred to *Givhan* as an example of speech protected under the First Amendment. In *Jackler*, the plaintiff, a probationary police officer, alleged he lost his job as a police officer because he refused to change a truthful written report about an incident of police misconduct he had witnessed. His account of the incident coincided with the victim's account and against the account of his fellow officer. The plaintiff thereafter refused several efforts by other officers to get him to change his report after being threatened by other officers to file a false report. The District Court granted judgment on the pleadings holding inter alia:

> As to Jackler's First Amendment retaliation claims, the court, relying principally on *Garcetti* and this Court's then-recent decision in *Weintraub*, ruled—

---

[5]In *Lane*, the Court used the rubric of "ordinary job duties" rather than *Garcetti's* "official duties." The Court provided no explanation in the case for the change in descriptive language, however, as noted by Professor Rumel in an article entitled "Public Employee Speech: Answering the Unanswered and Related Questions in *Lane v. Franks*," there are reasons to believe that this rubric leaves less employee speech unprotected by the First Amendment. Professor Rumel bases this argument on the general principle that exceptions to First Amendment protections should be narrowly construed, and on the substantive principle initially advanced in *Pickering* and resurrected in *Lane* that public employees serve an important role as a source of information about the operation of public entities. See "Public Employee Speech: Answering the Unanswered and Related Questions in *Lane v. Franks*," Spring, 2017, 34 Hofstra Lab. & Emp. L.J. 243.

reluctantly—that the complaint failed to state a viable claim because the speech of a government employee on a matter of public concern is not protected by the First Amendment unless he speaks not as an employee in the course of his duties but rather as a citizen, and Jackler's speech here was in his capacity as a police officer, not a citizen.

*Jackler*, at 233 (citations omitted).

The Second Circuit reversed. Again, the Court referred to the *Givhan* carve out as part of the Court's reasoning that *Garcetti* did not foreclose protection to speech such as at issue in *Givhan*. The Court in *Jackler* ultimately decided the case based in part on the rationale in *Lane*, that a citizen has an obligation to testify truthfully about a matter and that Jackler's refusal to retract a truthful statement was protected under the First Amendment.

While *Givhan* was initially cited as a case for the proposition that complaints to a public body are not necessary for First Amendment protection, both in and since *Garcetti* it has been cited for the proposition that when a public employee raises concerns of racial discrimination, the employee does so as a citizen. In part this holding is based on the assumption that it is not normally within a public employees' ordinary duties to expose race discrimination in the workplace.

Also allegations regarding racial discrimination can come from many quarters and are not limited to people in the workplace. That is, whether a school discriminates against minorities in hiring does not depend on only employees to raise it. Parents and the general school community may also be concerned about racial disparities in hiring and raise them.

The *Givhan* carve out to *Garcetti* as applied to the facts of this case could not be clearer. Plaintiff did not develop her views on the need for a society to eradicate racism and racial segregation because she is a public employee. She has these views as a citizen and those views pre-dated her becoming a principal. Since 1953 it has been illegal for schools to racially segregate. Plaintiff was not seeking any personal benefit or something that would allow her personally to

more effectively do her own job when she wrote to Mr. Goldstein on January 10, 2017. She was seeking in that email to raise a racially discriminatory condition prevailing in the John Jay Campus building regarding the racial segregation and racially discriminatory allocation of sports teams. Her January 10, 2017 email made no request for more teams. It pointed out a discriminatory condition which the PSAL was allowing to exist in these facilities. The issue was one that the school community also raised in their public protest on February 13, 2017. The fact that principals have to make an application to PSAL in order to get sports teams in general does not convert plaintiff's complaint about racial segregation and the racially disparate assignment of teams into one of her ordinary duties.

### 3. *MATTHEWS V. CITY OF NEW YORK* IS CONTROLLING

In *Matthews v. City of New York*, 779 F.3d 167 (2d Cir. 2015), the Second Circuit decided that plaintiff Matthews spoke as a citizen when he raised a concern with his commanding officers at his precinct that a precinct wide quota system for arrests summons, stops and frisks was having an adverse effect on the precinct's relationship with the community. He alleged he was retaliated against for making those reports.

