UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JILL BLOOMBERG,

                  Plaintiff,

  v.                                                                         17-cv-3136
                                                                           (NGG)

THE NEW YORK CITY DEPARTMENT OF
EDUCATION,

                  Defendant.
------------------------------------------------------------x


**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HER CROSS
MOTION FOR JUDGMENT ON THE PLEADINGS**

By: Jeanne Mirer
MIRER MAZZOCCHI &
JULIEN & PLLC
150 Broadway, Suite 1200
New York New York 10038
TeL212-231-2235
*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

PAGE

INTRODUCTION……………………………………………………………………….,1

ARGUMENT………………………………………………………………...…………... 2

I.   GIVEN THE COURT'S REFUSAL TO CONSIDER THE 12(C) MOTION AS A RULE 56 MOTION PLAINTIFF DOES NOT OPPOSE THE DEFENDANTS' CLAIM THAT THE MOTION IS PREMATURE AND WILL BE RE-FILED ONLY AFTER ANSWER AND DISCOVERY………………………………………………………….2

II.  DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CONSITUTIONAL CLAIM MUST BE DENIED AS PLAINTIFF HAS ALLEGED A LEGALLY AND FACTUALLY PLAUSIBLE CONSTITUTIONAL CHALLENGE TO DEFENDANTS' INTERPRETATION OF CHANCELLORS' REGULATION D-130 AS APPLIED TO HER IN THIS CASE……………………………………..3

   A.   Plaintiff's Allegations in Her Complaint With Respect to the Constitutional Claim …………………………………………. ……3
   B.   Defendants' Arguments In The Motion to Dismiss This Count Do Not Address the Allegations………………………………………5

III. PLAINTIFF'S COMPLAINT ALLEGES A PLAUSIBLE FACTUAL AND LEGAL BASIS FOR HER CHALLENGE TO THE DEFENDANTS' APPLICATION OF CHANCELLOR'S REGULATION D-130 OUTSIDE OF PARTISAN POLITICAL CAMPAIGNS…………………………………………6

IV.  D-130's RESTRICTIONS ON SPEECH MUST BE EVALUATED BASED ON STRICT SCRUTINY AND NARROWLY TAILORED TO SERVE A COMPELLING GOVERNMENTAL INTEREST ……...………………………..7

V.   MANY OF THE CASES CITED BY DEFENDANTS DO NOT STAND FOR THE BROAD PROPOSITIONS DEFENDANTS ASCRIBE TO THEM……………………………………………………………………...9

CONCLUSION……………………………………………………………………10

## INTRODUCTION

Plaintiff Jill Bloomberg files this Reply Brief to Defendants' Opposition to Plaintiff's Cross Motion for Partial Judgment on the Pleadings. As this Court will remember, in a telephonic pre-motion Conference in July of 2017, Defendants' sought permission to file a motion dismiss Plaintiff's First Amended Complaint (FAC). Because the FAC added a legal claim as Count I challenging Defendants' interpretation of Chancellors' Regulation D-130 as constitutionally infirm, Plaintiff requested the right to file a Cross Motion for Judgment on the Pleadings pursuant to FRCP 12(c). The Order which entered after this conference call allowed Defendants to file a motion to dismiss and Plaintiff to file both an opposition to the motion to dismiss and a cross motion pursuant to 12(c). (Dkt #51).

When Defendants filed their motion to dismiss they included as an Exhibit the findings of the Office of Special Investigations (OSI) which investigated the charges against plaintiff after this Court denied Plaintiff's request for an injunction. These findings were outside the pleadings. They showed that the charges upon which the investigation of plaintiff was based were unsubstantiated. On October 23, 2017 Plaintiff timely provided Defendants with her opposition to the motion to dismiss the First Amendment and Title VI claims, and a cross motion based on FRCP 12(c) challenging Defendants' expansive interpretation of Chancellor's Regulation D-130. In support of the Cross motion she provided an Affidavit and documents which supported her arguments in the cross motion. Because of this Court's "bundling rule" the Court could not have been aware of the specifics of Plaintiff's 12(c) motion. Shortly thereafter, however, Plaintiff's counsel wrote the Court to request permission to amend the affidavit already filed with the Cross Motion based on facts which occurred a few days after the filing. The Court denied that request stating it was not willing to turn Cross Motion into a Rule 56 Motion. (Dkt #59).

