17-CV-3136 (PGG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JILL BLOOMBERG,

                                       Plaintiffs,

-against-

THE NEW YORK CITY DEPARTMENT EDUCATION and CARMEN FARINA,

                                         Defendants.

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
   *Attorney for Defendants*
   *100 Church Street*
   *New York, N.Y. 10007*

   *Of Counsel: Joseph Anci*
   *Tel: (212) 356-1106*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT.....................................................................................................................................2

    I. PLAINTIFF FAILS TO ESTABLISH A FIRST AMENDMENT CLAIM .........................2

        A. Plaintiff's Argument Under The Petition Clause is Misplaced ...................................2

        B. Plaintiff Cannot Establish The Elements of a First Amendment
           Retaliation Claim......................................................................................................4

        C. Plaintiff's Speech Does Not Fit Into Any Category of
           Protected Speech ......................................................................................................5

    III. PLAINTIFF HAS NOT ESTABLISHED THE NEXUS
        REQUIRED FOR A TITLE VI CLAIM............................................................................7

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Acheampong v. N. Y. City Health & Hosps. Corp.,
     2015 U.S. Dist. LEXIS 37933 at *14 (S.D.N.Y. Mar. 25, 2015) ..................................................9

Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport,
     647 F.2d 256, 276−77 (2d Cir. 1981) ........................................................................................8

Borough of Duryea v. Guarnieri,
     564 U.S. 379 (2011) ............................................................................................................2, 3

Dillon v. Suffolk County Department of Health Services,
     917 F.Supp 2d 196 (E.D.N.Y.) .............................................................................................5,6

Garcetti v. Ceballos,
     547 U.S. 410 (2006) ........................................................................................................2, 4, 5

Givhan v. Western Line Consol. School Dist.,
     439 U.S. 410 (1979) ............................................................................................................4, 5

Griffin v. City of New York,
     880 F. Supp. 2d 384 (E.D.N.Y. 2012) ...............................................................................5, 6, 7

Jackler v. Bryne,
     658 F.3d 225 (2d Cir. 2011) ................................................................................................4, 5

Lane v. Franks,
     134 S.Ct. 2369 (2014) ..............................................................................................................4

Matthews v. City of New York,
     779 F.3d 167 (2d Cir. 2015) ....................................................................................................5

McDonald v. Smith, .....................................................................................................................2
     472 U.S. 479 (1985)

Micillo v. New York City Dep't of Educ.,
     No 14 Civ. 00943 (LAK) (GWG), 2015 U.S. Dist. LEXIS 12321
     (S.D.N.Y. Feb. 2, 2015) .................................................................................................5, 6, 7

Montero v. City of Yonkers,
     890 F.3d 386 (2d Cir. 2018) ....................................................................................................5

Moore v. City of New York, ..................................................................................................7, 8, 9
     2017 U.S. Dist. LEXIS 379 (S.D.N.Y. Jan. 3, 2017)

Palmer v. Penfield Central School District, ...................................................................................8
    918 F.Supp.2d. 192 (W.D.N.Y. 2013)

Perrotta v. City Sch. Dist. of Yonkers,
    No. 16................................................................................................................................5

Ramirez v. Hempstead Union Free Sch. Dist. Bd. Of Educ.,
    33 F. Supp. 3d 158 (E.D.N.Y. 2014) ......................................................................5, 6

Ross v. Breslin,
    693 F.3d 300 (2d Cir. 2012)....................................................................................3

Ross v. New York City Dep't of Educ.,
    935 F.Supp 2d 508 (E.D.N.Y. 2013) ......................................................................3

Sulehria v. New York, ......................................................................................................7, 9
    2014 U.S. Dist. LEXIS (S.D.N.Y. Sep. 19, 2014)

Verdi v. City of N.Y., et al., ..................................................................................................9
    306 F. Supp. 3d 532, 545-546 (S.D.N.Y. Jan. 22, 2018)

White v. City of New York,
    No. 13 Civ. 7156 (ER), 2014 U.S. Dist. LEXIS 123255
    (S.D.N.Y. Sep. 3, 2014) ............................................................................................7

