UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JILL BLOOMBERG,

                                                                        17-cv-03136 (PGG)

          Plaintiff,

v.

THE NEW YORK CITY DEPARTMENT OF
EDUCATION and CARMEN FARINA,

          Defendants.
-------------------------------------------------------------------x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO FILE HER AMENDED COMPLAINT

Mirer, Mazzocchi & Julien PLLC
Attorneys for Plaintiff
1 Whitehall Street, 16th Floor
New York, New York 10004
212-231-2235

# TABLE OF CONTENTS

                                                                                                **Page**

Table of Authorities..................................................................................................ii

Preliminary Statement............................................................................................ 1

       Point I         Plaintiff's Proposed Amended Complaint States a Plausible Claim that Plaintiff Suffered a Violation of her Rights Under Title VI. ........................................................................................... 1

       Point II        Plaintiff's Proposed Amendments Regarding Her Due Process Claim Render the Claim Viable as they Show the Lack of Support of this Claim ........................................................................................... 4

                             A. Plaintiff's Due Process Claim is Not Moot .............................4

                             B. Plaintiff has a Viable Due Process Claim.............................6

Conclusion............................................................................................................ 8

# TABLE OF AUTHORITIES

**Cases**

Hickey v Myers
852 F. Supp. 2d 257 (N.D.N.Y 2012) ---------------------------------------------------------2

Alexander v Sandoval
532 U.S. 275, (2001) ---------------------------------------------------------------------2

Peters v Jenney
326 F.3d 307 (4th Cir 2003) --------------------------------------------------------------2

Verdi v City of New York
306 F. Supp. 3d 532 (S.D.N.Y 2018) --------------------------------------------------2,3

Association Against Discrimination in Employment v City of Bridgport
647 F.2d 256 (2d Cir 1981) --------------------------------------------------------------2

City College v Bell
465 U.S. 555 (1984) ---------------------------------------------------------------------3

F.O. v New York City Dep't of Education
899 F. Supp.2d 251 (S.D.N.Y 2012) ------------------------------------------------4,5

# PRELIMINARY STATEMENT

In Defendants' Opposition to Plaintiff's Motion to Amend her Complaint, Defendants set forth some of the procedural history of this case. In accordance with the Court's Order of September 24, 2019, and stipulations of counsel, Plaintiff was given until November 6, 2019 to file her motion to amend along with a proposed Second Amended Complaint. (SAC) Both were filed on November 6, 2019. (ECF Dkt Nos. 93-94) On December 6, 2019 Defendants filed a Memorandum of Law to in Opposition to Plaintiff's Motion to Amend. (ECF Dkt No. 99)

Defendants Opposition states that Plaintiff's attempts to address the pleading deficiencies stated as the basis for the dismissal of Plaintiff's Title VI, and Fourteenth Amendment Due Process claims are futile and urges the Court to deny the motion. Plaintiff disagrees and urges this Court to grant her motion.

Although Defendants address the issue of Plaintiff's Fourteenth Amendment Due Process claim first, Plaintiff will address the arguments regarding Title VI first.

## I. PLAINTIFF'S PROPOSED AMENDED COMPLAINT STATES A PLAUSIBLE CLAIM THAT PLAINTIFF SUFFERED A VIOLATION OF HER RIGHTS UNDER TITLE VI.

In Plaintiff's proposed amended complaint, she added paragraphs 23-25 to state that Park Slope Collegiate (PSC) where she is the Principal receives federal financial assistance on a schoolwide basis through Title I of the Elementary and Secondary Education Act. These funds are provided through the New York City Department of Education. By these allegations Plaintiff showed the students at PSC were beneficiaries of federal funds given to the school system.

Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d, states:

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

In the present case, Plaintiff alleged that she complained that the students at PSC were subject to race discrimination through the separate and unequal allocation of sports teams to PSC and thus were being discriminatorily denied these benefits in violation of Title VI. She alleged that Title VI applied because the New York City Public Schools is the recipient of federal funds. Her Title VI complaint alleges she suffered retaliation for raising this issue of racial discrimination. Plaintiff did not bring her case as an employment discrimination case where 42 U.S.C. §2000d-3 requires the federal financial assistance given to the entity to be for the purposes of employment.

