UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JILL BLOOMBERG,<br><br>               Plaintiff,<br><br>      - against -<br><br>THE NEW YORK CITY DEPARTMENT<br>OF EDUCATION and CARMEN FARINA,<br><br>             Defendants. | **ORDER**<br><br>17 Civ. 3136 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Jill Bloomberg – a high school principal at Park Slope Collegiate –

brings this action against the New York City Department of Education (the "DOE") and its

chancellor (collectively, "Defendants"). The Amended Complaint claims that a DOE

investigation of Plaintiff's conduct – purportedly premised on her violation of a DOE regulation

governing DOE employees' activity on behalf of political organizations – was retaliatory and in

violation of her rights. (Am. Cmplt. (Dkt. No. 39) ¶¶ 1, 4-6) The Amended Complaint further

pleads that the DOE regulation on which the investigation was premised does not apply to her

alleged conduct and, in any event, is unconstitutionally vague. (Id. ¶¶ 88-89, 118-120)[1]

The Amended Complaint pleads claims for a violation of Due Process, and for

retaliation in violation of the First Amendment, Title VI of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000d-1 et seq., and the New York City Human Rights Law (the "NYCHRL"), N.Y.C.

Admin. Code § 8-101 et seq. (Id. ¶¶ 4-5, 111-51)

---

[1] The factual background of this case is discussed in greater detail in this Court's September 24, 2019 decision granting Defendants' motion to dismiss the Amended Complaint (Dkt. No. 89), and in this Court's September 23, 2021 order denying Plaintiff's motion for leave to file a second amended complaint (Dkt. No. 108).

Defendants moved to dismiss the Amended Complaint's First Amendment, Title VI, and Due Process claims.  (Mot. (Dkt. No. 77); Am. Cmplt. (Dkt. No. 39) ¶¶ 111-51)   On September 24, 2019, this Court granted Defendants' motion in its entirety (the "September 24, 2019 Opinion").  (Dkt. No. 89)

On November 6, 2019, Plaintiff moved for leave to file a Second Amended Complaint ("SAC").  (Dkt. No. 93)  The proposed SAC alleges a Due Process claim and retaliation claims under Title VI and the NYCHRL.  (See generally Proposed SAC (Dkt. No. 94-1))  On September 23, 2021, this Court denied Plaintiff's motion to amend her Due Process and Title VI retaliation claims and declined to exercise supplemental jurisdiction over her NYCHRL claim (the "September 23, 2021 Order"). (Dkt. No. 108)

Plaintiff has now moved pursuant to Local Rule 6.3 for reconsideration of the September 23, 2021 Order.  Plaintiff seeks reconsideration only as to that portion of the September 23, 2021 Order that addresses her Title VI retaliation claim.  (Reconsideration Mot. (Dkt. No. 111) at 1)[2]  In that claim, Plaintiff alleges that she suffered retaliation at work after she complained that DOE was offering "racially separated . . . [and] unequal opportunities in [its] sports programs [for students at the schools sharing the John Jay Campus in Brooklyn]."[3] (Proposed SAC (Dkt. No. 94-1) ¶ 58; see also id. ¶¶ 64-81 ("Within six weeks of plaintiff's Title VI Complaint, [Defendants] . . . informed plaintiff that she was under investigation . . . .

---

[2]  Citations to page numbers refer to the pagination generated by this District's Electronic Case Files ("ECF") system.
[3] Park Slope Collegiate is "one of four schools housed on the John Jay Campus in Brooklyn." (Proposed SAC (Dkt. No. 94-1) ¶ 3)  The Public School Athletic League allocates "sports teams and resources" to New York City public schools, including the schools housed on the John Jay Campus.  (See id. ¶ 27)  Plaintiff alleges that she complained to DOE that the Public School Athletic League has a "policy of allowing segregated and unequal allocation of sports teams and resources" with respect to the schools located at the John Jay Campus.  (Id.)

[P]laintiff believed, and still believes, that the [] investigation against her was retaliation for her complaint about the segregated sports programs.")

For the reasons stated below, Plaintiff's motion for reconsideration will be granted, but leave to amend the Title VI retaliation claim will be denied.

