UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JILL BLOOMBERG,

                                    Plaintiff,

           v.

THE NEW YORK CITY DEPARTMENT OF EDUCATION,

                                    Defendant.

CIVIL ACTION NO.: 17 Civ. 3136 (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Jill Bloomberg, formerly the principal of a public school in Brooklyn, sues the New York City Department of Education ("DOE"), alleging that DOE retaliated against her because she complained that her students, who were predominantly of color, were victims of systemic race discrimination. After the Second Circuit held that Bloomberg's retaliation claim under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (the "Retaliation Claim"), was cognizable, the matter is now before this Court on Bloomberg's motion for leave to file a second amended complaint (ECF No. 139-1 (the "SAC")), which DOE opposes. (ECF Nos. 139 (the "Motion"); 140 (the "Opposition")).[1] For the reasons set forth below, the Motion is GRANTED.

## II. BACKGROUND

### A. Factual Background

The Second Circuit and the Honorable Paul G. Gardephe set forth the factual background underlying Bloomberg's claims, and their decisions are incorporated by reference. See

---

[1] Bloomberg previously named former Chancellor Carmen Farina as a Defendant (ECF No. 39 ¶ 15), but the SAC has deleted all claims against her. (See ECF No. 139-1). Accordingly, the Court deems all claims against Farina to have been dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) and respectfully requests that the Clerk of Court amend the caption to remove Farina as a Defendant.

1

Bloomberg v. N.Y.C. Dep't of Educ., 410 F. Supp. 3d 608, 611–18 (S.D.N.Y. 2019) ("Bloomberg I"), reconsideration granted & leave to amend denied, 2023 WL 1927825, at *5 (S.D.N.Y. Feb. 10, 2023) ("Bloomberg II"), aff'd in part, rev'd in part, 119 F.4th 209, 211–12 (2d Cir. 2024) ("Bloomberg III").  We briefly summarize the facts in the SAC pertinent to the Motion.

Bloomberg, who began working for DOE in 1998, was the principal of Park Slope Collegiate ("PSC") from 2004 until 2020.  (ECF No. 139-1 ¶¶ 10–11, 126).  PSC, which is one of four schools on the John Jay Campus in Brooklyn, has a student body comprised of approximately 85% Black and Latino students.  (ECF No. 139-1 ¶ 35).  On November 29, 2016, Bloomberg sent a letter to Ramon Garcia, Assistant Commissioner of the School Safety Division of the New York City Police Department, and other DOE officials complaining about an incident in which school safety agents at another school subjected the PSC girls' volleyball team to "racism."  (ECF No. 139-1 ¶¶ 59–60 (the "November 2016 Letter")).  On January 10, 2017, Bloomberg emailed a complaint to two DOE officials, accusing the DOE of "race discrimination and segregation within the sports program in her building."  (ECF No. 139-1 ¶ 61 (the "Title VI Complaint")).  In the Title VI Complaint, Bloomberg "cited a discriminatory DOE policy that both segregated and favored White students over Black and Latino students in the allocation of sports teams to the schools" and complained that the "policy of allowing segregated and unequal allocation of sports teams and resources to a disproportionately White school" resulted in "inequality" and "segregation."  (ECF No. 139-1 ¶ 29).  To support her accusation of race discrimination and segregation within PSC's sports program, Bloomberg included a chart showing, for each of the schools on the John Jay Campus, their enrollment, number of sports teams, and percentage of Black and Hispanic students.  (ECF No. 139-1 ¶ 62).  Based on the chart, Bloomberg "protested" that students in the "predominantly

2

White sports program received one team for every 74 students whereas students [in the] predominantly Black and Hispanic sports program received one team for every 204 students." (ECF No. 139-1 ¶ 63).

