UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JILL BLOOMBERG,<br><br>                              Plaintiff,<br><br>    -v-<br><br><br>THE NEW YORK CITY DEPARTMENT OF<br>EDUCATION,<br><br>                              Defendant. | CIVIL ACTION NO. 17 Civ. 3136 (SLC)<br><br>**<u>ORDER</u>** |

**SARAH L. CAVE,** United States Magistrate Judge.

## I.<u>INTRODUCTION</u>

Plaintiff Jill Bloomberg ("Ms. Bloomberg"), formerly the principal of a public school in Brooklyn, sues the New York City Department of Education ("DOE"), alleging that the DOE retaliated against her under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (the "Retaliation Claim") because she complained that her students were victims of systemic race discrimination.  (Dkt. No. 139-1 (the "SAC")).[1]  Before the Court is the DOE's motion for a "protective order limiting the scope of discovery" to the Retaliation Claim.  (Dkt. No. 175 (the "Motion")).  Ms. Bloomberg opposes the Motion.  (Dkt. No. 176).  On March 12, 2026, the Court held a conference (the "Conference") to discuss the status of discovery and the Motion. (Dkt. Nos. 167; 172).

For the reasons stated at the Conference, and set forth below, the Motion is **DENIED**.

---

[1] The Court previously deemed all claims against former Chancellor Carmen Farina ("Farina") to have been dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).  (Dkt. No. 142 at 1 n.1).

## II.BACKGROUND

We incorporate by reference the summaries of the factual background underlying Ms. Bloomberg's claims in the prior decisions of the Second Circuit, the Honorable Paul G. Gardephe, and the undersigned.  See Bloomberg v. N.Y.C. Dep't of Educ., 410 F. Supp. 3d 608, 611–18 (S.D.N.Y. 2019) ("Bloomberg I"), reconsideration granted & leave to amend denied, 2023 WL 1927825, at *5 (S.D.N.Y. Feb. 10, 2023) ("Bloomberg II"), aff'd in part, rev'd in part, 119 F.4th 209, 211–12 (2d Cir. 2024) ("Bloomberg III"); Bloomberg v. N.Y.C. Dep't of Educ., No. 17 Civ. 3136 (SLC), 2025 WL 673059, at *1–3 (S.D.N.Y. Mar. 3, 2025) ("Bloomberg IV").[2]  We discuss only the facts and procedural history necessary to decide the Motion.

On April 28, 2017, Ms. Bloomberg filed her original complaint asserting the Retaliation Claim.   (Dkt. No. 1 (the "Complaint")).   On May 23, 2017, Ms. Bloomberg filed an amended complaint (the "FAC"), which the DOE and Farina moved to dismiss.  (Dkt. Nos. 39; 51; 53; 77–79).[3]   On September 24, 2019, Judge Gardephe dismissed the Retaliation Claim, concluding, inter alia, that the FAC failed to allege a "logical nexus" between the federal funding the DOE receives, on the one hand, and the retaliation, on the other.  Bloomberg I, 410 F. Supp. 3d at 625–26.  Judge Gardephe denied Ms. Bloomberg's subsequent request to amend her allegations concerning the DOE's receipt of federal funding.  (Dkt. Nos. 93–94; 108).  See Bloomberg II, 2023 WL 1927825, at *2–3.  On reconsideration, Judge Gardephe again denied leave to amend because, while Ms. Bloomberg's proposed amendments did adequately allege

---

[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

[3] Ms. Bloomberg's claims for retaliation under the First Amendment and the New York City Human Rights law and for violation of the Fourteenth Amendment's Due Process Clause (Dkt. No. 39 ¶¶ 111–21, 135–56), are no longer at issue.  See Bloomberg III, 119 F.4th at 212 n.1 ("Bloomberg brought several other claims before the District Court, none of which she presses on appeal.").

that the students on whose behalf she complained were the "intended beneficiaries" of federal funding for Title VI purposes, the Retaliation Claim was nevertheless barred because Ms. Bloomberg failed to allege that "the Federal funding DOE receives is for the purpose of providing employment." Bloomberg II, 2023 WL 1927825, at *8 (citing 42 U.S.C. § 2000d-3).