The 2015 decision in plaintiff's favor followed three prior rulings in which it was twice decided he had no First Amendment protection because he spoke as a public employee and not as a citizen. The Court of Appeals stated:

> In this case, Matthews reported the existence of the quota system on three occasions to Captain Bugge and on one occasion to an unnamed executive officer in the Precinct. Over a year later, after Captain Bloch had replaced Captain Bugge as the Precinct commanding officer, Matthews reported the quota system to him and stated that it was "causing unjustified stops, arrests, and summonses because police officers felt forced to abandon their discretion in order to meet their numbers" and it "was having an adverse effect on the precinct's relationship with the community."

*Matthews*, at 173-4.

14

Matthews's speech to the Precinct's leadership in this case was not what he was "employed to do," unlike the prosecutor's speech in *Garcetti*, nor was it "part-and-parcel" of his regular job, unlike the case of the teacher in *Weintraub* and the payroll clerk in *Ross*. Matthews's speech addressed a precinct-wide policy. Such policy-oriented speech was neither part of his job description nor part of the practical reality of his everyday work.

After reviewing Matthews' description of his job duties, the Court concluded:

> We hold that when a public employee whose duties do not involve formulating, implementing, or providing feedback on a policy that implicates a matter of public concern engages in speech concerning that policy, and does so in a manner in which ordinary citizens would be expected to engage, he or she speaks as a citizen, not as a public employee.

*Matthews*, at 174.

Similar to patrolman Matthews, plaintiff was not employed to file complaints about separate and unequal allocations of sports teams by the PSAL. Her duties did not include formulating policies on allocation of sports teams or providing feedback on matters of public concern to the people who do formulate those policies. Her concerns were raised in a manner in which other citizens could raise them, (and in fact did raise them through a leaflet and protest on February 13, 2017) and as such when plaintiff made the protests to PSAL about discrimination, she was speaking as a citizen and not an employee.[6]

---

[6] In *Matthews* the City alleged that part of the NYPD Patrol Guide stated Police Officers had an absolute duty to report any corruption or other misconduct committed by other officers. The Court rejected the City's argument that this made Matthews' duty to report the quota system part of his job duties. The Court disagreed saying this was not a case of Matthews not arresting an officer he saw violate the law. Rather he was voicing concern about a policy that was incentivizing violations of law. The Court further stated that even if his speech fell within the guidelines' general duty to report misconduct without regard to whether the investigation and reporting of misconduct is an integral part of his day to day activity, (i.e. what he was employed to do), allowing this type of general duty to exclude his speech from First Amendment protection would be contrary to the risk flagged in *Garcetti* where the majority rejected the ability of employers creating excessively broad job descriptions to restrict the rights of employees. In plaintiff's case there is no general duty

**4. OTHER CASES WHERE THE COURTS HAVE FOUND JOB RELATED SPEECH PROTECTED UNDER THE FIRST AMENDMENT**

It should not be presumed that *Matthews* is the only case in this Circuit which has found speech which relates to an employee's job as protected speech under the First Amendment. In *Dillon v. Suffolk County Department of Health Services,* 917 F.Supp.2d 196 (E.D.N.Y 2013), the plaintiff, a doctor and high ranking public health official in Suffolk County, discovered upon being transferred to provide primary health care at the Riverhead Correctional Facility that her supervising physician (1) was routinely denying methadone to patients in methadone maintenance programs; (2) did not provide asthma inhalers to patients; and (3) would delay starting patients on medications for several days after they arrived. The plaintiff also discovered that there was an unwritten policy requiring nurses to list administered medications as having been administrated by a fictitious nurse; that abnormal test results were removed from charts and injured and acutely ill patients were being neglected and left untreated; that required diagnostic tests were not being performed and mistreatment of patients was being covered up.