In the Opposition to Plaintiff's Cross Motion, Defendants request the Court deny the Plaintiff's Cross Motion because it is premature as the Defendants have not answered, and because the Court denied Plaintiff the right to have the motion considered under FRCP Rule 56. Defendants then **did not address many of the legal arguments made in Plaintiff's cross motion**. Defendants' main claim is that Plaintiff's 12(c) motion is premature and must await an answer. Defendants then claim that even if Plaintiff's Cross Motion is not procedurally defective, the motion still fails. For the reasons stated below Plaintiff will not oppose the Court finding Plaintiff's 12(c) motion premature despite the Court granting permission to Plaintiff to file it. If the motion is premature then the Court should not rule on it. Nonetheless, Plaintiff will further oppose Defendants' Motion to dismiss since she has stated a plausible factual and legal claim that the Defendants' interpretation of D-130 is constitutionally impermissible.

## ARGUMENT

I. **GIVEN THE COURT'S REFUSAL TO CONSIDER THE 12(C) MOTION AS A RULE 56 MOTION PLAINTIFF DOES NOT OPPOSE THE DEFENDANTS' CLAIM THAT THE MOTION IS PREMATURE AND WILL BE RE-FILED ONLY AFTER ANSWER AND DISCOVERY.**

Defendants have cited numerous cases for the proposition that a FRCP 12(c) motion cannot be brought until after Answer. These cases indeed hold this although all of the cases cited are all in the context of a defendant moving to dismiss a complaint under both FRCP 12(b)(6) and 12(c). In all the cited cases the Court has said the 12(c) motion is not available until after Answer but will be treated as a 12(b)(6) because the standards are the same. None of the cases were cited in the context of a plaintiff receiving permission from the Court to make a pre-answer motion under 12(c) and none involved case where the plaintiff filed the motion and asked that it be treated as a motion under Rule 56 motion pursuant to *Sellers v M.C. Floor Crafters Inc.* 842 F.2d 639 (2d Cir. 1988) before the Court said such treatment would not be allowed. Nonetheless based on the Court's

decision not to consider the motion as a Rule 56 Motion Plaintiff will not oppose that portion of the Defendants' argument that the 12(c) motion is premature.

> II. **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CONSITUTIONAL CLAIM MUST BE DENIED AS PLAINTIFF HAS ALLEGED A LEGALLY AND FACTUALLY PLAUSIBLE CONSTITUTIONAL CHALLENGE TO DEFENDANTS' INTERPRETATION OF CHANCELLORS' REGULATION D-130 AS APPLIED TO HER IN THIS CASE**

> > A. **Plaintiff's Allegations in Her Complaint With Respect to the Constitutional Claim**

Count I of Plaintiff's Complaint is a constitutional challenge to Defendants' application of Chancellor's regulation D-130 to the conduct she was investigated for. The Count states specific legal and factual reasons why the application of this Regulation to a claim that such things as a school Bake Sales for a May Day March are an improper basis for opening an investigation into Plaintiff's political activities. This Count runs from paragraphs 111 to 121. They are as follows:

> 111. Plaintiff repeats, reiterates, and incorporates each and every preceding paragraph as if set forth fully herein.

> 112. The subject of Chancellor's regulation D-130 is entitled as follows: "USE OF SCHOOL BUILDINGS BY CANDIDATES, ELECTED OFFICIALS AND POLITICAL ORGANIZATIONS, AND CONDUCT OF SCHOOL EMPLOYEES AND OFFICERS WITH RESPECT TO POLITICAL CAMPAIGNS AND ELECTIONS."