**PRELIMINARY STATEMENT**

Plaintiff has filed this action in an attempt to undermine the functions of the New York City Department of Education's ("DOE") Office of Special Investigations ("OSI"). Plaintiff was, and is, unhappy that OSI commenced an investigation into a complaint that was made against her for allegedly engaging in communist activities and for recruiting students into the Progressive Labor Party. In opposition to defendants' motion to dismiss, plaintiff has offered nothing more than speculations and mischaracterizations, which do not establish either a First Amendment retaliation claim, or a Title VI claim. Further, plaintiff has not provided any sufficient basis to deny defendants' motion to dismiss all of her Federal claims. As further demonstrated in defendants' September 8, 2017 memorandum of law in support of their motion to dismiss, and defendants' July 31, 2018 memorandum of law in opposition to plaintiff's cross-motion, plaintiff has failed to establish: (1) that any speech alleged in the Amended Complaint was made as a citizen, and not as an employee; (2) that DOE Regulation D-130 is unconstitutionally vague under Fourteenth Amendment Due Process analysis[1]; and (3) that she has adequately pled a Title VI action.

Accordingly, for the reasons outlined below, and for the reasons set forth in defendants' September 8, 2017 memorandum of law in support of their motion to dismiss, and the reasons set forth in defendants' July 31, 2018 memorandum of law in opposition to plaintiff's cross-motion, defendants respectfully request that the Court grant their motion to dismiss in its entirety and dismiss all of plaintiff's federal claims.

---

[1] In her opposition, plaintiff did not address the portion of defendants' motion to dismiss related to her D-130 claims.

## ARGUMENT

### POINT I

### PLAINTIFF FAILS TO ESTABLISH A FIRST AMENDMENT CLAIM

In her opposition, plaintiff attempts to circumvent the prima facie requirements of a First Amendment retaliation claim by reasserting her claim under the guise of the Petition Clause of the First Amendment. Plaintiff seemingly thinks that a claim "under the Petition Clause [is] not coextensive with [a] claim[] brought under the speech provision[]." See Plaintiff's October 23, 2017 Memorandum of Law in Opposition ("Pl. Opp.") at 7.  However, contrary to plaintiff's scheme, the First Amendment right to speech and petition are "inseparable," and generally "there is no sound basis for granting greater constitutional protection" to one over the other. See McDonald v. Smith, 472 U.S. 479, 485 (1985).

#### A.   Plaintiff's Argument Under The Petition Clause is Misplaced

Plaintiff attempts to manipulate First Amendment doctrine in her favor to avoid having to disprove that her speech was made "pursuant to her official job duties," as it would be fatal to her retaliation claim. Plaintiff mistakenly relies on Borough of Duryea v. Guarnieri, 564 U.S. 379 (2011) for this proposition. See P. Opp. at 6. Plaintiff asserts that in Guarneri the court did not apply the "employee/citizen distinction." Id. at 7. Plaintiff further asserts that the employee/citizen distinction−otherwise known as the Garcetti "official duties" test, is inapplicable to a claim brought under the Petition Clause. Id. While the court in Guarnieri, did address that there may be circumstances "where the special concerns of the Petition Clause would provide a sound basis for a distinct analysis," plaintiff blatantly ignores that the Supreme Court went on to explicitly state that "claims of retaliation by public employees do not call for this divergence." Guarnieri, 564 U.S. 379 at 389; see also Ross v. New York City Dep't of Educ., 935 F.Supp 2d

508, 527 (E.D.N.Y. 2013) (dismissing plaintiff's Petition Clause claims because "claims of retaliation by public employees do not call for [a] divergence" between a Free Speech Clause claim and a Petition Clause claim). By making this distinction in claims, plaintiff seeks to avoid certainty that her speech was made as an employee, "pursuant to her official duties."

Here, plaintiff continues to deny that her speech was made pursuant to her "official duties" despite that plaintiff's January 10, 2017 e-mail to Eric Goldstein uses language such as "<u>we</u> were recently granted girls' cross country and girls' and boys' indoor and outdoor track, though <u>we</u> requested and were denied . . . " and "[t]he <u>principals</u> of the schools at the John Jay Campus meet weekly to manage <u>our</u> shared campus." See Exhibit F, 6:4-15 (emphasis added). Furthermore, the e-mail is signed, "Sincerely, Jill Bloomberg, <u>Principal</u>, Park Slope Collegiate." <u>Id</u>. at 7:11-13 (emphasis added). Even more importantly, plaintiff continues to argue this position notwithstanding the decision of this Court, which states "the evidence before the court demonstrates that plaintiff made her complaint to her supervisor and to the overseer of the PSAL program 'pursuant to her official duties' as PSC's principal, rather than as a citizen," citing to <u>Ross v. Breslin</u>, 693 F.3d 300, 305 (2d Cir. 2012) (stating that "the state has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general"). <u>See</u> Exhibit F at 17:9-17. Moreover, plaintiff admits in her supplemental affidavit, and the court recognized that "it is part of a principal's or other school employee's regular job duties to request sports teams of the PSAL." <u>See id</u>. at 17:18-21; <u>see also</u> Exhibit "B," ¶ 5.