As noted in *Hickey v Myers,* 852 F. Supp. 2d 257 (N.D.N.Y 2012): "It is well established that "private individuals may sue to enforce . . . Title VI and obtain both injunctive relief and damages." *Alexander v Sandoval,* 532 U.S. 275, (2001) A plaintiff may bring a claim under Title VI for retaliation for opposing practices that one reasonably believes constitute intentional discrimination under Title VI, *Peters v Jenney* 326 F.3d 307 (4th Cir 2003). In line with this, and as noted by the Court in *Verdi v City of New York,* 306 F. Supp. 3d 532 (S.D.N.Y 2018), (which relied on *Hickey)* defendant's argument that the plaintiff must prove that a "primary objective" of the school's federal funding was to provide employment was rejected. The Court in *Verdi* stated: "Plaintiff does not allege employment discrimination but instead alleges that he was retaliated against because he spoke out against racial discrimination in the school's admission policy. This argument does not implicate *§2000d-3.*"

This Court's September 24th, ruling found the analysis in *Verdi* to be persuasive. Nonetheless, Defendants herein continue to argue that Plaintiff must "plausibly allege" that the retaliation against her was related to the "primary objective" of the program or subject benefiting from federal funding citing cases which arise under section 42 U.S.C. §2000d-3. see e.g. *Association Against Discrimination in Employment v City of Bridgport* 647 F.2d 256 (2d Cir 1981).

Defendants also argue that "plaintiff must show a logical nexus between federal funds received by the DOE and the sports programs allocated to PSC." (Defendant's Memo p. 8). By this argument, Defendants have reverted to requiring Plaintiff to show "program specific" federal funds to PSAL were used for the alleged discrimination when this narrow reading of Title VI is prohibited by the Civil Rights Restoration Act of 1987. This Act overturned Grove *City College v Bell*, 465 U.S. 555 (1984), thereby eliminating "program specific" federal funding for purposes of a claim under Title VI. The new definition specifies that entire entities receiving federal funds--whether governmental entities, school systems, or universities--must comply with Title VI, rather than just the particular program or activity that actually receives the funds. See 42 U.S.C. 2000d-4a[1]

This Court's September 24th, opinion relied on *Verdi v New York City, supra*, wherein the Court stated:

> At the heart of a Title VI retaliation claim could be the very individuals whom the statutory scheme was intended to protect, so it is important to distinguish between garden variety retaliation-for-complaining-about-employment-discrimination claims, on the one hand, and retaliation claims in which the complainant's employment is affected based on complaints regarding nonemployment discrimination against others, on the other.

In *Verdi, supra* the Court allowed the Plaintiff to amend his complaint which had only stated that the New York City Department of Education was the recipient of federal funds, to allege facts from which the Court can infer that the discrimination that he opposed was against individuals who were intended beneficiaries of that funding. In the present case the issue is racial discrimination against the students at Park Slope Collegiate in the way benefits of sports teams were allocated by the New York City Department of Education, a recipient of federal financial

---

1   This section of the law defines program or activity to mean all of the operations of various entities of government including school districts any parts of which is extended federal financial assistance. Plaintiff wonders whether the Court in *Verdi* was aware of the Civil Rights Restoration Act as it does make it clear that finding federal financial assistance to the New York City Department of Education means that all parts of the school system receives federal financial assistance.

3

assistance. It was this racial discrimination which Plaintiff protested. She did so on behalf of students at Park Slope Academy. These students are the beneficiaries of Title I funding who have a right not to be discriminated against by any part of the Department of Education.

Defendants do not dispute that the New York City Board of Education receives federal financial assistance. Plaintiff's proposed amended complaint shows in paragraphs 23 to 25 that PSC receives Title I funds for "schoolwide" programs. These proposed amendments, Plaintiff submits, address the concerns raised by the Court in the September 24th, Opinion. The proposed amendments which allow Plaintiff to proceed under Title VI are, thus, not futile.