## BACKGROUND

**I.    THIS COURT'S DISMISSAL OF PLAINTIFF'S TITLE VI RETALIATION CLAIM AND PLAINTIFF'S MOTION TO AMEND**

In the September 24, 2019 decision dismissing, inter alia, Plaintiff's Title VI retaliation claim, this Court noted that 42 U.S.C. § 2000d-3 requires plaintiffs claiming employment discrimination under Title VI to plead "'a logical nexus between the use of federal funds and the practice toward which [the] action is directed.'"  (September 24, 2019 Opinion (Dkt. No. 89) at 24 (quoting Johnson v. Cty. of Nassau, 411 F. Supp. 2d 171, 175 (E.D.N.Y. 2006)))  This Court went on to dismiss the Amended Complaint's Title VI retaliation claim because Plaintiff did not "plead a nexus between the use of federal funds and the alleged discriminatory practice about which [she] allegedly complained, and for which complains she allegedly suffered retaliation:  discrimination in the [Public School Athletic League]'s sports programs."  (Id. at 25)

Relying on Verdi v. City of New York, 306 F. Supp. 3d 532 (S.D.N.Y. 2018), this Court found the Amended Complaint's factual allegations insufficient to plead the necessary nexus:

> The Amended Complaint alleges only that "[a]t all times relevant the DOE was and is a recipient of federal funding for purposes of Title VI," and "[t]he New York City DOE receives Federal Financial Assistance."  (Am. Cmplt. (Dkt. No. 37) ¶¶ 23, 125)  These allegations do not sufficiently plead the requisite "logical nexus."  See Verdi, 306 F. Supp. 3d at 546 (dismissing Verdi's Title VI claim because his "allegations regarding federal funding are bare and conclusory and do not describe the federal funding the DOE

received, let alone link that funding to the students whose discrimination was the subject of Plaintiff's complaints").

(Id.)

In response to this Court's dismissal order, Plaintiff sought permission to file a second amended complaint that adds the following allegations concerning DOE's receipt of federal funds:

> 23. . . . the DOE receives federal funds pursuant to Title I of the Elementary and Secondary Education Act which provides funds to schools which have a high percentage of families from impoverished backgrounds.
>
> 24. Schools qualify for Title I if a certain percentage of the students qualify for free or reduced lunch programs.
>
> 25. Because over 60% of the students at [Park Slope Collegiate, Plaintiff's school,] qualified for free or reduced lunch programs, [Park Slope Collegiate] receives Title I funds for school wide programs.

(Proposed SAC (Dkt. No. 94-1) ¶¶ 23-25; see also id. ¶¶ 154-56)

## II.   THE SEPTEMBER 23, 2021 ORDER DENYING PLAINTIFF LEAVE TO AMEND HER TITLE VI RETALIATION CLAIM

In her motion for leave to amend, Plaintiff argued that she was not required to "show a logical nexus between federal funds received by the DOE and the sports programs allocated to [Park Slope Collegiate]," because any such requirement would be "program specific" and thus "prohibited by the Civil Rights Restoration Act of 1987." (Pltf. Reply Br. (Dkt. No. 104) at 6)  Plaintiff did not cite to any case law interpreting or applying the Civil Rights Restoration Act.  (See id. at 4-7)

In the September 23, 2021 order denying Plaintiff leave to amend her Title VI retaliation claim, this Court acknowledged Plaintiff's argument that a "'program specific'" pleading requirement is "'prohibited by the Civil Rights Restoration Act of 1987.'" (September 23, 2021 Order (Dkt. No. 108) at 17 (quoting Pltf. Reply Br. (Dkt. No. 104) at 6)) But the Court nonetheless reaffirmed its holding that a plaintiff asserting a Title VI retaliation claim must

"plead facts showing a nexus between the federal funding and the program at issue." (Id. at 18-19)  This Court went on to deny Plaintiff's motion to amend, finding that – despite Plaintiff's new allegations – "[t]he proposed SAC does not plead facts showing a nexus between the federal funding allotted to DOE and [the Public School Athletic League]'s sports programs." (Id. at 19)  In so holding, this Court relied on Verdi's holding that a Title VI retaliation plaintiff "must show a link between the federal funds allotted to DOE and 'the students whose discrimination was the subject of Plaintiff's complaint.'  Verdi v. City of New York, 306 F. Supp. 3d 532, 546 (S.D.N.Y. 2018)." (Id. at 17-18)