On March 2, 2017, about three months after the November 2016 Letter and six weeks after the Title VI Complaint, a representative of DOE's Office of Special Investigations ("OSI") informed Bloomberg that she was "under investigation, but [OSI] refused to inform her of the reason." (ECF No. 139-1 ¶ 70 (the "Investigation")). DOE subsequently asserted that OSI's Investigation "was based on a complaint that had been lodged in May 2016" alleging that Bloomberg had engaged in communist activities at PSC. (ECF No. 139-1 ¶¶ 70–72, 74). In a report issued in August 2017, however, OSI stated that, by March 13, 2017, "OSI had already determined that the confidential complainant had no evidence to support the accusations against [Bloomberg]." (ECF No. 139-1 ¶ 84; see id. ¶ 97). In its report, OSI found "unsubstantiated" the accusation that Bloomberg had violated a regulation prohibiting political activities on school property ("D-130"), but "substantiated" that Bloomberg had committed three clerical mistakes, which did not amount to "conduct that would merit the commencement of an OSI investigation or discipline." (ECF No. 139-1 ¶¶ 100–101; see id. ¶ 77 n.1). On October 3, 2017, Bloomberg "was disciplined with a written reprimand." (ECF No. 139-1 ¶ 103).

Bloomberg alleges that DOE's application of D-130 to her was unfair and arbitrary and has chilled her ability to engage in protected First Amendment activities against racism at PSC. (ECF No. 139-1 ¶¶ 111–20). Bloomberg also alleges that she suffered emotional distress and reputational harm after being "falsely accused of violating" D-130. (ECF No. 139-1 ¶ 124). In 2019, Bloomberg went on sabbatical, and in September 2020, "she felt compelled to retire[,]" as

3

a result of which her pension has been reduced by approximately $40,000 per year. (ECF No. 139-1 ¶¶ 125–27).

B. **Procedural Background**

On April 28, 2017, Bloomberg filed her original complaint, which included the Retaliation Claim and a request for injunctive relief barring Investigation. (ECF No. 1 at 20). After a hearing on May 3, 2017, Judge Gardephe denied Bloomberg's request for a temporary restraining order and preliminary injunction. (ECF Nos. 31; 36). Thereafter, Bloomberg filed an amended complaint (the "FAC"), which DOE and Farina moved to dismiss. (ECF Nos. 39; 51; 53; 77–79).[2] On September 24, 2019, Judge Gardephe dismissed the Retaliation Claim, concluding, inter alia, that the FAC failed to allege a "logical nexus" between the federal funding DOE receives, on the one hand, and the retaliation, on the other. Bloomberg I, 410 F. Supp. 3d at 625–26. Judge Gardephe denied Bloomberg's subsequent request to amend her allegations concerning DOE's receipt of federal funding. (ECF Nos. 93; 94; 108 (the "September 2021 Order")). See Bloomberg II, 2023 WL 1927825, at *2–3. On reconsideration, Judge Gardephe again denied leave to amend because, while Bloomberg's proposed amendments did adequately allege that the students on whose behalf she complained were the "intended beneficiaries" of federal funding for Title VI purposes, the Retaliation Claim was nevertheless barred because Bloomberg failed to allege that "the Federal funding DOE receives is for the purpose of providing employment." Id. at *8 (citing 42 U.S.C. § 2000d-3).

---

[2] Bloomberg also asserted claims for retaliation under the First Amendment and the New York City Human Rights law and for violation of the Fourteenth Amendment's Due Process Clause (ECF No. 39 ¶¶ 111–21, 135–56), which are no longer at issue in this action. See Bloomberg III, 119 F.4th at 212 n.1 ("Bloomberg brought several other claims before the District Court, none of which she presses on appeal.").

On October 3, 2024, the Second Circuit issued the decision in Bloomberg III, which recognized an implied right of action to enforce Title VI's "prohibition on intentional discrimination based on race, color, or national origin," and held that Bloomberg's Retaliation Claim was cognizable and was not barred by § 2000d-3. 119 F.4th at 214–15. The Second Circuit did not reach DOE's alternative arguments that the Title VI Complaint did not constitute protected activity because it did not refer to intentional discrimination and that OSI started the Investigation because of prior anonymous complaints, not the Title VI Complaint. Id. at 216–17.