On October 3, 2024, the Second Circuit issued the decision in Bloomberg III, which recognized an implied right of action to enforce Title VI's "prohibition on intentional discrimination based on race, color, or national origin[,]" and held that Ms. Bloomberg's Retaliation Claim was cognizable and was not barred by § 2000d-3. 119 F.4th at 214–15.

On December 5, 2024, following remand from the Second Circuit, the parties consented to Magistrate Judge jurisdiction for all purposes. (Dkt. No. 130). On January 22, 2025, Ms. Bloomberg filed a motion to amend, (Dkt. No. 139 (the "First MTA")), along with the SAC, which only asserts the Retaliation Claim. (Dkt. No. 139-1 ¶ 9). On March 3, 2025, the Court granted the First MTA. (Dkt. No. 142). On March 28, 2025, the DOE filed an answer to the SAC. (Dkt. No. 145). On January 20, 2026, the Court held an initial case management conference, at which Ms. Bloomberg raised the prospect of seeking further leave to amend, and set a briefing schedule for Ms. Bloomberg's second motion to amend (the "Second MTA"). (Dkt. Nos. 167; Docket entry dated Jan. 20, 2026).

On February 3, 2026, Ms. Bloomberg filed the Second MTA with a proposed third amended complaint. (Dkt. Nos. 169; 169-1; 169-2 ("TAC")). The proposed amendments in the TAC included certain additions or revisions to allegations concerning the effects of the retaliation on Ms. Bloomberg, including "anxiety and depression," "retaliatory demotion, harassment, and supervision," and her decision to take "early retirement" on February 3, 2020, which she

3

characterized as "constructive discharge."  (Dkt. No. 169-1 ¶¶ 215–26).  Ms. Bloomberg alleged in the TAC that "[t]aken together," the DOE's conduct from 2017 to 2020 "created a hostile work environment against [her] and constructively demoted her . . . , which made it impossible to continue in her position as principal."  (Id. at ¶ 206).  In the TAC, she described the DOE's "multi-year campaign of harassment" as "result[ing] in her constructive demotion discharge [sic][.]"  (Id. at ¶ 239).  On February 24, 2026, the DOE filed its opposition to the Second MTA.  (Dkt. No. 170).

On March 3, 2026, Ms. Bloomberg withdrew the Second MTA, leaving the SAC as the operative pleading and the Retaliation Claim the only claim in this action.  (Dkt. No. 172).  On March 5, 2026, the DOE filed the Motion seeking a protective order "limiting the scope of discovery" to the Retaliation Claim, and "precluding [Ms. Bloomberg] from requesting or seeking any discovery on [her] unpled constructive discharge claim, a claim that she has now abandoned by withdrawing her [Second MTA][.]"  (Dkt. No. 175).  On March 10, 2026, Ms. Bloomberg filed her response to the Motion.  (Dkt. No. 176).

### III. DISCUSSION

#### A. Legal Standard

The Federal Rules of Civil Procedure establish the scope of discovery as the following:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "Rule 26 gives a district court broad discretion . . . to impose limitations or conditions on discovery . . . which extends to granting or denying motions to compel or for

protective orders on just terms." Coty v. Cosmopolitan Cosms. Inc., No. 18 Civ. 11145 (LTS) (SLC), 2020 WL 3317204, at *1 (S.D.N.Y. June 18, 2020). "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012).

Under Federal Rule of Civil Procedure 26(c), "[a] party . . . may move for a protective order . . . [and] [t]he court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). This rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). "The burden of showing good cause for the issuance of a protective order falls on the party seeking the order." Republic of Turkey v. Christie's, Inc., 312 F. Supp. 3d 385, 388 (S.D.N.Y. 2018) (citing Brown v. Astoria Fed. Sav. & Loan Ass'n, 444 F. App'x 504, 505 (2d Cir. 2011)). Good cause under Rule 26(c) requires "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Jerolimo v. Physicians for Women, P.C., 238 F.R.D. 354, 356 (D. Conn. 2006). "Ultimately, the appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectible interests of the party from whom discovery is sought." Peddy v. L'Oreal USA Inc., No. 18 Civ. 7499 (RA) (JLC), 2019 WL 3926984, at *2 (S.D.N.Y. Aug. 20, 2019); see Winfield v. City of N.Y., No. 15 Civ. 5236 (LTS) (KHP), 2018 WL 840085, at *4 (S.D.N.Y. Feb. 12, 2018) (explaining that "the court ultimately weighs the interests of both sides in fashioning an order" under Rule 26(c)).