Plaintiff was later suspended and charges were brought against her by her supervisor. She sued. The defendants later sought summary judgment raising the claim that plaintiff's actions were taken as an employee and not a citizen because the issues she spoke about occurred on the job. In rejecting this outcome, the Court held:

> However, even in light of the broader perspective that the Plaintiff's job duties included the general medical treatment of inmates in the JMU, the Court finds that Dr. Dillon's speech was not made pursuant to those duties.
> …
> One could argue that if there was a systematic practice of inadequate treatment and widespread usage of fictitious treatments and omissions in the patients' charts, this

---

imposed on principals and teachers to report what they perceive as DOE policies which foster racial discrimination. Her decision to speak out on issues of racism, which is illegal in the workplace and in allocation of benefits, is a decision which citizens in general have a duty to address much like telling the truth when testifying in Court.

would inevitably affect the plaintiff's ability to perform her job of providing adequate medical treatment to the prisoners. However, the Court finds that this relationship is too attenuated and would stretch the logic of *Garcetti* to an unreasonable degree. "Were 'part-and-parcel' to encompass all speech that aims to improve a government employee's workplace—thereby helping the employee carry out her core duties there—everything that employees say relating to their work would end up falling outside the First Amendment's protections. This would fly in the face of the Supreme Court's repeated reminders that government employees' speech is often most valuable when it concerns a subject they know best: their jobs."

*Dillon*, at 210-1 (quoting *Ricciuti v. Gyzenis,* 832 F. Supp. 2d 147, 157 (D. Conn. 2011).

Plaintiff cites the above argument because the Court, during the injunction hearing, seemed to believe that because principals interact with PSAL to apply for teams, that plaintiff's letter complaint of racial discrimination about PSAL practices, (a complaint which defendants acknowledge for Title VI purposes to be a complaint of race discrimination) are the same thing and that she was just seeking more resources for her school to be more effective. The requests for teams and a complaint of racial discrimination are not the same. Just as Dr. Dillon may have interacted with Dr. her supervisor about treatment of patients does not mean that her complaint about his misfeasance is part and parcel of her job duties.

The Courts in this Circuit have found other employee speech protected. See e.g. *Ramirez v. Hempstead Free School District*, 33 F. Supp. 3d. 158 (E.D.N.Y. 2014)(holding complaint by computer programmer that he was being discriminated against because of his national origin and retaliated against for reporting that he had been harassed into developing an algorithm to change failing grades of the students to passing grades was protected. The court stated: "the amended complaint shows plaintiff's speech was motivated at least in part by his concerns as a citizen" and not related to a personal grievance and unquestionably addresses a matter of public concern); *Smith v. County of Suffolk,* 776 F. 3d 114 (2d Cir. 2015)(holding that plaintiff acted as a citizen when he notified news outlets that the County was seeking to implement a policy which would

17

result in ethnic discrimination); *Griffin v. City of New York,* 880 F. Supp. 2d 384 (E.D.N.Y.

2012)(holding plaintiff who reported police officer's misconduct to internal affairs was protected

as citizen as the court determined the reporting this corruption was "not an indispensable

prerequisite to the speaker's primary employment responsibility" and thus distinguishable from

*Weintraub v. City of New York,* 593 F.3d 196 [2d Cir. 2010])[7]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss should be denied in its entirety.


Dated:  New York, New York
        October 23, 2017

                              Respectfully submitted,

                              MIRER MAZZOCCHI JULIEN &
                              CHICKEDANTZ, PLLC


                              By: _____
                                  Jeanne E. Mirer

                              150 Broadway, Suite 1200
                              New York, NY 10038
                              Tel. (212) 231-2235
                              Fax (212) 409-8338
                              *Attorneys for Plaintiff*
                              jmirer@mmsjlaw.com

---

[7]The above list of cases is not exhaustive of cases which have found a particular plaintiff in circumstances similar find their speech was as a citizen on a matter of public concern and therefore protected.  The recent case of *Cohn v. Department of Education* 2017 U.S. App LEXIS 18158 (2d Cir. 2017) does not change the result of plaintiff's claim. The plaintiff in *Cohn* had to job of set up a portion of a Regents Exam and help grade it. The teacher reported suspicion of cheating by another teacher while grading the exams. This was found not to be protected speech as grading the exams was found to be part of his official job duties.