> 113. In the introduction of the regulation, the DOE sets forth the scope of activity governed by the regulation stating they govern, (1) the use of, or access to school buildings by elected officials, candidates for elective office, **or organizations working on behalf of such officials or candidates,** both during school hours, and non-school hours; (2) use of school facilities, equipment, and supplies for political purposes by

school employees, personnel, or staff members and officials, and (3) conduct of school employees, personnel, or staff members and officials with respect to political campaigns and elections. Chancellor's Regulation D-130.

114. With respect to Conduct of Employees, the regulation states in relevant part at Subsection C: "(1) While on duty or in contact with students, all school personnel shall maintain a posture of complete neutrality with respect to all candidates. Accordingly, while on duty or in contact with students, school personnel may not wear buttons, pins, articles of clothing, or other items advocating a candidate, candidates, slate of candidates or political organization/committee and (2) Personnel may not be involved in any activities including fundraising, on behalf of any candidate, candidates, slate of candidates or political organization/committee during working hours.".

115. All portions of the regulation expressly refer exclusively to partisan electoral politics, and the Courts that have addressed this issue refer to partisan politics as well. *Weingarten v. Board of Education*, 680 F.Supp.2d 595 (S.D.N.Y. 2010).

116. It is apparent on the face of this regulation that when in Section C (2) there is a reference to "political organization"/ "committee", such reference is to organizations referred to in the Introduction, which expressly mentions **organizations working on behalf of such officials or candidates.** There is no reference to conduct beyond any other type of "political organization" not involved in electoral partisan politics.

117. The DOE has consistently involved itself and its school employees and students to political activity such as protests against Donald Trump, Voter Registration drives, marches regarding climate change and many others (See, URL http://www.amny.com/news/politics/nyc-students-protest-trump-s-ban-on-refugee-

4

immigrants-1.13074563)

118.   Any effort to extend Chancellor's Regulation D-130 to make improper the beliefs or advocacy of beliefs that might also be held by and ideological organizations which does not run candidates and are not engaged in electoral politics contravene the First Amendment to the United States Constitution.

119.   The current D-130 does not give notice that the conduct plaintiff is under investigation for is a violation of this policy, nor could it because such restrictions would infringe on plaintiff's rights to freedom of speech and association under the First Amendment to the US Constitution.  Plaintiff and other DOE employees do not know what conduct is prohibited by Chancellor's Regulation D-130, and the DOE is able to abuse this ambiguity in order to abuse its power and freely retaliate against DOE employees who engage in protected activity.

120.   To the extent defendants assert D-130 is the basis for this investigation, it must be held unconstitutional on the ground that it is void for vagueness and violates plaintiff's right to due process under the Fourteenth Amendment, see *Kramer v New York Department of Education* 715 F. Supp. 2d 335 (E.D.N.Y. 2010).

121.   By engaging in an unrestricted investigation of plaintiff in order to discipline her for violating a Chancellor's Regulation that does not prohibit her conduct, the DOE has violated plaintiff's Fourteenth Amendment Rights, and she is therefore entitled to all relief the Court deems proper, including but not limited to equitable relief, compensatory damages, economic damages and punitive damages.

### B. Defendants' Arguments In The Motion to Dismiss This Count Do Not Address the Allegations

Defendants' answer these allegations in a very cursory fashion not directly dealing with any of

5

them. Basically Defendants' argument is that DOE's ability to restrict political speech as alleged in this case is entitled to great deference because the standards for as applied vagueness challenges are relaxed where the restriction imposes civil penalties and where the government is the employer. Defendants claim that because one phrase in Chancellor's Regulation D-130 states "School Buildings are not public forums for purposes of community or political expression" that the rest of the regulation which spells out what this statement is aimed at restricting is a nullity and that the Defendants may selectively determine what political expression is or is not permitted on an *ad hoc* basis and this Court must approve if it under a "rational basis" test. This reasoning must be rejected.