- 3 -

### B. Plaintiff Cannot Establish The Elements of a First Amendment Retaliation Claim

Additionally, plaintiff attempts to distinguish Garcetti by drawing a connection between a fictitious "Givhan[2] carve out" and all cases relating to employees who were retaliated against after raising issues of racial discrimination about their job. Plaintiff cites to Lane v. Franks, 134 S.Ct. 2369 (2014) and Jackler v. Bryne, 658 F.3d 225 (2d Cir. 2011) to support this connection. See P. Opp. at 10, 12. Defendants find these cases puzzling as neither case involves racial discrimination.

First, Lane, involved a unique set of circumstances where the court noted that plaintiff's speech was spoken as a citizen on a matter of public concern because "[u]nlike speech in other contexts, testimony under oath has the formality and gravity necessary to remind the witness that his or her statements will be the basis for official governmental action, action that often affects the rights and liberties of others." 134 S.Ct. at 2380. Moreover, the content of Lane's testimony regarded corruption and not racial discrimination. Here, plaintiff did not testify under oath about corruption, rather she sent an e-mail in her professional capacity as the principal of PSC, containing content regarding extracurricular activities on PSC's campus−content which owes its existence to plaintiff's professional responsibilities. Contrary to plaintiff's assertion, at no time did Lane cite to the so-called "Givhan carve out," thus this argument should be disregarded.

Next, plaintiff cites to Jackler, a case which finds First Amendment protections based upon the "civilian analogue" extension of the "official duties" test under Garcetti. However, it is well settled that "the existence of civilian analogue is "merely a factor the court could consider as part of the inquiry into whether the public employee's speech was made pursuant to his ordinary

---

[2] Plaintiff argues that every employee who was retaliated against after raising racial discrimination concerns is protected by the so-called "Givhan carve out." See Pl. Opp at 10. Discussed *infra* at 5.

employment-related responsibilities." Montero v. City of Yonkers, 890 F.3d 386, 394 (2d Cir. 2018) (holding that "civilian analogue is not dispositive of whether a public employee spoke as a private citizen"); see also Perrotta v. City Sch. Dist. of Yonkers, No. 16 CV 9101 (VB), 2017 U.S. Dist. LEXIS 155145 at *9 (S.D.N.Y. Sept. 22, 2017) (stating that the "question [of civilian analogue] is not dispositive"). Moreover, even if civilian analogue were to be considered in the instant case, Jackler would not guide us, as the facts in Jackler are drastically different. In Jackler, the plaintiff was being asked "to retract his truthful statements and make statements that were false." Id. at 234. Here, as stated by the Court, and reiterated by defendants, "[p]laintiff's January 10 e-mail was a plea for resources" and sent "in the form of an internal e-mail to her direct supervisor and the DOE manager responsible for overseeing the PSAL program." See Exhibit F at 18:20-25. Plaintiff was never asked by DOE to retract any truthful statements, plaintiff merely disagreed with a DOE action and expressed dissatisfaction in complaint form to her supervisors.

Nevertheless, plaintiff's allegations are founded upon what plaintiff admits is an "assumption:" that Givhan stands for the proposition that it is not normally within an employee's duties to raise racial discrimination concerns. Even where a plaintiff's speech may have 'value to the public' . . . as a matter of law, Garcetti and its Second Circuit progeny establish that not all speech by public employees enjoys First Amendment protection. Micillo v. New York City Dep't of Educ., No 14 Civ. 00943 (LAK) (GWG), 2015 U.S. Dist. LEXIS 12321 at *20 (S.D.N.Y. Feb. 2, 2015) (citing to Matthews, 957 F. Supp. 2d at 465−66). Accordingly, Plaintiff's reliance on Givhan is misplaced, and should not be substituted for the "official duties" test under Garcetti.