## II. PLAINTIFF' PROPOSED AMENDMENTS REGARDING HER DUE PROCESS CLAIM RENDER THE CLAIM VIABLE AS THEY SHOW THE LACK OF SUPPORT THIS CLAIM.

### A. Plaintiff's Due Process Claim is Not Moot

Defendants cite to *F.O. v New York City Dep't of Education* 899 F. Supp.2d 251 (S.D.N.Y 2012), for the proposition that "a case becomes moot when the interim relief or events have eradicated the **effects** of the defendant's act or omission and there is no reasonable expectation that the alleged violation will recur." [2]

Defendants assert that because the charges against Plaintiff based on that regulation were not substantiated, any claim arising out of the impact of Chancellor's Regulation D-130 on her is now moot. The finding that the charges against Plaintiff under D-130 were not substantiated however does not eradicate the **effects** of the Defendants' actions or omissions, to wit: the impact of the

---

[2] This case arose under the Individuals with Disabilities in Education Act and involved a dispute over whether the plaintiff the student would be provided with the services of a paid health paraprofessional for the pendency of this action during the 2010-11 school year, which had ended by the time the case was filed in Court and where during the pendency of the administrative appeal the Department of Education had provided those services. Thus, at the time the case came to Court the plaintiff's request for interim relief was moot and the case was dismissed.

4

investigation and its aftermath on Plaintiff. The investigation based on Regulation D-130 had significant effects on Plaintiff. She was stigmatized and continued to be chilled in the pursuit of her work, based on not knowing whether she would continually be charged with a D-130 violation for expressing her views. She was subjected to extreme stress throughout the investigation. The emotional distress she suffered watching students be interrogated and being powerless to stop it, caused her to feel powerless and depressed. She also alleges the OSI investigation went beyond D-130. That is, the OSI investigators sought to find something to charge her with. She eventually was found to have committed several clerical violations of other regulations which resulted in disciplinary letters being placed in her file and a report to the Conflict of Interest Board which eventually cleared her. All of these matters were the result of an investigation into an alleged violation of Chancellor's regulation D-130 which, Plaintiff claims, should never have happened.

Another effect of the investigation was to empower the persons who made the complaint of so-called "communist organizing" to initiate one complaint after another against Plaintiff or other teachers who were also investigated for the same issue as Plaintiff. These complaints are then investigated by the DOE or subject to a Union grievance against her. The result of these actions have caused Plaintiff so much stress that she has developed health concerns which are forcing her to retire early.[3]

This case is not like the one where a person seeks a habeas or a benefit which is granted mooting the relief as in *F.O. v New York City Dep't of Education*. In this case Plaintiff sought to prevent the investigation but her current complaint and the proposed amended complaint seeks damages for the impact of the investigation on her. The effects of the violation of Plaintiff's Due

---

3  Plaintiff informed counsel after the filing of the proposed second amended complaint that she cannot return from the sabbatical she took in the fall of 2019. She has also informed the DOE of this. Plaintiff will likely be seeking permission to amend the complaint to allege constructive discharge as another element of Plaintiff's damages.

5

Process rights under Regulation D-130 are ongoing even if she was found not to have violated it. The DOE has not changed its policy on how it is interpreting D-130 and Plaintiff submits, this Court's erroneous finding that a clearly inconsistently applied policy is clear and unambiguous means that the DOE is free to use it again and can use D-130 to investigate conduct of those thought to be in a political organization/party not to the liking of the administration, even where the organization Plaintiff was erroneously alleged to be part of does not run candidates for office.

Defendants are incorrect that the allegations in the complaint which reiterate the points above are tied to there being an active, ongoing investigation. They are tied to why the investigation was started and the policy the DOE alleges supported that investigation as well as the effects of the investigation on her.