## III.   **PLAINTIFF'S MOTION FOR RECONSIDERATION**

On October 8, 2021, Plaintiff moved "pursuant to Local Rule 6.3 for an order reconsidering the [September 23, 2021 order denying Plaintiff leave to amend her Title VI retaliation claim]." (Reconsideration Mot. (Dkt. No. 111) at 1)

In her reconsideration motion, Bloomberg argues that this Court overlooked "[t]he clear language of the Civil Rights Restoration Act . . . prohibit[ting] the Court from requiring a plaintiff to show any kind of connection between the federal assistance a school system receives and a particular program or activity alleged to be discriminatory." (Id. at 8)  According to Plaintiff, this Court "committed clear error [in] denying Plaintiff's motion to amend her claim under Title VI" when it found that Bloomberg must "'plead facts showing a nexus between the federal funding and the program at issue.'" (Id. (quoting September 23, 2021 Order (Dkt. No. 108) at 13))

Defendants contend that the motion for reconsideration should be denied, because Plaintiff has not "demonstrate[d] that the Order [denying leave to amend the Title VI retaliation claim] was issued in clear error." (Def. Opp. (Dkt. No. 115) at 5)  According to Defendants,

Plaintiff's reconsideration motion merely repeats arguments previously rejected, and this Court

did not overlook the Civil Rights Restoration Act (the "CRRA") in its September 23, 2021 order

denying leave to amend.  (Id. at 5-6)  In supplemental briefing ordered by this Court, Defendants

argue that the CRRA "did not alter the pleading standard applied in cases of this Circuit in

connection with employment-based retaliation claims brought pursuant to Title VI." (Def. Supp.

Br. (Dkt. No. 119) at 3).  Defendant argues that Verdi was correctly decided and that –

notwithstanding the CRRA's broad definition of "program or activity" – Bloomberg's proposed

SAC remains deficient because it is "devoid of any allegation that participants in [Public School

Athletic League] teams (i.e., the victims of the discrimination about which plaintiff complained)

were the intended beneficiaries of the Title I funds received by DOE." (Id. at 4-5)

**DISCUSSION**

**I.      LEGAL STANDARDS**

    **A.      Motions for Reconsideration**

        "Motions for reconsideration are governed principally by Federal Rule of Civil

Procedure 59(e) and Local Civil Rule 6.3, which are meant to ensure the finality of decisions and

to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost

motion with additional matters." Walsh v. Townsquare Media, Inc., 565 F. Supp. 3d 400, 402

(S.D.N.Y. 2021) (quotation marks and citations omitted).  "Reconsideration of a previous order

by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and

conservation of scarce judicial resources.'" In re Beacon Assocs. Litig., 818 F. Supp. 2d 697,

701 (S.D.N.Y. 2011) (quoting In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614

(S.D.N.Y. 2000)).  "The standard for granting such a motion is strict, and reconsideration will

generally be denied unless the moving party can point to controlling decisions or data that the

court overlooked – matters, in other words, that might reasonably be expected to alter the

6

conclusion reached by the court." <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 256-57 (2d Cir. 1995). "The decision to grant or deny a motion for reconsideration is 'committed to the sound discretion of the district court.'" <u>Sigmon v. Goldman Sachs Mortg. Co.</u>, 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) (quoting <u>Wilder v. News Corp.</u>, 2016 WL 5231819, at *3 (S.D.N.Y. Sept. 21, 2016)).

### B.   <u>Title VI Retaliation</u>

To plead a Title VI retaliation claim, a plaintiff must "plausibly allege: '(1) participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protect[ed] activity and defendants' adverse action.'" <u>Diaz v. City Univ. of New York</u>, 2016 WL 958684, at *2 (S.D.N.Y. Mar. 8, 2016) (quoting <u>Williams v. CUNY</u>, 2014 WL 4207112, at *8 (E.D.N.Y. 2014)).