Following remand from the Second Circuit, the parties consented to Magistrate Judge jurisdiction for all purposes and the Court set a briefing schedule for the Motion. (ECF Nos. 130; 135). On January 22, 2025, Bloomberg filed the Motion and the SAC, and on February 18, 2025, DOE filed the Opposition. (ECF Nos. 138-1; 139; 139-1; 139-2; 140). On February 26, 2025, Bloomberg filed a reply. (ECF No. 141).

The amendments in the SAC include the addition of or revisions to allegations concerning: (i) the federal funding DOE receives (ECF No. 139-1 ¶¶ 26–27, 133–34); (ii) retaliation against other school personnel who complained about racial discrimination (id. ¶¶ 31, 106, 128); (iii) the findings of the OSI Report (id. ¶¶ 97–105); (iv) the "chilling effect" of DOE's administration of D-130 on Bloomberg and others (id. ¶¶ 111–23); and (v) the elements of the Retaliation Claim, which is Bloomberg's only remaining claim. (Id. ¶ 141).[3]

---

[3] As noted above, the SAC also removes all claims against Farina. (See n.1, supra).

## III. DISCUSSION

### A. Legal Standards

#### 1. Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2).[4] The Rule encourages courts to determine claims "on the merits" rather than disposing of claims or defenses based on "mere technicalities." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000). The Second Circuit has explained that "district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." Friedl v. City of N.Y., 210 F.3d 79, 87 (2d Cir. 2000). Courts in this District have held that denial of a motion to amend is appropriate where "(1) the movant is guilty of undue delay, (2) the movant has acted in bad faith, (3) the amendment would be futile, or (4) the amendment would prejudice the opposing party." Procter & Gamble Co. v. Hello Prods., LLC, No. 14 Civ. 649 (VM) (RLE), 2015 WL 2408523, at *1 (S.D.N.Y. May 20, 2015) (citing State Tchrs. Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)); see Williams v. Citigroup Inc., 659 F.3d 208, 213–14 (2d Cir. 2011) (per curiam) (reiterating Supreme Court precedent explaining proper grounds for denying motion to amend as "undue delay, bad faith or dilatory motive on the part of the movant, . . .

---

[4] Because no case management plan or other court order has set a deadline for the amendment of pleadings in this action, the more liberal standard in Rule 15(a)(2), rather than the "good cause" standard in Federal Rule of Civil Procedure 16(b), applies to the Motion. See Sacerdote v. N.Y. Univ., 9 F.4th 95, 115 (2d Cir. 2021) (explaining that "[t]he period of liberal amendment [under Rule 15(a)(2)] ends if the district court issues a scheduling order setting a date after which no amendment will be permitted"); Cherotti v. Exphand, Inc., No. 20 Civ. 11102 (SLC), 2022 WL 2108604, at *6 (S.D.N.Y. June 10, 2022) (applying Rule 15(a)(2) standard where court had not set a "date after which all amendments were prohibited").

undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment").

While a party may move to amend under Rule 15(a)(2) at any stage of litigation, when "a proposed amendment is based on 'information that the party knew or should have known prior to the deadline [to file an amendment], leave to amend is properly denied.'" Hyo Jung v. Chorus Music Studio, Inc., No. 13 Civ. 1494 (CM) (RLE), 2014 WL 4493795, at *2 (S.D.N.Y. Sept. 11, 2014) (citing Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 147 (S.D.N.Y. 2012)); see Procter & Gamble Co., 2015 WL 2408523, at *2–3 (finding undue delay and prejudice where party was aware of information well before deadline to amend pleadings but waited ten months to move to amend).

Prejudice occurs when an amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Soroof Trading, 283 F.R.D. at 147 (citing Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)). An amendment is futile if it would not survive dismissal under Rule 12(b)(6) for want of "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Brodt v. City of N.Y., 4 F. Supp. 3d 562, 567 (S.D.N.Y. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Facial plausibility exists when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## 2. Title VI Claims