**B.  Application**

As stated at the Conference, and several of the Court's Orders, the SAC is the operative pleading in this action.  (Dkt. Nos. 142 at 12; 167; 172).  Furthermore, the SAC makes clear that it is "limited" to the Retaliation Claim.  (Dkt. No. 139-1 ¶ 9).  Ms. Bloomberg alleges in the SAC a variety of ways in which the alleged retaliation manifested itself, including that:  (i) "she suffered considerable economic distress and reputational harm for having been falsely accused of violating Chancellor's regulation D-130[;]" (ii) "[s]he saw the ongoing complaints leveled against her[;]" (iii) "her conduct was always under a microscope[;]" (iv) "while on sabbatical" she "feared coming back into the school environment where she would remain under scrutiny[;]" (v) "based on her physical condition and the treatment she had received[,] . . . she felt compelled to retire in 2020[;]" (vi) "the impact of retiring early means that her pension is reduced[;]" and (vii) she "suffered emotional distress damages and damage to her reputation" by being put under a "cloud of suspicion" and "having her job threatened."  (Id. at ¶ 124–28, 141–42).

Accordingly, although Ms. Bloomberg does not plead a separate cause of action for constructive discharge, discovery concerning the ways in which the alleged retaliation manifested itself, including the reasons for her decision to retire, is "relevant to [Ms. Bloomberg's] [Retaliation] claim" and "proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  The Court therefore declines to issue a protective order precluding Ms. Bloomberg from seeking discovery concerning her theory of constructive discharge because, based on the allegations in the SAC, constructive discharge is one of the ways Ms. Bloomberg alleges the retaliation manifested itself.  To the extent, however, that Ms. Bloomberg seeks discovery

concerning her theory of constructive discharge, she will be confined to her allegations in the SAC, <u>not</u> the TAC, which she has withdrawn.  (<u>See</u> Dkt. No. 139-1 at ¶ 124–28, 141–42).

### IV. <u>CONCLUSION</u>

For the reasons set forth above, the Motion is **DENIED**.

The Court further **ORDERS** the following:

1.  By **March 19, 2026**, the parties shall order a copy of the Conference transcript using the annexed form.

2.  By **May 4, 2026**, the parties shall file a joint letter updating the Court on the status of discovery and identifying any discovery issues ripe for the Court's attention.

3.  Another telephone conference to discuss the status of discovery is scheduled for **May 7, 2026, at 2:30 p.m. ET** on the Court's conference line.  The parties are directed to call (855) 244-8681; access code: 2308 226 4654, at the scheduled time.

The Clerk of the Court is respectfully directed to close Dkt. No. 175.

Dated:      New York, New York
            March 13, 2026

SO ORDERED.

SARAH L. CAVE
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

## Request for the production of a transcript from an electronic recording

Send one request per completed form to:

# etranscripts@nysd.uscourts.gov

Transcripts from an electronic record are generated by a Court Approved Transcriber, <u>NOT the Southern District Court Reporters.</u>  The transcript will be delivered to your office and you will be  invoiced directly by the transcriber. Submission of this form constitutes an agreement to pay for  the transcription services described herein. This form should not be submitted for the purpose of obtaining  a price estimate.
**NOTE:**  CJA requests require prior approval by submitting an Auth-24 document in the CJA eVoucher System. If granted, the attorney then submits the etranscripts order form (indicate CJA Request).
Upon notification from the transcriber, the attorney will create a CJA 24 Voucher in the eVoucher system.

Today's Date: _____

| Case Caption | |
|---|---|
| DOCKET NUMBER | DATE OF THE HEARING | JUDGE'S NAME |

## INDICATE  SERVICE:
(prices listed are per page)

| Daily $7.30 | 3 Day $6.55 | 7 Day $5.85 | 14 Day $5.10 | 30 Day $4.40 |
|---|---|---|---|---|
| ◯ | ◯ | ◯ | ◯ | ◯ |

| Your Name | |
|---|---|
| Firm Name | |
| Address | |
| City, State | Zip Code |
| Telephone Number | |
| E-mail Address | |

| RESET | PRINT | SAVE | EMAIL |
|---|---|---|---|