### III. PLAINTIFF'S COMPLAINT ALLEGES A PLAUSIBLE FACTUAL AND LEGAL BASIS FOR HER CHALLENGE TO THE DEFENDANTS' APPLICATION OF CHANCELLOR'S REGULATION D-130 OUTSIDE OF PARTISAN POLITICAL CAMPAIGNS.

As stated in Plaintiff's opening brief Defendants' expansive reading of D-130 grants the DOE unlimited authority to curtail all unapproved political expression on an *ad hoc* basis and this violates plaintiff's constitutional rights under the First and Fourteenth Amendments. Plaintiff's complaint alleges that the plain language of D-130 is limited to partisan (electoral) politics and the organizations supporting partisan politics. (Paragraphs 112-116). Plaintiff also alleges that DOE has consistently involved itself in political activity with its approval including activity which implicates office holders such as the current President and opposing his policies. (Paragraph 117). Paragraph 118 claims that extending D-130 to advocacy of beliefs which are associated with ideological organizations which do not run candidates contravenes the First and Fourteenth Amendments, and paragraphs 119 to 121 characterize the effort to extend D-130 to base investigations on advocacy of political positions by school personnel that some may not like, makes the regulation's application to Plaintiff's case void for vagueness.

6

As noted above the Defendants' Opposition brief does not address the claims made in the Cross motion with respect to the DOE approving many political activities in schools and encouraging students to take part in them. Defendants' therefore do not touch on the allegations in the complaint that the regulation does not give notice to employees as to what behavior is or is not the type of behavior that could lead to an investigation. The DOE is in this way is like Humpty Dumpty in "Alice in Wonderland" claiming that that D-130 "means whatever I want it to mean".

Plaintiff refers this Court to the arguments in Plaintiff's Opening brief page which begin on at page 11 and incorporates them by reference here. These arguments include Plaintiff's bringing to the Court's attention an instance where DOE through its Special Commissioner on Investigations (SCI) interpreted Chancellor's Regulation D-130 to only cover "organizations" which engaged in partisan (electoral) politics. In that instance a meeting held at a public school by Mayor De Blasio and a union in which many political topics such as fighting against income inequality and immigration reform were discussed. SCI was urged to find and did find D-130 not to be violated. In that instance the meeting was deemed not to have been used for "political expression" by a "political organization" and defining political organization to be limited to a group of voters which nominates a candidate or candidates to be voted for at an election. (Plaintiff's brief page 12). The interpretation of the limits of Chancellor's regulation D-130 to organizations which run candidates was adopted and advanced by DOE Attorney Robin Greenfield who took a different approach in Plaintiff's case. In Plaintiff's case the Defendants claim they can determine what is or is not improper political speech in a school building on an *ad hoc ex post facto* basis if there is a rational basis.

### IV. D-130's RESTRICTIONS ON SPEECH MUST BE EVALUATED BASED ON STRICT SCRUTINY AND NARROWLY TAILORED TO SERVE A COMPELLING GOVERNMENTAL INTEREST

Plaintiff directs this Court's attention to the Supreme Court's ruling in *Williams-Yulee v Florida Bar,* 135 S.Ct. 1656 (2015) where the Court found restrictions on speech must be subject to strict scrutiny and "narrowly tailored to serve a compelling state interest." In *Yulee,* the Plaintiff, a lawyer, ran for Judicial office and personally solicited funds for her campaign in violation of Canon 7C(1) of the Code of Judicial Conduct which specifically prohibited such personal solicitation. She was disciplined under Rules Regulating the Florida Bar for this violation. She challenged the regulation based on it being a restriction on her speech as a judicial candidate. The lower Court found that prohibiting judicial candidates from personally soliciting funds furthers Florida's compelling interest in "preserving the integrity of [its] judiciary and maintaining the public's confidence in an impartial judiciary." The Supreme Court agreed finding it was a rare case where restricting speech was justified given the government's interest in promoting the public's confidence in preserving judicial integrity. This case did not involve a criminal penalty. And although the rule was not "vague" the Plaintiff alleged that the rule failed to address other aspects of fundraising which had a similar impact on public perception. The Court recognized, that under-inclusiveness can raise "doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint."(Citation omitted). The Court said, under-inclusiveness can also reveal that a law does not actually advance a compelling interest. Analogizing to the allegations in this case, Plaintiff has pointed out that the Courts have already stated the government's interest in D-130 to further the "educational mission of protecting children from partisan political activity by staff in the presence of students that could improperly influence children and impinge on the rights of students to learn in an environment free of partisan political influence." *Weingarten v Board of Education*, F. Supp. 2d 595 (S.D.N.Y 2010). In that respect D-130 is a narrowly tailored restriction on participation the rights of public