### C. Plaintiff's Speech Does Not Fit Into Any Category of Protected Speech

Plaintiff additionally cites to a string of cases such as Dillon v. Suffolk County Department of Health Services, 917 F.Supp 2d 196 (E.D.N.Y.), Ramirez v. Hempstead Union Free Sch. Dist. Bd. Of Educ., 33 F. Supp. 3d 158 (E.D.N.Y. 2014), and Griffin v. City of New York,

880 F. Supp. 2d 384 (E.D.N.Y. 2012), as examples of where courts have found protected job related speech for particular plaintiffs. See P. Opp. at 16−18. However, each of these cases are readily distinguishable and are expressly distinguished in Micillo, a case largely akin to the circumstances of the instant case.

For example, in Micillo, plaintiff, an assistant principal and athletic director at a high school, reported time card fraud of the coaches to the principals. The court held that Micillo failed to state a First Amendment retaliation claim because he spoke "pursuant to his official job duties." Id. at *20−21. The Micillo court based its conclusion upon the case law cited here by plaintiff. See P. Opp. at 16−18. In Micillo, the court distinguished Dillon by contrasting the doctor's conduct of complaining about multiple issues with Micillo, and finding that it was different because Micillo "complained of a specific wrongdoing by specific individuals related to his official job responsibility." Micillo, 2015 U.S. Dist. LEXIS 12321 at *19. Likewise, plaintiff here, also complained of a specific wrongdoing (allotment of PSAL teams), by specific individuals (PSAL CEO), related to [her] official job responsibility (requesting teams as part of her official duties as principal of PSE).

The Micillo court further distinguished Ramirez, finding that the changing of grades and related policies in Ramirez, was not part-and-parcel of plaintiff's job duties, whereas collecting payroll information was part-and-parcel of Micillo's job duties. Id. at *20. Similarly, here plaintiff admits that requesting PSAL teams was part-of her job duties. See Exhibit F at 18:20-20:10, 44:12-45:5.

Moreover, Micillo distinguished another case cited by plaintiff, Griffin, wherein the court found First Amendment protections because the "alleged misconduct did not directly interfere with plaintiffs ability to perform his assigned duties as a police officer." Micillo, 2015 U.S. Dist. LEXIS 12321 at *19. The Micillo court distinguished Griffin's conduct by stating that

the coaches submitting their timecards directly to Micillo was part of his duties. Id. Further, Micillo cites to White v. City of New York, No. 13 Civ. 7156 (ER), 2014 U.S. Dist. LEXIS 123255 (S.D.N.Y. Sep. 3, 2014), to show that just because speech is not a core function of an employee's job, "it can still be 'pursuant to official duties,' as long as the speech is in furtherance of those duties expressed." Id. at *14. Likewise, plaintiff's speech here is distinguishable from Griffin because her speech was made in furtherance of her official job duties. The e-mail written by plaintiff was sent to a receiver who is not readily available to receive complaints from the public. The subject matter pertained solely to the sports leagues within the school. Plaintiff's ability to obtain these personal e-mail addresses and specific knowledge of the John Jay Campus PSAL sports teams was gained exclusively in accordance with her "official job duties" as the principal of PSC. Therefore, since the instant case is largely analogous to all aspects of Micillo, plaintiff's First Amendment retaliation claims should similarly be dismissed.

## POINT II

### PLAINTIFF HAS NOT ESTABLISHED THE NEXUS REQUIRED FOR A TITLE VI CLAIM

In her opposition, plaintiff mischaracterizes defendants' reliance upon cases such as Sulehria v. New York, 2014 U.S. Dist. LEXIS (S.D.N.Y. Sep. 19, 2014) and Moore v. City of New York, 2017 U.S. Dist. LEXIS 379 (S.D.N.Y. Jan. 3, 2017) by arguing that these cases "add a requirement that plaintiff must plead that federal funds are to be used for employment." See P. Opp. at 5. Rather, Defendant's reliance on this line of cases is to reiterate that plaintiff has failed to show any plausible "nexus . . . between the federally funded program and the claimed . . . discrimination." Moore, 2017 U.S. Dist. LEXIS at 43−44. Instead plaintiff argues that since the federal funding in Moore is to provide employment, it is not related to the instant matter and should summarily be dismissed. See P. Opp. at 5. However, "[where] a complaint contain[s] no

express allegation as to the primary purpose of such funds . . . there was no pleaded admission as to this element." Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport, 647 F.2d 256, 276−77 (2d Cir. 1981). Plaintiff has failed to adequately prove that there is a "logical nexus between the use of federal funds and the practice toward which action is directed." Id. at 276. Merely stating that "DOE receives money for student programs," does not create a logical nexus between the primary objective of the federal funding and the alleged discrimination. See P. Opp. at 5.