### B. Plaintiff Has A Viable Due Process Claim

When this Court found in the September 24th Opinion that Plaintiff failed to plead facts demonstrating that OSI ignored conduct comparable to that which she engaged, she failed in her due process claim to show the regulation lacked explicit standards thus permitting discriminatory enforcement, (Opinion p. 29) Plaintiff determined to put into the amended complaint the very facts which not only showed arbitrary and discriminatory enforcement, but also that based on a document found after the briefs on the Motions to Dismiss were fully submitted, showed that the agency (DOE) had interpreted the term "political organization" in a manner opposite to that which the DOE urged on the Court in this case, leading to a comparable and discriminatory application of the rule. With this document (and other examples) it simply cannot be that the term "political organization" in Regulation D-130 is "unambiguous" or that it has "explicit standards".

In the proposed amended complaint Plaintiff has added examples of discriminatory

6

enforcement of Chancellor's Regulation D-130. For example, at paragraph 93 [4] Plaintiff refers the Court to the fact that the DOE has endorsed many political activities against President Trump, including voter registration drives, marches regarding climate change and many others. Plaintiff cited a URL to an article on the DOE encouraging students to protest President Trump's ban on refugees. While these actions might not have been explicitly taken by the Democratic Party, Plaintiff also cited an instance where members of a school community made students aware of opportunities to work on the DeBlasio Campaign. (Proposed SAC paragraphs 123-124 ).

Paragraph 101 of the Proposed SAC on page 24, shows that the OSI investigators in this case were investigating whether a bake sale for a May Day march occurred at the school. May Day is an International Workers Holiday which is not the province of any political party. The idea that a bake sale for a May Day march could be a violation of Chancellor's regulation D-130 is a further example of how the regulation lacks explicit standards so as to be void for vagueness.

Most importantly, at the same time as the DOE argued to this Court that it must give deference to its own interpretation of the regulation, and argued for a broad reading of the term "political organization" in D-130 so as to include any organization with a political point of view (whether it has the word Party in its name or runs candidates), the DOE knew that it previously argued for an interpretation of D-130 that was the opposite of what was argued in this case. That is, in an instance where a complaint had been filed about a violation of D-130 where Mayor De Blasio used a school building after hours for a rally for certain workers, to talk *inter alia* about his support for them, the DOE including Robin Greenfield of the counsel's office who oversees OSI, knew that the DOE's investigators adopted a narrow definition of "political organization". The

---

4  There is a problem with the numbering of the paragraphs in the proposed complaint. After paragraph 93 in the complaint on page 22, the numbering begins again at paragraph number 90. After the Court rules on the motion to amend Plaintiff will ensure that this problem will be corrected.

opinion finding no violation of D-130 imported the definition of the term "political organization" from the Public Officers Law into D-130 (where it is not explicitly defined) to restrict the definition of "political organization" to ones which nominate and run candidates. See SAC paragraphs 113 through 121. The Court's claim that the name Progressive Labor Party suggests it is engaged in partisan politics, does not mean that it does. D-130 is a regulation aimed at not having school systems appear to be supporting specific candidates in an election, it is not a regulation to police activities of persons in organizations which have a political point of view, may have the term "party" in their name, but which do not run candidates.

If the DOE wants to regulate the activities of such non-partisan affirmations, it can issue other regulations to address that matter consistent with First Amendment provisions. The DOE just cannot use D-130 to do so.

The Defendants rely on this Court's September 24th order for the finding that regulation D-130 is clear and unambiguous to show Plaintiff no longer can claim otherwise. The fact that the term "political organization" in the Public Officers Law is what the DOE used for the definition of the same term in D-130 shows that the Court's ruling on this point is not correct. The Court under Rule 54 (b) may change its ruling in light of this evidence.

From these examples it is clear that Plaintiff has alleged instances where investigative arms of the DOE treated different and comparable conduct differently than conduct in which Plaintiff allegedly engaged such that Plaintiff's Due Process claims should be allowed to proceed.

CONCLUSION

For the foregoing reasons, Plaintiff requests the Court allow her to proceed to file her Second Amended Complaint.

New York, New York
Dated: January 10, 2020

Respectfully submitted,

_____
Jeanne Mirer
MIRER, MAZZOCCHI & JULIEN PLLC
Attorney for Plaintiffs
1 Whitehall Street, 16th Floor
New York, New York 10004
Tel: (212) 231-2235
Fax: (646) 786-3861