Title VI provides that "[n]othing contained in [it] shall be construed to authorize action under [Title VI] . . . with respect to any employment practice of any employer . . . except where a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3. As discussed in this Court's earlier decision in this action, "[i]n the Title VI employment discrimination context, courts have construed Section 2000d-3 as imposing 'a threshold requirement . . . that the employer be the recipient of federal funds aimed primarily at providing employment.'" (September 24, 2019 Opinion (Dkt. No. 89) at 24 (quoting <u>Ass'n Against Discrimination in Emp.</u>, 647 F.2d at 276 and citing <u>Sulehria v. New York</u>, No. 13-CV-6990 AJN, 2014 WL 4716084, at *5 (S.D.N.Y. Sept. 19, 2014) ("To state a claim under Title VI, a plaintiff must plausibly allege . . . that the defendant was an entity receiving federal funding . . . [and] that the federal funds have been made available primarily for providing employment.")))

C.     **The Civil Rights Restoration Act of 1987**

The Civil Rights Restoration Act of 1987 (the CRRA") amends various civil

rights laws to broaden the definition of "program or activity" as follows:

> [T]he term "program or activity" and the term "program" mean all of the
> operations of – (1)(A) a department, agency, special purpose district, or other
> instrumentality of a State or of a local government; or (B) the entity of such State
> or local government that distributes such assistance and each such department or
> agency (and each other State or local government entity) to which the assistance
> is extended, in the case of assistance to a State or local government; (2)(A) a
> college, university, or other postsecondary institution, or a public system of higher
> education; or (B) a local educational agency (as defined in section 198(a)(10) of
> the Elementary and Secondary Education Act of 1965), system of vocational
> education, or other school system. . . .

Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, § 6, 102 Stat. 28 (Mar. 22, 1988).

Courts have recognized that the CRRA was enacted to overturn the Supreme

Court's narrow interpretation of "program or activity," which had required plaintiffs to plead

program-specific funding:

> In Grove City College v. Bell, 465 U.S. 555, 571-75 (1984) the Supreme Court
> considered the meaning of Title IX's phrase "education program or activity" and
> defined it narrowly, holding that by referring to particular activities or programs,
> Congress intended that Title IX apply only to the particular program receiving
> financial assistance. Thus, in Grove City, the Court found that the receipt by
> students of federal grants did not trigger institution-wide Title IX coverage, but
> only coverage of the school's financial aid program. Id. at 573-74.
>
> In response to the Court's interpretation of Title IX, as well as out of concern that
> the Grove City definition of "program or activity" would be applied to similar
> language contained in . . . Title VI of the Civil Rights Act of 1964, Congress
> passed the Civil Rights Restoration Act of 1987, . . . which amended each of the
> affected statutes, including Title IX, by adding a section broadly redefining the
> term "program or activity."
>
> Following the 1988 Amendment, courts have consistently interpreted Title IX to
> mean that if one arm of a university or state agency receives federal funds, the
> entire entity is subject to Title IX's proscription against sex discrimination.

O'Connor v. Davis, 126 F.3d 112, 117 (2d Cir. 1997); see also Franklin v. Gwinnett Cnty. Pub.

Sch., 503 U.S. 60, 73 (1992) ("Congress [] enacted the Civil Rights Restoration Act of 1987. . .

[w]ithout in any way altering the existing rights of action . . . under Title IX, Title VI, § 504 of

the Rehabilitation Act, and the Age Discrimination Act, [to] broaden the coverage of these

antidiscrimination provisions . . . [and] correct what it considered to be an unacceptable decision

on our part in Grove City College v. Bell.").

## II.   ANALYSIS

### A.   Whether Reconsideration Should Be Granted

Bloomberg argues that "[t]he language of the Civil Rights Restoration Act

. . . prohibits the Court from requiring a plaintiff to show any kind of connection between the

federal assistance a school system receives and a particular program or activity alleged to be

discriminatory." (Reconsideration Mot. (Dkt. No. 111) at 8)

As discussed above, in dismissing the Amended Complaint's Title VI retaliation

claim, this Court ruled that the Amended Complaint failed to "plead a nexus between the use of

federal funds and the alleged discriminatory practice about which Plaintiff allegedly complained,

and for which complaints she allegedly suffered retaliation:  discrimination in the [Public School

Athletic League's] sports programs."  (September 24, 2019 Opinion (Dkt. No. 89) at 25)  And in

denying Plaintiff leave to amend her Title VI retaliation claim, this Court found Plaintiff's new

allegations insufficient, because they did not show "a nexus between the federal funding allotted

to DOE and [the Public School Athletic League]'s sports programs."  (September 23, 2021 Order