Title VI prohibits "federally funded programs from discriminating on the basis of race, color, or national origin[.]" Bloomberg III, 119 F.4th at 210 (citing 42 U.S.C. § 2000d). As the Second Circuit explained in Bloomberg III, to plead a retaliation claim under Title VI, a plaintiff "must allege that she engaged in protected activity, the [defendant] knew about her protected activity, she suffered an adverse action, and there 'was a causal connection between the protected activity and the adverse action.'" 119 F.4th at 215 (quoting Papelino v. Albany Coll. of Pharm. of Union Univ., 633 F.3d 81, 91 (2d Cir. 2011)). A plaintiff is also required to allege that the "program or activity"—i.e., the "local educational agency" under 20 U.S.C. § 7801(30)(A)—received federal funding. Id. (citing 42 U.S.C. § 2000d-4a(2)(B)). A plaintiff is not, however, required to "allege a nexus between those funds and the retaliation." Id. (citing O'Connor v. Davis, 126 F.3d 112, 117 (2d Cir. 1997)).

### B. Application

In the Motion, Bloomberg asserts that the SAC pleads a plausible claim for retaliation under Title VI by alleging: (i) the background to her protests of unequal allocation of sports teams based on race; (ii) her protected activities protesting that unequal allocation; (iii) facts supporting an inference that DOE's enforcement of D-130 against her was pretextual; and (iv) the emotional and reputational damages resulting from DOE's retaliation. (ECF No. 138-1 at 3–4). DOE argues that leave to amend should be denied as futile because (i) the Title VI Complaint did not allege intentional racial discrimination and therefore does not constitute protected activity,[5] and (ii)

---

[5] DOE advanced this argument before the Second Circuit, but the Second Circuit declined to address it. See Bloomberg III, 119 F.4th at 217.

Bloomberg has failed to allege a causal connection between any protected activity and any adverse action by DOE. (ECF No. 140 at 2–3). Neither of DOE's arguments justifies denying the Motion as futile.

### 1. Protected Activity

Bloomberg adequately alleges that she engaged in a protected activity, i.e., complaining about intentional discrimination based on race. A plaintiff asserting a Title VI retaliation claim "need not establish that the conduct she opposed was in fact a violation of Title VI to maintain a retaliation claim." Koumantaros v. City of N.Y., No. 03 Civ. 10170 (GEL), 2007 WL 840115, at *10 (S.D.N.Y. Mar. 19, 2017) (Lynch, J.) (cleaned up) (quoting Manoharan v. Columbia Univ. Coll. of Phys. & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988)).[6] She must, however, demonstrate a "good faith, reasonable belief that the challenged actions of the employer violated the law." Manoharan, 842 F.2d at 593.

Here, the SAC alleges that in the Title VI Complaint, Bloomberg "cited a discriminatory DOE policy that both segregated and favored White students over Black and Latino students in the allocation of sports teams to the schools" and complained that the "policy of allowing segregated and unequal allocation of sports teams and resources to a disproportionately White school" resulted in "inequality" and "segregation." (ECF No. 139-1 ¶ 29). In support of her accusation of race discrimination and segregation, Bloomberg included a chart showing, for each of the schools on the John Jay Campus, their enrollment, number of sports teams, and percentage of Black and Hispanic students. (ECF No. 139-1 ¶ 62). Based on the chart, Bloomberg "protested"

---

[6] Courts analyzing Title VI claims are "guided by the analysis developed under Title VII" of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Koumantaros, 2007 WL 840115, at *7; accord McKie v. N.Y. Univ., No. 94 Civ. 8610 (LMM), 2000 WL 1521200, at *3 n.1 (S.D.N.Y. Oct. 13, 2000).

that students in the "predominantly White sports program received one team for every 74 students whereas students [in the] predominantly Black and Hispanic sports program received one team for every 204 students." (ECF No. 139-1 ¶ 63).  Construing the SAC in the light most favorable to Bloomberg, her statements in the Title VI Complaint suggested a racial animus in DOE's administration of the sports programs at PSC, which could amount to a hostile educational environment in violation of Title VI.  See Rodriguez v. N.Y. Univ., No. 05 Civ. 7374 (JSR), 2007 WL 117775, at *6 (S.D.N.Y. Jan. 16, 2007) (noting that Title VI plaintiff must allege that educational institution had "sufficient knowledge" of racial discrimination "that it reasonably could have responded with remedial measures" but failed to do so).  By bringing this alleged racial animus to DOE's attention in the Title VI Complaint, Bloomberg has plausibly alleged that she "engaged in an activity protected by Title VI." Koumantaros, 2007 WL 840115, at *11 (finding that plaintiff had adequately shown a prima facie Title VI retaliation claim).