8

school employees to engage in partisan politics in school buildings. Defendants claim that they do not have to specifically spell out other behaviors which might violate D-130, however, failing to do so creates conditions, similar to *Yulee, supra* by raising "doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint."

### V.  MANY OF THE CASES CITED BY DEFENDANTS DO NOT STAND FOR THE BROAD PROPOSITIONS DEFENDANTS ASCRIBE TO THEM

Defendants claim that *New York City C.L.A.S.H v City of New York* 315 F. Supp.2d 461 (S.D.N.Y 2014) stands for the broad proposition that if a regulation imposes civil penalties the standards governing the vagueness doctrine are relaxed. *NYC C.L.A.S.H supra* involved a challenge to New York City and New York State Regulations banning smoking in restaurants and bars. The Court found that smoking was not protected by the First Amendment before addressing whether the statutes were void for vagueness. The Court in addressing the Due Process challenge stated "the degree of linguistic precision ... varies with the nature--and in particular, with the consequences of enforcement--of the statutory provision." Id. (citation omitted)." The logical conclusion of this is that Courts can look at what the nature of the penalty is to determine what level of precision is needed in crafting regulations. The case does not require any Court to relax its due process scrutiny because the penalties may be civil. In Plaintiff's case the penalties for being found to violate D-130 may be civil but they could be substantial such as in loss of a career. Defendant then claims *Marchi v Bd. Of Coop. Educ. Services of Albany*, 173 F.3d 469 (2d Cir 1999) stands for the proposition that standards of vagueness are considerably more relaxed when the government is acting as an employer. In *Marchi supra* plaintiff's conversion to Christianity lead to him using his religious beliefs in his teaching. He asserted freedom of religion. The School claimed his actions conflicted with their obligations under the Establishment clause. Plaintiff was warned

9

about his use of religion in the class room and counseled extensively as to what was considered improper religious references in school. The Court held that under these circumstances the school as employer had some leeway with respect to delineating sanctionable conduct, however the **relevant inquiry is whether, "based on existing regulations, policies, discussions, and other forms of communication between school administration and teachers," it was "reasonable for the school to expect the teacher to know that her conduct was prohibited."** Far from standing for a broad proposition, the case requires employers to promote understandings of policies before they are applied it does not hold that vagueness standards are relaxed in public employment. Defendants then cite *Gordon v Griffith* 88 F. Supp. 2d 38 (E.D.N.Y 2000) for the proposition that "Broader speech restrictions are allowed when imposed by government as employer and not as sovereign." This proposition is misrepresented. In this case a legislative aide was fired for political activity outside of work but which conflicted with her employer's wishes. The Court declined to extend free speech tenure to legislative aides in the New York State Assembly while at the same time affirming that individuals do not surrender all First Amendment protection by joining the ranks of government employment.

Based on the foregoing Plaintiff is willing to forego a decision on this motion until after answer and discovery, but requests this Court deny the Defendants' motion dismiss.

Dated: New York, New York
September 6, 2018

                Respectfully submitted,

                MIRER, MAZZOCCHI & JULIEN PLLC

By: _____
       Jeanne Mirer
       150 Broadway, Suite 1200
       New York, NY 10038
       (212) 231-2235
       Attorneys for Plaintiff