Plaintiff further argues that the pleadings should be evaluated under the standards in Palmer v. Penfield Central School District, 918 F.Supp.2d. 192 (W.D.N.Y. 2013). However, plaintiff's view of Palmer is misguided and completely glosses over the federal funding requirement necessary to properly plead a Title VI claim.  Indeed, in Palmer, the case upon which plaintiff bases her entire opposition on, the Western District of New York recognized that the receipt of federal funding is required to establish a Title VI claim. See id at 199.

Here, contrary to plaintiff's assertions in her opposition papers, it is not, "uncontested that the DOE received federal money for student programs from the Federal Department of Education."  No such facts were pled in the Complaint, rather, plaintiff simply stated that DOE receives federal funds. See Exhibit A at ¶¶ 23, 125.  This bare bones allegation is insufficient to satisfy the pleading requirements for a Title VI claim − that plaintiff "plausibly allege" that the defendant received federal funding, identify the primary objective of the federal funding, and identify that the alleged discrimination or retaliation was related to the primary objective of the program or subject benefiting from federal funding. See Moore, 2017 U.S. Dist. LEXIS at 43-44; see also Sulehria v. New York, 2014 U.S. Dist. LEXIS  at *5 (S.D.N.Y. Sep. 19, 2014) (citing Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport, 647 F.2d 256, 276 (2d Cir. 1981)); Acheampong v. N. Y. City Health & Hosps. Corp., 2015 U.S. Dist. LEXIS 37933

at *14 (S.D.N.Y. Mar. 25, 2015) (quoting Commodari v. Long Isl. Univ., 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000)).

Indeed, the Southern District has recently recognized that the federal funding requirement is essential to the viability of a Title VI retaliation claim. See Verdi v. City of N.Y., et al., 306 F. Supp. 3d 532, 545-546 (S.D.N.Y. Jan. 22, 2018). In Verdi, as is the case here, the Court was presented with a motion to dismiss a plaintiff's Title VI retaliation claim. The Court reasoned that, "a retaliation claim based on harms to a claimant's employment where the complained-of discrimination was against the intended beneficiaries of the relevant federal funding would vindicate rather than undermine the intent and spirit of [Title VI]." See id at 545. The Court continued, "this Court finds that the "primary objective of providing employment" requirement does not apply when analyzing an employment-based retaliation claim where the victims of the discrimination about which the claimant complained (and for which complaining the claimant suffered retaliation) are the intended beneficiaries of the federal funding." See id at 545-546. Further, the Court determined that conclusory language such as, "During all relevant times, the DOE was and is a recipient of federal funding for the purposes and under the guise of Title VI," "The New York public school system clearly fits into this [federal assistance] category," and "The New York City DOE receives Federal Financial Assistance," was insufficient to satisfy the Title VI pleading requirement as these bald statements do not, "describe the federal funding the DOE received, let alone link that funding to the students whose discrimination was the subject of Plaintiff's complaints." See id at 546.

This is precisely the claim, and language, that plaintiff is presenting in this action. Plaintiff alleges that the allocation of PSAL sports teams was discriminatory to African-American and Hispanic students. See Exhibit A at ¶¶ 55-56, 59. Further, plaintiff fails to plead with specificity the existence of any alleged federal funding that was provided to the PSAL, and fails to

plead with specificity that the students of PSC were the actual, intended beneficiaries of that funding.  See id.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in defendants' September 8, 2017 memorandum of law in support of their motion to dismiss, and defendants' July 31, 2018 memorandum of law in opposition to plaintiff's cross-motion, defendants respectfully request that their motion to dismiss plaintiff's first, second and third causes of action be granted, that these causes of action be dismissed with prejudice, that judgment be entered for defendants, and that defendants be granted costs, fees, and expenses together with such other and further relief as this Court deems just and proper.

Dated:     New York, New York
           September 6, 2018

ZACHARY W. CARTER
Corporation Counsel of the
   City of New York
Attorney for Defendants
100 Church Street, Room 2-123
New York, New York 10007
(212) 356-1106
janci@law.nyc.gov

By:     /s/ _____
        Joseph Anci
        Assistant Corporation Counsel