(Dkt. No. 108) at 18-19)

In requiring that Plaintiff plead facts showing program-specific federal funding,

this Court erred.  As discussed above, the CRRA prohibits courts from requiring proof of

program-specific federal funding.  See O'Connor, 126 F.3d at 117 ("Out of concern that the

Grove City definition of 'program or activity' would be applied to similar language contained in

. . . Title VI of the Civil Rights Act of 1964, Congress passed the [CRRA], . . . broadly

redefining the term "program or activity.").

   This Court further concludes that a Title VI retaliation claim is adequately pled

where plaintiff alleges that he or she complained about discrimination against the "intended

beneficiaries" of a program that receives federal funding where the purported victims of

discrimination are participating in a federally-funded "program or activity" for purposes of a

direct Title VI discrimination claim.

   Here, Bloomberg alleges in the proposed SAC that "[o]n January 10, 2017, [she]

sent a damning complaint to [her DOE superiors], . . . accusing the DOE of race discrimination

and segregation within the sports program in her building."  (Proposed SAC (Dkt. No. 94-1)

¶ 58)  The proposed SAC also alleges that "DOE receives federal funds pursuant to Title I of the

Elementary and Secondary Education Act which provides funds to schools which have a high

percentage of families from impoverished backgrounds," and that Park Slope Collegiate receives

Title I funds. (Id. ¶¶ 23-25).  Defendants do not dispute that Park Slope Collegiate students are

among the "intended beneficiaries" of the federal funds DOE receives.  If students at Park Slope

Collegiate sued DOE alleging that they were excluded from a school sports team on the basis of

their race in violation of Title VI and further pled that DOE – and not the Public Schools Athletic

League – receives federal funding, they would have adequately pled their participation in a

federally-funded "program or activity."  See O'Connor, 126 F.3d at 117; Horner v. Kentucky

High Sch. Athletic Ass'n, 43 F.3d 265, 272 (6th Cir. 1994) ("Simply put, it appears that

Kentucky's school system receives substantial federal financial assistance."); Rogers v. Bd. of

Educ. of Prince George's Cnty., 859 F. Supp. 2d 742, 752 (D. Md. 2012) ("The Complaints also

sufficiently allege Title VI's 'any program or activity receiving Federal financial assistance'

requirement. The Board of Education of Prince George's County is a 'public board of education,' which qualifies as a 'local educational agency,' which in turn constitutes a 'program or activity' under Title VI.") (citations omitted).

In sum, the proposed SAC adequately alleges that the "victims of the discrimination about which [Bloomberg] complained" are the "intended beneficiaries" of a federally funded "program or activity" for purposes of Title VI. Verdi, 306 F. Supp. 3d. 532 at 545-46. Accordingly, Plaintiff's motion for reconsideration is granted.

**B.    Whether Plaintiff Should Be Granted Leave to Amend Her Title VI Retaliation Claim**

In addition to arguing that Bloomberg is required to plead facts showing program-specific federal funding, Defendants have argued that Plaintiff's Title VI retaliation claim is barred by 42 U.S.C. § 2000d-3, which provides that

> [n]othing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

42 U.S.C. § 2000d-3.[4] According to Defendants, Plaintiff's Title VI retaliation claim is barred because she has not and cannot plead that the "primary objective of the federal financial assistance that . . . DOE received" is to provide employment. (Def. MTD Br. (Dkt. No. 78) at 22-23 (noting that Plaintiff does not "plead the primary objective of the federal financial assistance that it is alleged DOE received or receives" and citing Moore v. City of New York, 2017 WL 35450, at *15 (S.D.N.Y. Jan. 3, 2017), report and recommendation adopted, 2017 WL

---

[4]  While the statute addresses department and agency action, the "primary objective" test applies to private causes of action as well.  In Ass'n Against Discrimination in Emp., Inc., 647 F.2d at 276, the Second Circuit states that Section 2000d-3 "in effect requires a logical nexus between the use of federal funds and the practice toward which agency action is directed."  The Second Circuit found "no indication [in the statute] that Congress would not have intended that the logical nexus requirement exist with respect to private actions as well as agency action."  Id.

1064714 (S.D.N.Y. Mar. 20, 2017) ("[Plaintiff's] Title VI claims additionally fail because he has not sufficiently pled that 'a primary objective of the Federal financial assistance is to provide employment.'" (quoting 42 U.S.C. § 2000d-3)) and <u>Acheampong v. New York City Health & Hosps. Corp.</u>, 2015 WL 1333242, at *14 (S.D.N.Y. Mar. 25, 2015) ("'[F]or a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing employment.'" (quoting <u>Ass'n Against Discrimination in Employment</u>, 647 F.2d at 276)); <u>see also</u> Def. Supp. Br. (Dkt. No. 119) at 3 ("The CRRA did not impact the provision of Title VI which provides that '[n]othing contained in [it] shall be construed to authorize action under [Title VI] . . . with respect to any employment practice of any employer . . . except where a primary objective of the Federal financial assistance is to provide employment.'" (quoting 42 U.S.C. § 2000d-3)))

        This Court's prior orders endorsed <u>Verdi</u>'s reasoning that retaliation claims such as that brought by Plaintiff are permissible despite Section 2000d-3's language so long as plaintiff has pled program-specific funding.  (<u>See</u> September 24, 2019 Opinion (Dkt. No. 89) at 24-25; September 23, 2021 Order (Dkt. No. 108) at 17-19)  Having concluded that it was error for this Court to follow <u>Verdi</u>'s holding that a Title VI retaliation plaintiff is required to plead program-specific federal funding, this Court must revisit <u>Verdi</u>'s <u>dicta</u> – on which this Court likewise relied – that Plaintiff's Title VI retaliation claim is permissible under 42 U.S.C. § 2000d-3's "primary objective" test.

        With respect to Section 2000d-3, <u>Verdi</u> acknowledges that, "[f]or a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing

employment." Verdi, 306 F. Supp. 3d at 544. Verdi draws a distinction between "retaliation

claims affecting employment" and "straight retaliation claims," however:

> It is unsettled . . . whether retaliation claims affecting employment – in which an
> individual who voices concerns about discrimination against others is retaliated against
> with respect to his or her employment – should be treated the same as straight retaliation
> for employment discrimination claims. . . ."

(Id. at 544-45 (emphasis in original))

The Verdi court goes on to assert that

> [a]t the heart of a Title VI retaliation claim could be the very individuals whom
> the statutory scheme was intended to protect, so it is important to distinguish
> between garden variety retaliation-for-complaining-about-employment-
> discrimination claims, on the one hand, and retaliation claims in which the
> complainant's employment is affected based on complaints regarding non-
> employment discrimination against others, on the other. Section 2000d–3 "ma[d]e
> it clear that discrimination in employment which does not affect [the] intended
> beneficiaries of federal assistance is not within the reach of title VI." Carmi v.
> Metro. St. Louis Sewer Dist., 620 F.2d 672, 674 & n.4 (8th Cir. 1980) (citing
> United States v. Jefferson County Bd. of Educ., 372 F.2d 836, 882-83 (5th Cir.
> 1966) ), abrogated on other grounds by Consol. Rail Corp. v. Darrone, 465 U.S.
> 624 (1984)). In contrast, recognizing a retaliation claim based on harms to a
> claimant's employment where the complained-of discrimination was against the
> intended beneficiaries of the relevant federal funding would vindicate rather than
> undermine the intent and spirit of § 2000d-3. Accordingly, this Court finds that
> the "primary objective of providing employment" requirement does not apply
> when analyzing an employment-based retaliation claim where the victims of the
> discrimination about which the claimant complained (and for which complaining
> the claimant suffered retaliation) are the intended beneficiaries of the federal
> funding.

Verdi, 306 F. Supp. 3d at 545-46 (emphasis omitted).

Verdi's only support for this conclusion is the following footnote in Hickey v.

Myers, 2010 WL 786459 (N.D.N.Y. Mar. 2, 2010)):

> Defendant argues that 42 U.S.C. § 2000d-3 precludes Plaintiff from recovering
> under [Title VI]. . . . Defendant misinterprets Plaintiff's allegations and argues
> that Title VI is inapplicable in the employment discrimination context. Plaintiff
> does not allege employment discrimination but instead alleges that he was
> retaliated against because he spoke out against racial discrimination in the
> school's admission policy. This argument does not implicate § 2000d-3.

13

Hickey, 2010 WL 786459, at *3 n.3.

In asserting that employment-related retaliation claims are entirely divorced from employment-related discrimination claims, Hickey does not cite to any language in Section 2000d-3 or any case law suggesting that Congress intended to authorize employment-related Title VI retaliation claims in a context in which the "primary objective" of the federally-funded program is not to provide employment.

Contrary to the suggestion in Hickey that retaliation in the employment context is completely divorced from discrimination in the employment context, such claims are closely related. Indeed, retaliation in the employment context is prohibited as "a form of 'discrimination[,]' because the complainant is being subjected to differential treatment." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173-74 (2005).

While Verdi argues that "recognizing [an employment-based Title VI] retaliation claim . . . would vindicate rather than undermine the intent and spirit of § 2000d–3," Verdi 306 F. Supp. 3d at 545, statutory interpretation must "begin[] . . . with the statute's text," Permanent Mission of India to the United Nations v. City of New York, 551 U.S. 193, 197 (2007), and "[w]hen interpreting the meaning of a statutory provision, 'the best evidence of Congress's intent is the statutory text.'" Grajales v. Comm'r of Internal Revenue, 47 F.4th 58, 62 (2d Cir. 2022) (quoting NFIB v. Sebelius, 567 U.S. 519, 544 (2012)).

Here, Section 2000d-3 broadly precludes a Title VI claim "with respect to any employment practice . . . except where a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3. The Second Circuit has held that, "for a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold requirement is that the employer be the recipient of federal funds aimed primarily at

providing employment." Ass'n Against Discrimination in Emp., Inc., 647 F.2d at 276; id. ("[Section 2000d-3] in effect requires a logical nexus between the use of federal funds and the practice toward which agency action is directed.").

There is no claim here that the Federal funding provided to DOE was for the purpose of providing employment. Accordingly, the issue under the plain language of the statute is whether Plaintiff's claim that she suffered a retaliatory adverse action in connection with her employment at DOE relates to "any employment practice" of DOE.

In Plaintiff's Title VI retaliation claim, she complains that DOE engaged in an unlawful "employment practice" – retaliation – when it opened an investigation into whether Plaintiff, a DOE employee, had violated "Chancellor's Regulation D-130 – a regulation designed to limit DOE employees from engaging in partisan electoral politics while on duty." (Proposed SAC (Dkt. No. 94-1) ¶ 3) Bloomberg has thus sued to vindicate her own rights with respect to her position as principal of Park Slope Collegiate, and has not sued to vindicate the rights of Park Slope Collegiate students. Bloomberg also seeks relief for herself – damages for her own "emotional distress, including reputational harm, that she has suffered because of DOE's [allegedly retaliatory investigation]" – and not for Park Slope Collegiate students (Id. ¶ 5)

In sum, Bloomberg's Title VI retaliation claim is premised on the assertion that DOE – in opening an investigation regarding a complaint that she had engaged in prohibited political activity at her school – engaged in an unlawful "employment practice." (See Proposed SAC (Dkt. No. 94-1) ¶¶ 66-77) Under the plain language of Section 2000d-3, such an action is not authorized unless the Federal funding DOE receives is for the purpose of providing employment. Because there is no such claim in this case, Bloomberg's Title VI retaliation claim cannot survive a motion to dismiss. See Miller-Sethi v. City Univ. of New York, 2023 WL

419277, at *8 (S.D.N.Y. Jan. 26, 2023) (dismissing an employment-based Title VI retaliation claim because "Plaintiff fails to plead that the federal funds that CUNY receives are aimed primarily at providing employment.  Instead, Plaintiff alleges that CUNY is a publicly funded university system that receives federal funding and that its discriminatory employment practices negatively impact the intended beneficiaries of its programs, including faculty such as herself").

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion for reconsideration (Dkt. No. 109) is granted, but leave to amend is denied.  The Clerk of Court is directed to close this case.

Dated:  New York, New York
        February 10, 2023

SO ORDERED.

Paul G. Gardephe
United States District Judge