### 2. Causation

The SAC plausibly alleges a causal connection between Bloomberg's protected activity and DOE's adverse action, i.e., the initiation of the Investigation.  For purposes of a Title VI retaliation claim, an adverse action is one "that might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Williams v. City Univ. of N.Y., No. 13 Civ 1055 (CBA), 2014 WL 4207112, at *11 (E.D.N.Y. Feb. 7, 2014) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67–68 (2006)).  A plaintiff can allege the requisite causal connection either "(1) indirectly, by presenting evidence of temporal proximity between the protected activity and adverse action, or through other evidence such as different treatment of similarly

situated [individuals], or (2) directly, through evidence of retaliatory animus directed against . . . plaintiff by the defendant." Koumantaros, 2007 WL 840115, at *10.

"The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." Cifra v. G.E. Co., 252 F.3d 205, 217 (2d Cir. 2001). Courts accepting "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001). Courts in the Second Circuit generally apply a two- to three-month window to determine whether the temporal connection between the protected activity and retaliation is close enough or too attenuated. Murray v. Visiting Nurse Servs. of N.Y., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007); accord Croswell v. Triborough Bridge & Tunnel Auth., No. 03 Civ. 2990 (NRB), 2007 WL 2274252, at *14 (S.D.N.Y. Aug. 7, 2007); see McManamon v. Shinseki, No. 11 Civ. 7610 (PAE), 2013 WL 3466863, at *12 (S.D.N.Y. July 10, 2013) (collecting cases recognizing two- to three-month window); but see Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty., 252 F.3d 545, 555 (2d Cir. 2001) (finding five months short enough for causation); Koumantaros, 2007 WL 840115, at *11 (holding that five months was "not too attenuated . . . to infer a causal relationship").

Here, Bloomberg seeks to assert causation indirectly by pointing to the temporal proximity between her Title VI Complaint in January 2017 and when OSI notified her of the Investigation in on March 2, 2017. (ECF No. 138-1 at 3–4; see ECF No. 139-1 ¶¶ 3, 28, 70). This six-week period is within the temporal window recognized by courts in the Second Circuit, and

therefore plausibly alleges the requisite causal connection between Bloomberg's protected activity and DOE's adverse action against her. See Crawford v. Bronx Comm'ty Coll., No. 22 Civ. 1062 (PGG) (SLC), 2024 WL 3898361, at *18 (S.D.N.Y. Aug. 21, 2024) (concluding that two-month period between protected activity and adverse action plausibly alleged causation). To the extent that Bloomberg recounts additional instances from 2010 to 2016 when she protested racial discrimination and segregation (ECF No. 139-1 ¶¶ 38–65), she contends that she has done so to provide additional background to show her "diligence in opposing discrimination, segregation, and racism[,]" and concedes that these acts were not the cause of the Investigation. (ECF No. 141 at 4–5). The same is true as to her mention of a 2018 lawsuit filed by parents of PSC students, which she does not suggest had any connection to the Investigation. (ECF No. 139-1 ¶¶ 107–08; see ECF No. 141 at 5). In short, DOE's arguments about the supposed lack of causation are red herrings because the SAC otherwise plausibly alleges a causal connection between the Title VI Complaint and the Investigation, and the presence of these additional background allegations are not a ground on which to deny the Motion.

## IV. CONCLUSION

For the reasons set forth above:

(1) the Motion is **GRANTED**;

(2) Bloomberg's Second Amended Complaint (ECF No. 139-1) shall be the operative pleading in this action in response to which DOE shall file an answer on or before **March 17, 2025**; and

(3) All claims against Farina are **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 41(a)(2).

The Clerk of the Court is respectfully directed to close ECF No. 139 and to amend the caption accordingly.

Dated: New York, New York
March 3, 2025

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge